# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | Civil Case No. 6:21-cv-569-ADA |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| **GOOGLE LLC**, | |
| *Defendant.* | |

## GOOGLE'S REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. Term 1: "media player" ('251 Patent, claim 1; '528 Patent, claims 1, 27, 28; and '289 Patent, claims 1, 6) ............................................................................. 1

    B. Term 2: "an association between the personal computing device and the [display device / content presentation device]" ('251 Patent, claim 1; '528 Patent, claims 1, 27, 28; and '289 Patent, claims 1, 6) ......................................... 1

    C. Term 3: "video file" / "video content" ('251 Patent, claims 1, 6, 7) ..................... 2

    D. Term 4: "converting the command from the personal computing device into corresponding code to control the media player" ('251 Patent, claim 2) ........................................................................................................................ 4

    E. Term 5: "universal command" ('251 Patent, claim 5) ........................................... 5

    F. Term 6: "unique identification code assigned to the content presentation device" ('289 Patent, claims 1, 6) and "synchronization code assigned to the content presentation device" ('528 Patent, claims 1, 27) ................................ 6

    G. Term 7: "[identify/identifying/include information indicating] a location of the particular media player" ('528 Patent, claims 1, 27, 28; and '289 Patent, claims 1, 7) ............................................................................................... 8

    H. Term 8: "action control command being independent of the particular media player" ('528 Patent, claims 1, 27, 28; '289 Patent, claims 1, 6) .............. 10

    I. Term 9: "identifying, [by the server system,] programming code corresponding to the action control command, wherein the programming code is for controlling presentation of the content by the content presentation device using the particular media player" ('528 Patent, claim 1, 27, 28; '289 Patent, claims 1 and 6) ................................................................ 12

-ii-

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858, 864 (Fed. Cir. 2004) ............................................................................. 11, 12, 13

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
    99 F.3d 1098 (Fed. Cir. 1996) ................................................................................................ 3

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) .............................................................................................. 8

*Seachange Int'l, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) .............................................................................................. 4

*Thorner v. Sony Computer Entertainment America LLC*,
    669 F.3d 1362, 1365 (Fed. Cir. 2012) ................................................................................... 11

*W. H. Wall Fam. Holdings, LLLP v. Celonova Biosciences, Inc.*,
    No. 1-18-CV-00303-LY, 2019 WL 4016454 (W.D. Tex. Aug. 26, 2019) ............................ 11

**I.      INTRODUCTION**

Touchstream offers constructions in the guise of "plain meaning" and attorney argument in lieu of support in the intrinsic record.  Dkt. 29 ("Resp. Br.").  For the reasons below, Google's proposed constructions should be adopted by the Court.

**II.     ARGUMENT**

   **A.     Term 1: "media player" ('251 Patent, claim 1; '528 Patent, claims 1, 27, 28; and '289 Patent, claims 1, 6)**

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| plain and ordinary meaning | plain and ordinary meaning |

The parties agree that the term "media player" should be given its plain and ordinary meaning.  Resp. Br. at 3.  For the reasons set forth in Google's opening brief (Dkt. 25 ("Op. Br.") at 3-4), the plain and ordinary meaning of the term does not include just *any* "computer application" but one that actually displays and controls media as claimed (Resp. Br. at 3).  With that understanding, Google agrees that plain and ordinary meaning is appropriate for Term 1.

   **B.     Term 2: "an association between the personal computing device and the [display device / content presentation device]" ('251 Patent, claim 1; '528 Patent, claims 1, 27, 28; and '289 Patent, claims 1, 6)**

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| one-to-one mapping between the personal computing device and the [display device / content presentation device] | plain and ordinary meaning - no construction needed |

Touchstream agrees with Google that an "association" according to the Asserted Patents is a connection between two particular devices.  *See* Resp. Br. at 4 ("An 'association,' according to the patents-in-suit, is simply a 'connection' or 'correspondence' between two things.").  As Touchstream points out, the specification makes clear that the record that stores the association between the personal computing device and display device uniquely connects (*i.e.*, maps) the two devices so that signals may be sent between the devices via the server.  *See, e.g.*, *id.* at 5 ("[The]

'connection' between the personal computing device (a 'mobile phone' in this embodiment) and the display device . . . . is used to facilitate messaging between the personal computing device and the display device so that the user can control playback of content on the display device using a media player."). Indeed, for the server to identify the proper devices to send signals between, the recorded "association" between the personal computing device and the display device must be a unique, one-to-one relationship between the specific devices, not any relationship.

Touchstream asserts that Google's construction excludes embodiments in which the claimed association connects multiple personal computing devices to one display device, one personal computing device to multiple display devices, and multiple personal computing devices to multiple display devices. *Id.* at 7–8. Those embodiments, however, are not recited in the claims. The claims recite that the claimed "association" is "between the personal computing device and the [display device / content presentation device]." '251 patent, claim 1 (11:33-34). The term "device" is used only in the singular in all claims of the Asserted Patents. The claims thus recite only a single-phone/single-display embodiment. Google's construction would therefore help the jury understand this specific claimed "association," consistent with the specification.

For these reasons, Google's proposed construction should be adopted.

C.  Term 3: "video file" / "video content" ('251 Patent, claims 1, 6, 7)

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| indefinite | plain and ordinary meaning - no construction needed |

Touchstream relies solely on attorney argument, with no support in the intrinsic or extrinsic record, to assert that "a person of ordinary skill in the art—and even a lay person—would readily understand the distinction between a video 'file' and the video 'content' stored thereon" (Resp. Br. at 9) and that the claimed "file" is merely a "container that stores

'content'" to be played at the display device (*id.* at 10).  Touchstream's unsupported assertions should be disregarded.  *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1106 (Fed. Cir. 1996) (holding that "attorney argument cannot control [in construing a claim] in light of the language of the claim").

Touchstream's argument also misses the mark – the issue is not the meaning of these individual terms apart from the claims; as Google previously explained, the inconsistent and disconnected *usage* or *connection* of the terms in the claims is what causes the terms (and independent claim 1) to be indefinite.  Op. Br. at 7-8.  Indeed, as Touchstream points out, the "file" is specified by the personal computing device in one or more signals to the server system, and the "content" is ultimately intended "for playing" by the media player.  However, Touchstream ignores that the claims themselves do not show that "the video content" originates from the claimed "video file."  "Video content" is instead introduced in the preamble, within the concept of a "machine-implemented method of controlling presentation of video content."  *See* '251 patent, claim 1.  Thereafter, the claim merely further recites that "the video content" is associated with playback on the display device while the origin of the content is left undefined.  The specification passage and figure cited by Touchstream (Resp. Br. at 10) also do not relieve this ambiguity, as "content" is not even mentioned other than in the context of a content provider (*i.e.*, the entity or server that provides the video file).

Now, Touchstream asks the Court to apply an implicit construction to avoid indefiniteness despite what the claim actually recites.  Indeed, the patentee of the Asserted Patents likely noticed this deficiency in later patents, including in the '289 patent, where the claims instead expressly recite "playing content from the specified file."  But similar language is notably missing from the '251 patent and, for this reason, the term and claim are indefinite.

### D. Term 4: "converting the command from the personal computing device into corresponding code to control the media player" ('251 Patent, claim 2)

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| indefinite | plain and ordinary meaning - no construction needed |

Touchstream argues that claim 2 is not indefinite only based on the presumption that, because claim 2 is a dependent claim, it should be narrower and of different scope than claim 1. *See* Resp. Br. at 11. In support of this, Touchstream merely recites both "converting" steps recited in independent claim 1 and dependent claim 2. *Id.* Touchstream, however, disregards that the "converting" limitations in claims 1 and 2 are substantially identical (except for antecedent basis issues discussed in Google's opening brief (Op. Br. at 10)). *Compare* claim 1 ("*converting*, by the server system, the universal playback control *command into corresponding programming code to control* playing of the video content on the display device by *the particular media player*") with claim 2 ("*converting the command* from the personal computing device *into corresponding code to control the media player*) (emphasis added). For the dependent claim to have a different scope than the independent claim, it must actually be different from the limitation in claim 1. *See Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) ("The doctrine of claim differentiation stems from the common sense notion that *different words or phrases used in separate claims* are presumed to indicate that the claims have different meanings and scope.") (internal quotations omitted) (emphasis added). It is not, so claim 2 is invalid.

Touchstream's response is flawed for two additional reasons. First, as Google explained, the limitation includes multiple terms that lack antecedent basis to both independent claim 1 and claim 2. Op. Br. at 10. Second, Touchstream suggests that the plain meaning of the limitation in claim 2 is that there are two converting steps. However, Touchstream does not explain how this

would be supported by the specification (because it is not) nor how the same "command" (recited as "the command" in claim 2) received from the personal computing device can be converted to a programming code twice with both codes used to control playback of the display device. Indeed, in its response to Google's indefiniteness argument for Term 5 (*i.e.*, claim 5 of the '251 patent), Touchstream acknowledges that the command from the personal computing device is the only command converted per the purported invention described in the specification. *See* Resp. Br. at 13.

Thus, Term 4 (and claims including it) should be found indefinite.

E.     Term 5: "universal command" ('251 Patent, claim 5)

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| indefinite | plain and ordinary meaning - no construction needed Alternatively, plain and ordinary meaning, which is "a standard command used for controlling playback of media content such as play or pause" |

Google maintains that Term 5 (and claim 5 of the '251 patent) is indefinite and that Touchstream's proposed alternate construction is erroneous and improperly renders language in the claim superfluous. *See* Op. Br. at 11-12; Resp. Br. at 12-13.

However, to the extent the term is not found to be indefinite, the Court could construe "universal command" (and the purportedly related "universal playback control command") as "a standard command that is converted into a specific command recognized by a particular media player." This would be consistent with Touchstream's arguments as to why the term is not indefinite:

> [T]he specification makes it clear that the "universal command" recited in claim 5 is the same as the "universal playback control command" of claim 1 . . . For example, when discussing a particular embodiment, the specification describes the "universal command" as a command that is converted into a specific command recognized by a media player. (E.g., '251 patent at 5:58-62, "[I]n the illustrated implementation, a universal

adapter 26 is provided to interpret and convert a standard or universal command (e.g., play, pause, etc.) into the specific command recognized by the media player."). The "universal playback control command" is the only command that is "converted" for use "by the particular media player" in claim 1.

Resp. Br. at 13.

> F. **Term 6: "unique identification code assigned to the content presentation device" ('289 Patent, claims 1, 6) and "synchronization code assigned to the content presentation device" ('528 Patent, claims 1, 27)**

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| [unique identification / synchronization] code assigned by the server system to the content presentation device | plain and ordinary meaning - no construction needed. Alternatively, plain and ordinary meaning, which is "[unique identification code] / [synchronization code] associated with a content presentation device." |

Touchstream ignores that the server system is the only component assigning the unique identification / synchronization code to the content presentation device and the importance of providing that understanding to the jury. *See* Op. Br. at 13-14; Resp. Br. at 14-15. Including "by the server system" in the construction allows the jury to understand the structure used in describing the merely functional language of "assigning of the [unique identification / synchronization] code." The only component that the specification describes as performing the assigning is the server system. For example, the specification notes that "in some implementations, the synchronization code is . . . assigned to the display device 22 each time it connects to the server system 24." '251 patent at 5:22-25. While this passage notes "in some implementations," this is the only implementation indicating any actor that performs the assigning, and therefore use of the phrase "in some implementations" is inconsequential.

Further, Touchstream speculates about other actors (*i.e.*, entities other than the server system) that could assign the unique identification / synchronization code, and, in doing so, downplays the import of the "assigning" limitation. *See* Resp. Br. at 15. Such speculation fails

to give deference to the fact that, when the claims and specification are read together, the *server system* is the component that assigns the code. For example, every asserted claim of the Asserted Patents, including the '289 and '528 patents, recite a "method of *controlling* presentation of content on a content presentation device." The steps in the body of the claim recite steps performed by a "server system." Therefore, the patentee's intent was to claim *controlling* by the server system. The assignment *by the server system*, as is also supported by the patent specification (*see, e.g.*, '251 patent at 5:22-25, as noted above), would allow the server system to control the presentation of content on the content presentation device, consistent with the patentee's aforementioned intent.

      Finally, Touchstream erroneously infers that the unique identification / synchronization code can be an IP address or MAC address. Touchstream notes several specification passages, but they actually strongly suggest that the code should not be an IP address or MAC address— (1) "[t]he synchronization code can be different from an IP address associated with the display device and/or a [MAC] address associated with the display device," as noted in the Summary section, and (2) a preferred embodiment describing that "[p]referably, the synchronization code is different from the IP address associated with the device 22" ('251 patent at 2:22-25, 5:23-24). Further, even if assumed, for the sake of argument, that the specification supports the synchronization code being the same as the IP address, that does not imply that the IP address cannot be assigned by the server system. Moreover, in instances where the IP address itself is not assigned by the server system and the synchronization code has the same value as the IP address, this does not in any way imply that the *synchronization code* must be assigned by the same entity that assigns the IP address.

G.  **Term 7: "[identify/identifying/include information indicating] a location of the particular media player" ('528 Patent, claims 1, 27, 28; and '289 Patent, claims 1, 7)**

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| [identify/identifying/including information indicating] an Internet address from where the media player is obtained by the content presentation device | Plain and ordinary meaning, which is, provide information that locates or may be used to locate the particular media player |

Unlike Google's construction, Touchstream's arguments for Term 7 fail to give proper weight and meaning to the word "location" in the context of the claims and specification.[1]  First, it is well established that all claim terms must be given patentable weight.  *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).  Focusing on patentable weight for the claim term "location" does not indicate Google's intent to not give patentable weight to other terms such as identify, identifying, or including information indicating.  Op. Br. at 15-17.  Google simply submits that the term "location" must be accorded patentable weight, rather than be ignored, as Touchstream seems to suggest.

Second, Touchstream attempts to ignore the claimed "location" by indicating that the claim term is directed to the mere identifying of the media player (which is a separate requirement in the claims).  *See* Resp. Br. at 19.  But the claim term is directed to identifying a *location* of the media player, as explicitly noted in the claim language, rather than merely identifying the media player.  Indeed, Touchstream's purported plain and ordinary meaning construction dramatically misconstrues (and broadens) the subject matter of this limitation by arguing that identifying a location of a component is equivalent to providing information that can be used to locate that component (with no direction as to how this is to be accomplished).

---

[1] Touchstream also fails to rebut Google's assertion that claim construction is necessary for this term and therefore concedes that the term should be affirmatively construed.

Touchstream's construction is logically and grammatically incorrect and would provide little guidance to one of skill studying the patent. Certain claims, such as in the '251 patent, do not include this limitation. Those that include it should not be broadened such that the expressly stated limitation becomes irrelevant.

Third, Touchstream incorrectly notes an embodiment where the media player is allegedly already located on the content presentation device, and is therefore not on the Internet at all. *See* Resp. Br. at 21. This assertion is unfounded for the following reasons. The use of the term "already" does not indicate that the media player was not previously located on the Internet, especially in light of the specification's disclosure that the content presentation device obtains the particular media player over a network from a content provider, as Touchstream acknowledges. *See, e.g.*, '251 patent at 6:37-40 ("the display device 22 requests and obtains a copy of the appropriate media player 40 and a copy of the video file 42 from a content provider 30"). Further, nowhere does the specification state that the media player is only permanently resident at the content presentation device nor that the "location" of the media player refers to the location of the content presentation device (or a location thereon). Indeed, such an interpretation would ignore the context of the device communication disclosed in the patent (and as claimed). The personal communication device has no knowledge of whether the media player has already been obtained over the Internet and loaded on the content presentation device, which is why the claims require provision of the location of the player.

Fourth, Touchstream incorrectly uses claim differentiation across the '528 and '289 Patents to infer that the meaning of "location" is the same in both patents. *See* Resp. Br. at 19-20. However, to do so, Touchstream erroneously assumes that if certain claims do not expressly recite that the "media player is obtained over a network from a content provider" (which is

recited explicitly in '528 patent, but not so in '289 patent), then all claims allow for the media player to be permanently resident on the content presentation device.  This assumption is merely attorney argument, would vitiate several additional limitations of the '528 patent, and would be inconsistent with the specification as discussed in Google's brief.  Likewise, unasserted claims 10 (independent) and 11 (dependent) also do not support Touchstream's argument for claim differentiation (Resp. Br. at 19-20) as claim 10 merely adds an additional claim limitation in the case where the media player has already been obtained over the Internet.  Even with the addition of this dependent claim, it cannot obviate the requirement that the "location" of the media player (as required by the claim language) must still be provided by the personal computing device to the computer system.

### H.     Term 8: "action control command being independent of the particular media player" ('528 Patent, claims 1, 27, 28; '289 Patent, claims 1, 6)

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| action control command being in a standard format that must be converted for use by the particular media player | plain and ordinary meaning - no construction needed |

Touchstream proposes plain and ordinary meaning for Term 8 but also proposes a construction, arguing that the term "simply means that an action control command is not specific (*i.e.*, is not *dependent* upon) a particular media player."  Resp. Br. at 23.  While this may be true in part, it ignores that the command, in the context of the claims and specification, must be in standard format and must be converted (as discussed in Op. Br. at 24-26 and below).

Touchstream primarily disputes the difference between a "standard command" and a "standard format."  However, it is clear from the specification that the commands received from the personal computing device are "standard."  Op. Br. at 25-26.  Touchstream's objection to Google's use of "standard format" in its construction is therefore unpersuasive.  Indeed,

Touchstream's construction for a related term (Term 5) similarly uses "standard," and Touchstream's rationale for why that term is not indefinite substantially mirrors Google's construction. *See W. H. Wall Fam. Holdings, LLLP v. Celonova Biosciences, Inc.*, No. 1-18-CV-00303-LY, 2019 WL 4016454, at *2 (W.D. Tex. Aug. 26, 2019) ("terms are normally used consistently throughout the patent").

Touchstream otherwise ignores Google's construction requiring the command to be "converted," other than erroneously claiming that Google is importing an embodiment from the specification. As Touchstream implicitly admits, the conversion step is necessary for the invention to operate. This is made clear in the Summary of the Invention, which Touchstream admits "describe[s] the invention as a whole." Resp. Br. at 24-25.[2] In particular, as Touchstream itself quotes, the Summary of the Invention in the specification describes the invention consistent with Google's construction: "[I]n response to receiving the message, to convert the command into a corresponding command recognizable by the media player . . . ." *Id.* (quoting '251 patent at 2:3-7). Accordingly, Touchstream's attempt to distinguish Google's case law fails because the "Summary of the Invention" describes the claim language in similar terms (*i.e.*, the command is "converted for use by the particular media player") to the Detailed Description of the specification (and with Google's construction). *See* Op. Br. at 25-26.

Touchstream also erroneously argues that the "Detailed Description" purportedly describes an "illustrated implementation," in an attempt to distinguish Google's case law.

---

[2]Touchstream argues, citing *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012), that Google's construction is invalid because "there is no lexicography or disavowal in the record." Resp. Br. at 23. However, it later concedes that language from the specification that describes the invention as a whole may also warrant construing claim language accordingly. *Id.* at 24 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004)).

However, as discussed above (and in Touchstream's brief), the Detailed Description is wholly consistent with the Summary of the Invention in describing the invention as a whole. In addition, Touchstream ignores that the Detailed Description also states that the language in Google's construction is performed "each time" at the server. *See id.* at 25. Once again, this is describing the invention as a whole rather than a preferred embodiment. *See C.R. Bard*, 388 F.3d at 864.

Finally, Google does not argue that the prosecution history provides a disclaimer to the claim language. Rather, along with the fact that the claims describe both the "action control command" and the "programming code" in similar terms, the prosecution shows why construction of this term is necessary. *See* Op. Br. at 23-24. The Applicant noted the import of this limitation to avoid prior art during prosecution, and now Touchstream appears to be implicitly ignoring this during litigation—as shown by its arguments that a command that must be converted for use by the particular media player is not representative of the invention as a whole. Google's construction, instead, is necessary and is consistent with the specification and the claim language.

### I. Term 9: "identifying, [by the server system,] programming code corresponding to the action control command, wherein the programming code is for controlling presentation of the content by the content presentation device using the particular media player" ('528 Patent, claim 1, 27, 28; '289 Patent, claims 1 and 6)

| Google's Proposed Construction | Touchstream's Proposed Construction |
|---|---|
| by the server system, identifying the specific media player that is being requested and converting the incoming commands into the correct programming code used by the content presentation device to control the specific media player | plain and ordinary meaning - no construction needed. Alternatively, plain and ordinary meaning for "programming code," which is "instructions that the media player can recognize and execute," otherwise plain and ordinary meaning - no construction needed |

As with Term 8 above, Touchstream erroneously claims that this term only requires a

plain and ordinary construction because there is purportedly no disclaimer or lexicography. However, in the response, Touchstream (1) ignores that the "Summary of the Invention" and "Detailed Description" of the specification both describe the purported invention as a whole; (2) fails to acknowledge that the use of "identify" throughout the claims creates ambiguity in the claim language further requiring construction; and (3) proffers flawed implicit constructions under the guise of plain and ordinary meaning.

First, Touchstream claims that Google is importing preferred embodiments into the construction. *See* Resp. Br. at 28-29. However, as discussed in the opening brief, Google's construction is supported by the specification, which describes the invention as a whole. In particular, the "Summary of the Invention" clearly describes Term 9 as "converting" the action control command into the corresponding programming code. '251 patent at 2:3-7 ("[I]n response to receiving the message, to convert the command into a corresponding command recognizable by the media player . . . ."). Touchstream erroneously claims that the Summary of the Invention describes this step in broader terms than Google's construction. *See* Resp. Br. at 28 (quoting '251 patent at 2:7-11). This language that purportedly describes the whole of the invention merely states that the programming code (after conversion from the action control command) is ultimately provided to and executed by the display device. *See id.* This language has nothing to do with Term 9, and, notably, the portion of the specification cited by Touchstream follows directly after the "converting" step cited above and in the opening brief (Op. Br. at 29). Moreover, and as with Term 8 above, Touchstream ignores that the Detailed Description is wholly consistent with the Summary of the Invention in describing the invention as a whole. In addition, the Detailed Description also states that the language in Google's construction is performed "each time" at the server. *See* Op. Br. at 25; *C.R. Bard*, 388 F.3d at 864. In contrast,

the language that follows the "illustrated implementation," as quoted by Touchstream, expressly discusses the use of "JavaScript" and "a universal adapter 26." Resp. Br. at 29. Such language does not appear in Google's construction here.

Second, contrary to Touchstream's response, the fact that the claims and specification use "identify" for other limitations creates ambiguity in the claims, further requiring construction of Term 9. For one, as discussed in the opening brief, nowhere in the specification is "identify" used with respect to programming code to describe the invention. *See* Op. Br. at 29-30. Rather, the specification consistently describes this step in terms of "converting" the command into the programming code. *See id.* In contrast, the specification and claims, as cited by Touchstream, describe limitations where the personal computing device provides particular, required information to the server system – *e.g.*, the target display device, the media player, and the selected video. *See* Resp. Br. at 27-28. This is materially different from the step in Term 9 where it is the *server system* that must use information that it has received (*i.e.*, the media player and action control command), in addition to information known by the server, to convert the command into the correct programming code. Term 9 is therefore substantially different from the "identify" and "identification" language cited by Touchstream and this usage for materially different functions will only tend to confuse the jury.³

Finally, as discussed above and consistently in the specification, Term 9 substantially

---

³Touchstream's issues with other portions of Google's construction similarly miss the mark. *See* Resp. Br. at 29-30. Google's inclusion of "identifying the media player" is also consistent with the specification and merely acknowledges that knowledge of the media player is required to identify (or "convert") to the correct programming code. *See* Op. Br. at 29. Touchstream acknowledges that the programming code must be specific to the media player, so such knowledge is essential to the invention. In addition, Touchstream agrees that the corresponding programming code must be "correct" and yet claims that this natural inclusion would be confusing to the jury. *See* Resp. Br. at 29-30. Touchstream's positions do not align.

differs from the purported plain and ordinary meaning that Touchstream suggests: "indicating or allowing the system to find the code that the content presentation device can feed to the media player to actually execute." *See* Op. Br. at 28.  For one, Touchstream ambiguously uses "system" in its plain and ordinary meaning construction rather than "server system," which is where this limitation is performed.  To be clear, the prosecution history confirms this point as discussed in Google's opening brief, which Touchstream ignores.  *See id.* at 27-28.  Second, as discussed above, this "construction" is unsupported by the specification which consistently describes this step as "converting" the command to the correct programming code.  In contrast, Touchstream appears to suggest, unsupported by the specification, that this limitation merely requires the content presentation device to obtain the programming code in some unspecified way.  In contrast, it is clear from the claims, specification, and prosecution history, that the command is converted at the server and then the programming code is subsequently provided to the content presentation device.  Third, Touchstream's plain and ordinary meaning construction for "programming code" is similarly flawed as discussed in the opening brief.  *See id.* at 30.  Moreover, in support of this construction, Touchstream purports to use a dictionary definition for "code" that means "program instructions."  However, in Touchstream's construction, "program" (which appears in both the claim language and the dictionary definition) is nowhere to be found.  Instead, the construction merely generically includes "instructions."

- 16 -

Dated:  January 20, 2022

By: */s/  Michael C. Hendershot with permission,
by Michael E. Jones*
Michael C. Hendershot

JONES DAY
Tharan Gregory Lanier  (*Admitted pro hac vice*)
CA State Bar No. 138784
E-mail: tglanier@jonesday.com
Michael C. Hendershot  (*Admitted pro hac vice*)
CA State Bar No. 211830
E-mail: mhendershot@jonesday.com
Evan M. McLean  (*Admitted pro hac vice*)
CA State Bar No. 280660
E-mail: emclean@jonesday.com
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:   (650) 739-3939
Facsimile:    (650) 739-3900

POTTER MINTON PC
Michael E. Jones
TX State Bar No. 10929400
E-mail:  mikejones@potterminton.com
Patrick C. Clutter
TX State Bar No. 24036374
E-mail:  patrickclutter@potterminton.com
110 N. College Ave., Suite 500
Tyler, TX 75702
Telephone:   (903) 597-8311
Facsimile:    (903) 593-0846

*Attorneys for Defendant
GOOGLE LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to all counsel of record who have appeared in this case per Local Rule CV-5(b) on January 20, 2022.

*/s/ Michael E. Jones*
Michael E. Jones
