**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC. | |
| Plaintiff, | |
| v. | Civil Action No. 6:21-cv-569-ADA |
| GOOGLE LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

**<u>TOUCHSTREAM'S SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................... 1

II.   AGREED CONSTRUCTIONS.............................................................................. 1

      A.  "media player"............................................................................................. 1

III.  DISPUTED CONSTRUCTIONS .......................................................................... 1

      A.  "an association between the personal computing device and the
          [display device / content presentation device]" ('251 patent, claim 1;
          '528 patent, claims 1, 27, 28; and '289 patent, claims 1, 6)........................... 1

      B.  "video file" / "video content" ('251 patent, claims 1, 6, 7)........................... 3

      C.  "converting the command from the personal computing device into corresponding
          code to control the media player" ('251 patent, claim 2)................................ 5

      D.  "universal command" ('251 patent, claim 5) .................................................. 6

      E.  "unique identification code assigned to the content presentation device"
          ('289 patent, claims 1 and 6) and "synchronization code assigned to the
          content presentation device" ('528 patent, claims 1, 27) ................................ 7

      F.  "[identify/identifying/include information indicating] a location of the
          particular media player" ('528 patent, claims 1, 27, 28; and '289 patent,
          claims 1, 7) ................................................................................................... 9

      G.  "action control command being independent of the particular media player"
          ('528 patent, claims 1, 27, 28; '289 patent, claims 1 and 6) ......................... 11

      H.  "identifying, [by the server system,] programming code corresponding to the
          action control command, wherein the programming code is for controlling
          presentation of the content presentation device using the particular media player"
          ('528 patent, claims 1, 27, 28; '289 patent, claims 1 and 6) ......................... 13

IV.   CONCLUSION ....................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ................................................................................................ 7

*Blackbird Tech. LLC v. ELB Elecs., Inc.*,
    895 F.3d 1374 (Fed. Cir. 2018) .............................................................................................. 12

*Copperhead Indus., Inc. v. Changer & Dresser, Inc.*,
    No. 1:18-CV-01228-ACA, 2020 WL 429484 (N.D. Ala. Jan. 28, 2020) ................................ 4

*Dow Chem. Co. v. Nova Chems. Corp.*,
    809 F.3d 1223 (Fed. Cir. 2015) ................................................................................................ 3

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ................................................................................................ 8

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
    381 F.3d 1352 (Fed. Cir. 2004) ................................................................................................ 8

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) .................................................................................................. 8

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000) ................................................................................................ 2

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) .................................................................................................. 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) .................................................................................................................. 3

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) .............................................................................................. 13

*Prima Tek II, LLC v. Polypap, SARL*,
    318 F.3d 1143 (Fed. Cir. 2003) .............................................................................................. 13

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002) ................................................................................................ 9

ii

*Twist, Inc. v. B. GSE Grp., LLC*,
　No. 3:19-cv-00583, 2021 WL 2210892 (W.D.N.C. June 1, 2021).............................................. 4

*Unwired Planet, LLC v. Apple Inc.*,
　829 F.3d 1353 (Fed. Cir. 2016) ...................................................................................... 12

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
　503 F.3d 1295 (Fed. Cir. 2007) ....................................................................................... 2

*Virnetx, Inc. v. Cisco Sys., Inc.*,
　767 F.3d 1308 (Fed. Cir. 2014) ....................................................................................... 5

iii

## I.     INTRODUCTION

Touchstream submits this sur-reply brief in response to Defendant Google LLC's ("Google") reply claim construction brief (Dkt. 30).

## II.    AGREED CONSTRUCTIONS

### A.   "media player"

The Parties agree that this term should be afforded its plain and ordinary meaning and no further construction is necessary.

## III.   DISPUTED CONSTRUCTIONS

### A.   "an association between the personal computing device and the [display device / content presentation device]" ('251 patent, claim 1; '528 patent, claims 1, 27, 28; and '289 patent, claims 1, 6)

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| plain and ordinary meaning - no construction needed | one-to-one mapping between the personal computing device and the [display device / content presentation device] |

Google's reply argument has multiple flaws. First, Google falsely states that "[a]s Touchstream points out, the specification makes clear that the record that stores the association between the personal computing device and display device *uniquely connects* (i.e., maps) the two devices . . . ." (Dkt. 30 at 4,[1] emphasis added). In fact, Touchstream pointed out the opposite: that the association does *not* have to be unique or "one-to-one," insofar as that means only two devices can ever be connected. (Dkt. 29 at 10).   Reading a "one-to-one" limitation into the claims improperly excludes embodiments expressly disclosed in the specification, contravening fundamental canons of claim construction. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*,

---

[1] Citations are to ECF page numbers.

503 F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way that excludes disclosed examples in the specification").

Next, Google argues that the "association" must be "one-to-one" in order for the server to identify the proper devices. But adding the term "one-to-one" to the construction does not support this point. The plain and ordinary meaning of the term "association," which refers to a connection or correspondence (*see* Dkt. 29 at 9), indicates the relationship between the connected devices: the server can identify the proper devices because of the connection or correspondence between them. A person of ordinary skill in the art—and even a lay juror—would be perfectly capable of understanding the claimed "association" without further construction because the term is used in its ordinary sense. (Dkt. 29 at 8-9). Google's proposal reads in a preferred embodiment and creates confusion.

Finally, Google does not even attempt to rebut Touchstream's argument regarding the open "comprising" transition clause in the claims (Dkt. 29 at 12 n.4), instead repeating the argument that the claims recite only a single phone and a single display. But that argument fails. The claims at issue in this case contain the transitional phrase "comprising," and further recite "*a* personal computing device" and "*a* display device" (or "*a* content presentation device"). The Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) (citations omitted). As the Federal Circuit went on to state, "the article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article." *Id.* No such "rare circumstances" are present here. To the contrary, the specification

2

expressly describes embodiments in which *multiple* personal computing devices connect to *multiple* display devices, and it makes clear that these embodiments are within the scope of the invention. (Dkt. 29 at 11-12).

Google's attempt to limit this term to a "one-to-one mapping" improperly imports limitations from the specification, ignores fundamental principles of claim interpretation, and creates unnecessary confusion. The Court should find that this term has its plain and ordinary meaning, and that no construction is needed.

**B.   "video file" / "video content" ('251 patent, claims 1, 6, 7)**

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| plain and ordinary meaning - no construction needed | indefinite |

Google has not met its burden to prove, by clear and convincing evidence, that these terms are indefinite. To do so, Google must show that the "claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898–99 (2014). Indefiniteness is "evaluated in light of knowledge extant in the art at the time the patent application is filed. . . . It has long been the case that the patent need not disclose what a skilled artisan would already know." *Dow Chem. Co. v. Nova Chems. Corp.*, 809 F.3d 1223, 1225 (Fed. Cir. 2015) (citations omitted). Despite this established authority, Google has failed to provide any evidence demonstrating that a skilled artisan would not have known the meanings of a "video file" and "video contents."  Not only did it fail to provide a declaration or similar testimony in support of its untenable position, it did not even provide a definition of what the level of skill in the art would be. *See, e.g.*, *Twist, Inc. v. B. GSE Grp., LLC*, No. 3:19-cv-00583, 2021 WL 2210892, at *8

3

(W.D.N.C. June 1, 2021) ("Since [Defendant] fails to identify the level of skill for a POSITA or testimony from a POSITA, it is in no position to argue that a POSITA would have trouble discerning the scope of the claims."). In fact, Google never even _refers_ to a person of ordinary skill in the art in arguing that these terms are indefinite. Google cannot carry its heavy burden of proving indefiniteness by clear and convincing evidence without any analysis of how a person of ordinary skill in the art would understand these claim terms.

Google accuses Touchstream of relying on "attorney argument," but it is Google's burden to show indefiniteness by clear and convincing evidence, and it is Google that offers only unsupported attorney argument by alleging that these terms are indefinite without providing any evidence regarding a person of skill in the art. *See Twist*, 2021 WL 2210892 at *8 ("[E]ach 'uncertainty' that [Defendant] alleges a POSITA might face is purely conjecture and attorney argument. This is insufficient to prove indefiniteness."); *see also Copperhead Indus., Inc. v. Changer & Dresser, Inc.*, No. 1:18-CV-01228-ACA, 2020 WL 429484, at *6–7 (N.D. Ala. Jan. 28, 2020) ("[Defendant] offers no evidence—much less clear and convincing evidence—that a person of ordinary skill in the art would not understand the term actuator. . . . Therefore, [Defendant] has not met its burden of establishing that 'actuator' is indefinite."). Touchstream merely pointed out, in its responsive brief, that even a _lay person_ reading the claim in view of the specification would understand the relationship between a "video file" and "video content" (specifically, that a "file" is a container that holds "content"). *See Twist*, 2021 WL 2210892 at *8 (finding claim definite in part because "'attached' is an ordinary and common phrase for 'joined' or 'fastened' that even a lay person, who is not a POSITA, can understand"). Google has failed to carry its burden to show these terms are indefinite, and the Court should reject Google's assertion.

4

C.   **"converting the command from the personal computing device into corresponding code to control the media player" ('251 patent, claim 2)**

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| plain and ordinary meaning - no construction needed | indefinite |

As with the previous term, Google has not met its burden to show that this term is indefinite. First, contrary to Google's arguments, claim differentiation does not require "different words or phrases" in different claims. Instead, it stands more generally for the proposition that "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1316 (Fed. Cir. 2014). Here, dependent claim 2 recites a "converting" limitation *without* using "wherein" language that would imply this claim is modifying or narrowing the "converting" limitation from claim 1. Accordingly, the presumption is that the "converting" limitation in claim 2 is not modifying or limiting the "converting" limitation in claim 1, but stands as its own separate limitation, in addition to the "converting" limitation of claim 1.

Further, the specification supports such additional "converting" steps. For example, the same embodiments that describe a "converting" step describe the use of "commands"—plural—to control playback. *See, e.g.*, '251 patent at 5:62-6:3 ("[T]he system loads the appropriate set of protocols . . . and *converts the incoming commands* from the mobile device 20 into the correct JavaScript (or other programming) code used by the target device 22 to control the specific player."); 6:51-60:

> Once the video is playing on the display device 22, the user of the mobile phone 20 can control the playing of the video by entering appropriate *commands* (e.g., pause, fast forward, rewind, stop, play, etc.) through the mobile phone. . . . The message is transmitted to the server system 24, which copies the message into database entries associated with the particular display device 22 (i.e., *after performing any*

5

*conversion* of the command by the API adapter 26).

(emphases added). The specification expressly contemplates a series of commands that are sent and then converted. Google's argument regarding antecedent bases likewise fails because the meaning of the claim is reasonably ascertainable based on the surrounding claims and the specification. The claim is not indefinite.

**D.    "universal command" ('251 patent, claim 5)**

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| plain and ordinary meaning - no construction needed<br><br>alternatively, plain and ordinary meaning, which is "a standard command used for controlling playback of media content such as play or pause" | indefinite |

Google's reply brief does not rebut Touchstream's arguments that this term has its plain and ordinary meaning and requires no construction. First, Google states that it stands on its arguments in its opening brief. (Dkt. 30 at 8). But it then pivots, suggesting that the Court consider adopting a particular alternative construction for the related terms "universal command" and "universal playback control command." The Court should reject Google's proposal because it is redundant and fails to give meaning to all of the claims' terms. Google proposes reading a conversion limitation into the claim term—"a standard command that is *converted* into a specific command"—but claim 1 of the '251 patent (in which the term "universal playback control command" first appears) *already* recites the "converting" step: "*converting*, by the server system, the universal playback control command into corresponding programming code to control playing of the video content on the display device by the particular media player." ('251 patent at 11:43-

46). "Claim constructions should give meaning to all of a claim's terms," and "[c]onstruing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016). Google's redundant construction fails this basic test.

Should the Court decide to adopt any construction for "universal command," it should adopt Touchstream's alternative proposed construction, which reflects the term's plain and ordinary meaning and properly gives meaning to all of the claim's terms.

### E.   "unique identification code assigned to the content presentation device" ('289 patent, claims 1 and 6) and "synchronization code assigned to the content presentation device" ('528 patent, claims 1, 27)

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| plain and ordinary meaning - no construction needed<br><br>alternatively, plain and ordinary meaning which is "[unique identification code] / [synchronization code] associated with a content presentation device" | [unique identification / synchronization] code assigned by the server system to the content presentation device |

Rather than responding to Touchstream's arguments, Google simply repeats its incorrect assertion that the server is the only actor identified in the patent as performing assignment—then doubles down on its flawed argument that its construction must be correct. Google's argument contravenes substantial case law from the Federal Circuit holding that "it is improper to read limitations from a preferred embodiment described in the specification—*even if it is the only embodiment*—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) (collecting cases) (emphasis added); *see also Home Diagnostics, Inc. v. LifeScan,*

*Inc.*, 381 F.3d 1352, 1357 (Fed. Cir. 2004) ("[T]he applicant's choice to describe only a single embodiment does not mean that the patent clearly and unambiguously disavowed other embodiments."). Google does not cite any case law to the contrary in support of its position.

Further, assignment by the server is *not* the only embodiment contemplated, as Touchstream pointed out in its responsive brief. (Dkt. 29 at 21). While Google contends that the specification "strongly suggests" that the code should not be an IP or MAC address (neither of which would be assigned by the server), the language Google cites—i.e., "*can be* different" and "*preferably*, the synchronization code is different"—at most suggests that the code *could* be, but does not *have* to be, different. This language certainly does not amount to the clear and unmistakable disavowal required for disclaimer. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 844 (Fed. Cir. 2010) ("The specification's permissive language, 'could be edited,' 'can be created,' and 'ability to work,' does not clearly disclaim systems lacking these benefits."); *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("Additionally, the specification states that 'preferably' none of these clays are added; this strongly suggests that absence of clays is simply a preferred embodiment.").

Google also argues that the server system must assign the code because the claims recite a method of controlling presentation and "the steps in the body of the claim recite steps performed by 'a server system.'" But Google does not explain why the server's role in controlling *presentation* of content (as the preamble recites) means that the server must also assign a synchronization code. Further, while some steps in the body of the claim are recited as being performed by the server system (e.g., receiving messages from the personal computing device, identifying programming code), others recite no such requirement (e.g., assigning the code, storing

8

a record). Where the patentee meant for steps to be performed by the server, he said so. *See Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1371 (Fed. Cir. 2002) (rejecting narrow construction based on single embodiment in part because "where the patentee meant to constrict the claim to [that embodiment], he said so clearly"). Google's arguments should be rejected: this term requires no construction. But if the Court believes one is necessary, it should adopt Touchstream's alternative proposal, which is properly based on the plain and ordinary meaning of the claim terms.

**F.   "[identify/identifying/include information indicating] a location of the particular media player" ('528 patent, claims 1, 27, 28; and '289 patent, claims 1, 7)**

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| plain and ordinary meaning, which is, provide information that locates or may be used to locate the particular media player | [identify/identifying/including information indicating] an Internet address from where the media player is obtained by the content presentation device |

Contrary to Google's assertions, Touchstream does not "ignore" the word "location" in this claim term. Touchstream simply points out that the word "location" has its plain and ordinary meaning here, rather than improperly reading a preferred embodiment into the claims (as Google does in attempting to limit "location" to "an Internet address"). And unlike Google's construction, Touchstream's construction gives patentable weight not only to the term "location," but also to the claim terms "identify," "identifying," and "including information indicating" by capturing their plain and ordinary meaning: that is, "*to provide information* that locates or may be used to locate."

Nor does Touchstream conflate identifying the *media player* with identifying *its location*, as Google alleges. Rather, Touchstream's construction expressly contemplates that the provided information must be sufficient to *locate* the media player, not merely identify it.

9

Google's final two arguments fail together because Google again disregards an express embodiment—discussed first in the specification and then in the claims—in which the media player is *<u>already located</u>* on the content presentation device and is therefore *<u>not on the Internet at all</u>*. Google argues that the location could nonetheless still be an Internet address because the media player may have been "previously located on the Internet." (Dkt. 30 at 12). But Google's only support for this convoluted argument is that the media player is obtained over a network in a *<u>preferred embodiment</u>*. The claims should not be read so narrowly in view of the specification, which expressly contemplates (1) that "the message from the mobile phone includes . . . the location and name of the media player" ('251 patent at 4:29-33), (2) that in one embodiment of the invention, the media player is "not already loaded in the display device" and must be obtained "from a content provider" (*id.* at 6:36-40), and (3) that in another, separate embodiment, the "media player already is loaded in the display device" (*id.* at 6:42-43). Absent disclaimer or disavowal, the term "location" should be construed broadly enough to encompass both embodiments, which mandates rejecting Google's overly-narrow construction limiting the location to "an Internet address."[2]

As noted above, Google's final argument—concerning claim differentiation—fails for similar reasons. First, Touchstream's own argument in its responsive brief would not vitiate any (unspecified) limitations of the '528 patent, as Google alleges. (Dkt. 30 at 13). Touchstream simply

---

[2] Google also argues, without support, that the personal computing device "has no knowledge" of whether the media player is already loaded on the content presentation device. (Dkt. 30 at 12). But if the personal computing device has no knowledge of where the media player is located, there would be no reason for it to provide location information as expressly claimed.

explained that the term "location" should not be limited to "an Internet address" by noting that some claims (as in the '528 patent) require the media player to be obtained over a network, while others (as in the '289 patent) do not. Google then alleges that "claim 10 [*sic*] merely adds an additional claim limitation in the case where the media player has already been obtained over the Internet," but Claim 11 (which Google presumably meant to cite) simply recites that "the content presentation device is operable to load the particular media player in the content presentation device if the particular media player is not already loaded in the content presentation device." Claim 11 recites nothing about the Internet or obtaining the media player over a network, as Google alleges. And Claim 11 provides no support for Google's assertion that an Internet address would be provided to the content presentation device even though the media player is not even located on the Internet. Touchstream's proposed construction, which merely interprets the plain and ordinary meaning of these claim terms in view of the specification and claims, does not suffer from any of these flaws, and should therefore be adopted by the Court.

### G. "action control command being independent of the particular media player" ('528 patent, claims 1, 27, 28; '289 patent, claims 1 and 6)

| Touchstream's Proposed Construction | Google's Proposed Construction |
| --- | --- |
| plain and ordinary meaning - no construction needed | action control command being in a standard format that must be converted for use by the particular media player |

Much like in its opening brief, Google's reply arguments for reading the word "standard" into this term all relate to a standard *command* rather than a standard *format* (e.g., "it is clear from the specification that the *commands* received from the personal computing device are 'standard,'" Dkt. 30 at 10, emphasis added). As Touchstream pointed out in its responsive brief, a *command* could be standard (such as play, pause, stop, etc.) yet be in any *format*—standard or non-standard

(i.e., JSON or a unique format concocted by a developer). (Dkt. 29 at 30). Google also points to Touchstream's construction of "universal command" as alleged support for reading "standard format" into this claim. But Touchstream's use of "standard" in that construction corresponds to the claim term "universal," which likewise describes the *command itself*, rather than the format of the command.

Google's argument that the term "convert" must be read into the claims because it appears in the "Summary" section of the specification is also misplaced. "[I]t is certainly not the case that everything in . . . the summary of the invention constitutes a mandatory claim limitation to be read into claims. . . . This should not be interpreted as any sort of hard rule regarding claim construction." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016). A disclaimer or disavowal of claim scope must still be clear and unmistakable, requiring "words or expressions of manifest exclusion or restriction" in the intrinsic record. *Id.* (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). Here, the term "convert" in the Summary section is prefaced by "in some implementations," rather than by more limiting language such as "the present invention." *Id.*; *see also Blackbird Tech. LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1377 n.2 (Fed. Cir. 2018) ("In cases where we have held limitations ought to be read in, it was not simply because those limitations appeared in the Summary of the Invention. There was specific language that made clear those limitations were important to the claimed invention."). Google also points to the language "each time" in the specification, but that, too, appears only in a preferred embodiment. ('251 patent at 5:54-64; "each time" appears in paragraph beginning "[i]n the illustrated implementation . . ."). Again, in the absence of clear and unmistakable disclaimer or disavowal—such as some express statement in the specification about the importance of a

12

feature to the claimed invention (which Google has not pointed to here)—there is no reason to depart from this term's plain and ordinary meaning.

Google's final argument, relying on the prosecution history, is also unavailing because the applicant did not actually disavow any meaning of this claim limitation in adding it during prosecution.  Google suggests that because "[t]he Applicant noted the import of this limitation to avoid prior art during prosecution," it must be construed to have something other than its plain and ordinary meaning. (Dkt. 30 at 15). But Google cites no case law to support this theory. Rather, the case law makes clear that prosecution disclaimer narrows the plain and ordinary meaning of a term only "where the patentee has unequivocally disavowed a certain meaning to obtain his patent." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). Here, there was no disavowal and therefore no disclaimer, as Google even admits: "Google does not argue that the prosecution history provides a disclaimer to the claim language." (Dkt. 30 at 15). Far from ignoring "the import of this limitation" then, as Google alleges, Touchstream merely points out that this claim term should be construed to have its plain and ordinary meaning because Google has not pointed to evidence—in the specification, claims, or prosecution history—sufficient to overcome the "heavy presumption in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art." *See Prima Tek II, LLC v. Polypap, SARL*, 318 F.3d 1143, 1148 (Fed. Cir. 2003).

**H.  "identifying, [by the server system,] programming code corresponding to the action control command, wherein the programming code is for controlling presentation of the content presentation device using the particular media player" ('528 patent, claims 1, 27, 28; '289 patent, claims 1 and 6)**

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| plain and ordinary meaning - no construction | by the server system, identifying the |

| Touchstream's Proposed Construction | Google's Proposed Construction |
|---|---|
| needed<br><br>alternatively, plain and ordinary meaning for "programming code" which is "instructions that the media player can recognize and execute," otherwise plain and ordinary meaning - no construction needed | specific media player that is being requested and converting the incoming commands into the correct programming code used by the content presentation device to control the specific media player |

Here, Google mainly repeats the same flawed arguments it made for the previous term for improperly importing a "converting" limitation into the claims. As Touchstream already explained in § III.G above, the patent specification does not compel reading a "converting" limitation into this term.

Google also devotes only a footnote to Touchstream's arguments that Google's proposed construction improperly reads in limitations concerning identifying "the specific media player that is being requested" and determining "correct programming code" (Dkt. 30 at 17 n.3). And Google misstates Touchstream's positions on both points. First, Touchstream never acknowledged that the programming code "must be specific to" the media player—which would indicate that the code must be special to or particular to a media player. Rather, Touchstream stated that the programming code should be _recognizable_ and _executable_ by the media player. Code can be _executable_ by the media player without being _particular_ to it (for instance, in the case of two separate but interoperable media players). Second, there is nothing inconsistent in Touchstream's statement about "correct" programming code, nor does Touchstream's position support Google's construction. To the contrary, Touchstream merely pointed out that programming code is implicitly "correct" if it can control presentation of the content presentation device using the particular media player, so Google's proposed inclusion of the term "correct programming code"

14

adds nothing to this term.

Google also alleges that this term should be construed because the claims and specification use the term "identify" in other contexts. But a jury should be perfectly capable of understanding that two different actors—the personal computing device (via the messages it sends) and the server—could both perform "identifying" steps, where the terms "identify" and "identifying" are used in their plain and ordinary sense of establishing or recognizing the identity of something. (*E.g.*, Ex. C at 3).

Finally, Google faults Touchstream for not including the term "program" in its proposed alternative construction, even though that word appears in Touchstream's cited dictionary definition. But the fact that the Microsoft dictionary definition for "code" is "program instructions" shows that the nearly identical claim term "programming code" is used in its plain and ordinary sense, and Touchstream's proposed alternative construction simply clarifies the plain and ordinary meaning of that technical term for a lay juror.

## IV.    CONCLUSION

For the reasons provided above, Touchstream again respectfully requests that the Court adopt its proposed claim constructions and reject Google's proposed constructions and assertions of indefiniteness.

Date: February 3, 2022                      Respectfully submitted,

                                             SHOOK, HARDY & BACON L.L.P.

                                             */s/ Samuel J. LaRoque*
                                             Samuel J. LaRoque, *pro hac vice*
                                             B. Trent Webb, *pro hac vice*
                                             Ryan D. Dykal, *pro hac vice*

                                             15

Jordan T. Bergsten, *pro hac vice*
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
Fax: (816) 421-5547
Email: slaroque@shb.com
Email: bwebb@shb.com
Email: rdykal@shb.com
Email: jbergsten@shb.com

Fiona A. Bell (TX Bar No. 24052288)
**SHOOK, HARDY & BACON L.L.P.**
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-2008
Fax: 713-227-9508
Email: fbell@shb.com

*Counsel for Plaintiff*
*Touchstream Technologies, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 3, 2022.

By: <u>*/s/ Samuel LaRoque*</u>

17