**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Case No. 6:21-cv-569-ADA |
| | | |
| **GOOGLE LLC,** | | **JURY TRIAL DEMANDED** |
| | | |
| *Defendant.* | | |

## FIRST AMENDED JOINT PRETRIAL ORDER

Plaintiff Touchstream Technologies, Inc. ("Plaintiff" or "Touchstream") and Defendant Google LLC ("Defendant" or "Google") (collectively, "the Parties") submit the following proposed First Amended Joint Pretrial Order pursuant to the Court's Amended Scheduling Order (Dkt. 211), the Court's Standing Order on Pretrial Procedures and Requirements in Civil Cases, Federal Rules of Civil Procedure, and Local Rules of this Court.  The amendments reflect rulings, orders, and agreements since the original proposed Joint Pretrial Order (Dkt. 217).  The Parties have stipulated to various matters identified herein and having identified exhibits, witnesses, factual contentions, and triable issues:

It is hereby ORDERED as follows:

## I.   APPEARANCE OF COUNSEL

### A.   Attorneys for Plaintiff Touchstream Technologies, Inc.

B. Trent Webb (admitted *Pro Hac Vice*)
Ryan D. Dykal (admitted *Pro Hac Vice*)
Lauren Douville (admitted *Pro Hac Vice*)
Jordan T. Bergsten (admitted *Pro Hac Vice*)
Robert A. McClendon (admitted *Pro Hac Vice*)
Philip A. Eckert (admitted *Pro Hac Vice*)

Shook, Hardy & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108-2613
(816) 474-6550
Fax: (816) 421-5547
bwebb@shb.com
rdykal@shb.com
ldouville@shb.com
jbergsten@shb.com
rmcclendon@shb.com
peckert@shb.com

Gary M. Miller (admitted *Pro Hac Vice*)
Justin R. Donoho (admitted *Pro Hac Vice*)
Sam Bernstein (admitted *Pro Hac Vice*)
Shook, Hardy & Bacon LLP
111 S. Wacker Drive, Suite 4700
Chicago, IL 60606
312-704-7700
Fax: 312-558-1195
gmiller@shb.com
jdonoho@shb.com
sbernstein@shb.com

Sharon A. Israel
Andrew M. Long
Michael W Gray
Robert Reckers
Shook, Hardy & Bacon L.L.P.
600 Travis, Suite 3400
Houston, TX 77002
(713) 227-8008
Fax: (713) 227-9508
sisrael@shb.com
amlong@shb.com
mgray@shb.com
rreckers@shb.com

**B.    Attorneys for Defendant Google LLC**

Michael E. Jones
Shaun William Hassett
Potter Minton PC
110 N College
Suite 500
Tyler, TX 75702

903-597-8311
Fax: 903-531-3939
mikejones@potterminton.com
shaunhassett@potterminton.com

Michael C. Hendershot (admitted *Pro Hac Vice*)
Tharan Gregory Lanier (admitted *Pro Hac Vice*)
Evan M. McLean (admitted *Pro Hac Vice*)
Gurneet Singh (admitted *Pro Hac Vice*)
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939
Fax: (650) 739-3900
mhendershot@jonesday.com
tglanier@jonesday.com
emclean@jonesday.com
gsingh@jonesday.com

Tracy Ann Stitt (admitted *Pro Hac Vice*)
Jennifer L. Swize (admitted *Pro Hac Vice*)
Edwin O. Garcia (admitted *Pro Hac Vice*)
John R. Boulé III (admitted *Pro Hac Vice*)
Jones Day
51 Louisiana NW
Washington, DC 20001
(202) 879-3939
Fax: (202) 626-1700
tastitt@jonesday.com
jswize@jonesday.com
edwingarcia@jonesday.com
jboule@jonesday.com

## II.   STATEMENT OF JURISDICTION

This Court has subject-matter jurisdiction under Title 28, U.S.C. §§ 1331 and 1338(a),

because this action arises under the Patent Laws of the United States, 35 U.S.C.§ 1 *et seq.*  The

parties do not dispute subject-matter jurisdiction or personal jurisdiction, but Google disputes

venue in this Court, as set forth in its Motion to Transfer (Dkt. 26).

## III.   JOINT STATEMENT OF THE CASE

This is a civil action for patent infringement in which Touchstream accuses Google of

infringing claims 1 and 8 of U.S. Patent No. 8,356,251 ("'251 patent"); claims 1 and 14 of U.S. Patent No. 8,782,528 ("'528 patent"); and claims 1 and 2 of U.S. Patent No. 8,904,289 ("'289 patent") (collectively the "Asserted Claims" of the "Asserted Patents").[1]  Touchstream alleges that Google has directly infringed (literally and under the doctrine of equivalents) each of the Asserted Claims. Google denies that it has infringed the Asserted Claims of the Asserted Patents and argues that the Asserted Claims are invalid.

Touchstream alleges Google infringes the Asserted Claims of the Asserted Patents by selling, offering to sell, and/or using the Accused Products, or alternatively, by directing and controlling the operation of the Accused Products by others. Touchstream alleges that such products include: (1) standalone Chromecast devices (e.g., Chromecast 1st Generation, Chromecast 2nd Generation, Chromecast 3rd Generation, Chromecast Audio, Chromecast Ultra, and Chromecast with Google TV); (2) the following devices that implement Chromecast built-in: (a) third-party devices running the Android TV operating system and with Google TV; and (b) third-party televisions and speakers with "Chromecast Built-In"; and (3) Google Home/Nest products capable of receiving cast content (e.g., Google Home, Google Home Mini, Google Home Max, Google Home Hub/Nest Hub, Google Home Hub/Nest Hub Max, Google Nest Hub Generation 2, Google Nest Audio, Google Nest Mini, and Google Nest Wifi Point (wifi extender with speaker)) (the "Accused Products").  Touchstream seeks monetary damages in the form of a reasonable royalty for past damages, an ongoing reasonable royalty, pre- and post-judgment interest, costs, and an award of its fees under 35 U.S.C. §§ 284 and 285. Touchstream also seeks a permanent injunction to prevent further infringement of the Asserted Patents.  Touchstream also alleges that Google's alleged infringement was and is willful and

---

[1] In order to narrow issues for trial, Touchstream has reduced its previously asserted claims to two claims per patent.

seeks enhanced damages due to that alleged willful infringement, and any other relief the Court deems appropriate.  Touchstream disagrees with each allegation, defense, and/or affirmative defense asserted by Google.

Google denies that it has infringed or is infringing any of the Asserted Claims of the Asserted Patents.  Google further contends that the Asserted Claims are invalid as directed to patent-ineligible subject matter under 35 U.S.C. § 101,[2] as anticipated and/or are obvious in light of the prior art under 35 U.S.C. §§ 102 and 103, and for lack of written description support and indefiniteness under 35 U.S.C. § 112.  Google additionally denies that Touchstream is entitled to any monetary damages, including in the form of an ongoing reasonable royalty, to any pre- and post-judgment interest, to any costs, or to any award of its fees under 35 U.S.C. §§ 284 and 285 or any other relief.  Google further denies that any infringement, should the jury find it occurred, was willful, and denies that Touchstream is entitled to any enhanced damages under 35 U.S.C. § 284.  Google also denies that Touchstream is entitled to a permanent injunction under 35 U.S.C. § 283.  Google additionally denies each allegation and claim asserted by Touchstream.

## IV.     CONTENTIONS OF THE PARTIES

By providing these statements, the Parties do not concede that any of the following issues are appropriately presented at trial.  The Parties also do not waive any issues raised by their previously filed motions or previously lodged objections.

The contentions below do not include every detail underlying each contention.  The Parties do not waive any issues raised in their pending, decided, or future motions, including any motions in *limine*, motions for summary judgment, *Daubert* motions, motions to strike, and

---

[2] On June 28, 2023, the Court granted summary judgment in favor of Touchstream on Google's defense under 35 U.S.C. § 101 [Dkt. No. 134].

any other future motions or objections that they may file.

**A.    Touchstream 's Contentions**

(1)    Plaintiff Touchstream is the owner of all right, title, and interest in the '251 patent titled "Play Control of Content on a Display Device."  Google has been and is infringing the '251 patent under 35 U.S.C. § 271 by using, selling, and/or offering to sell services that involve operation of the Accused Products, which practice one or more claims of the '251 Patent within the United States, or alternatively, by directing and controlling the operation of the Accused Products.  Touchstream accuses Google of infringing claims 1 and 8 of the '251 patent.

(2)    Plaintiff Touchstream is the owner of the '528 patent titled "Play Control of Content on a Display Device."  Google has been and is infringing the '528 patent under 35 U.S.C. § 271 by using, selling, and/or offering to sell services that involve operation of the Accused Products, which practice one or more claims of the '528 patent within the United States, or alternatively, by directing and controlling the operation of the Accused Products.  Touchstream accuses Google of infringing claims 1 and 14 of the '528 patent.

(3)    Plaintiff Touchstream is the owner of the '289 patent titled "Play Control of Content on a Display Device."  Google has been and is infringing the '289 patent under 35 U.S.C. § 271 by using, selling, and/or offering to sell services that involve operation of the Accused Products, which practice one or more claims of the '289 patent within the United States, or alternatively, by directing and controlling the operation of the Accused Products.  Touchstream accuses Google of infringing claims 1 and 2 of the '289 patent.

(4)    Google performs each step of the Asserted Method Claims or, to the extent that any step(s) of any Asserted Claim is performed by someone or something other than Google, e.g., users of the Accused Products, performance of that step is attributable to Google.

(5)     Touchstream provided pre-suit notice of infringement of the Asserted Patents to Google, and Google was aware of each of the Asserted Patents prior to the filing of Touchstream's Original Complaint.

(6)     Google's infringement of the Asserted Claims of the Asserted Patents has been and continues to be willful.

(7)     The Asserted Claims of the Asserted Patents are not invalid for any reason, including under 35 U.S.C. §§ 101, 102, 103, and/or 112.

(8)     Touchstream has been damaged by Google's infringement of the Asserted Claims, and is entitled to damages for all infringement addressed at trial.

(9)     Touchstream is entitled to supplemental damages for all infringement that is not addressed at trial, including, for example, damages for infringement that occurred (i) after the temporal cutoff for the data presented at trial; and (ii) during the period between the jury verdict and the entry of final judgment, as well as pre-judgment and post-judgment interest,

(10)     Touchstream seeks the following relief:

    i.     A judgment that Google has infringed the '251 patent;

    ii.     A judgment that Google has infringed the '528 patent;

    iii.     A judgment that Google has infringed the '289 patent;

    iv.     A judgment that Google's infringement has been willful;

    v.     A judgment and order requiring Google to pay Touchstream damages under 35 U.S.C. § 284, together with pre-judgment and post-judgment interest;

    vi.     A judgment and order requiring Google to pay Touchstream the costs of this action;

    vii.     A judgment and order declaring this case to be exceptional based on

Google's infringement and/or litigation conduct;

viii.   A judgment and order awarding attorneys' fees to Touchstream under 35 U.S.C. § 285;

ix.   A permanent injunction restraining and enjoining Google from any further sales or use of its infringing products and any other infringement of the Touchstream Patents; and

x.   All equitable relief from the Court that is just and proper.

(11)        Touchstream contends that the Asserted Patents are valid, patent-eligible, and enforceable and that its claims are not barred or otherwise limited as a result of any of the affirmative defenses raised by Google.

(12)        To the extent not already addressed above, Touchstream disagrees with Google's contentions below.

### B.   Google's Contentions

Google objects to Touchstream's description of its infringement allegations and disagrees that the infringement allegations are consistent with Touchstream's allegations disclosed in its infringement contentions and during discovery in this case.  Google does not infringe any Asserted Claim of any of the Asserted Patents.  Each Asserted Claim is further invalid as directed to patent-ineligible subject matter under 35 U.S.C. § 101, as anticipated by and/or obvious in light of the prior art under 35 U.S.C. §§ 102-103, and/or for lack of written description support or as indefinite under 35 U.S.C. § 112.[3]  Accordingly, Touchstream is not entitled to any relief it seeks.  Google further contends that:

---

[3] Google acknowledges that, on June 28, 2023, the Court granted summary judgment in favor of Touchstream on Google's defense under 35 U.S.C. § 101 [Dkt. No. 134].  As with all issues decided in this case, Google reserves all rights as to this defense.

(1)      Google does not make, use, sell, or offer to sell any system or product that infringes any Asserted Claim.

(2)      Google does not practice each and every element of any Asserted Claim.

(3)      Google does not direct or otherwise control the manner or timing of the performance of any element of any Asserted Claim by users of the Accused Products or by any other third party.

(4)      Each of the Asserted Claims of the Asserted Patents is invalid because it is anticipated by the prior under 35 U.S.C. § 102, obvious in light of the prior art under 35 U.S.C. § 103, is directed to patent-ineligible subject matter under 35 U.S.C. § 101,[4] and/or lacks written description support or is indefinite under 35 U.S.C. § 112.

(5)      Google is not liable to Touchstream under any cause of action or legal theory Touchstream asserts.

(6)      Touchstream is not entitled to any of the recovery it seeks.

(7)      Touchstream is not entitled to a finding of infringement under 35 U.S.C. § 271.

(8)      Touchstream is not entitled to any damages under 35 U.S.C. § 284, including but not limited to a reasonable royalty.

(9)      Touchstream is not entitled to a finding of willful infringement.

(10)      Touchstream is not entitled to enhanced damages under 35 U.S.C. § 284.

(11)      Touchstream is not entitled to a permanent injunction under 35 U.S.C. § 283.

(12)      Touchstream is not entitled to a finding that this an exceptional case under 35 U.S.C. § 285.

(13)      Touchstream is not entitled to any other costs, interests, or further relief.

---

[4] See footnote 3 regarding Google's § 101 defense.

(14)     Google is entitled to an order requiring Touchstream to pay Google's costs and attorneys' fees reasonably incurred in defending this action.

(15)     To the extent not already addressed above, Google disagrees with Touchstream's contentions above.

## V.  STIPULATIONS AND UNCONTESTED FACTS

The Parties will continue to meet and confer to attempt to resolve their objections to deposition designations and exhibits, and to identify additional potential stipulations, including stipulations related to the admissibility of exhibits, and will supplement these stipulations to the extent that additional stipulations are agreed by the Parties.

### A.   The Parties' Statement of Stipulations

The Parties have met and conferred and agreed upon certain trial management procedures as set forth below.

### B.   The Parties' Statement of Uncontested Facts

(1)     Touchstream Technologies, Inc., as of the filing of the Complaint, was a corporation with its principal place of business in New York, New York.

(2)     Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California.

(3)     The Asserted Patents are U.S. Patent Nos. 8,356,251 ("'251 patent"), which issued January 15, 2013; 8,782,528 ("'528 patent"), which issued July 15, 2014; and 8,904,289 ("'289 patent"), which issued December 2, 2014 (collectively the "Asserted Patents").

(4)     Touchstream is the record assignee and owner of the Asserted Patents.

(5)     Each of the Asserted Patents is titled "Play Control of Content On a Display Device."

(6)     Each of the Asserted Patents names David Strober as inventor.

(7)     On June 4, 2021, Touchstream filed the Complaint asserting infringement of the Asserted Patents.

## VI.     CONTESTED ISSUES OF FACT AND LAW

The Parties identify the following issues that remain to be litigated.  To the extent any issue of law discussed below is deemed to be an issue of fact, it is incorporated into this section. The Parties reserve the right to identify additional factual or legal issues that may arise, including issues raised by any further discovery undertaken in this case or the Court's rulings on any pending motions or rulings made at the pretrial conference on this action.

By providing this statement, the Parties do not concede that all of these issues are appropriate for trial.  The Parties also do not waive any issues raised in their pending, decided, or future motions.

### A.   Touchstream's Positions

#### 1.     Infringement

(1)     Whether Touchstream has shown by a preponderance of evidence that Google has directly infringed or is directly infringing claims 1 and 8 of the '251 patent.

(2)     Whether Touchstream has shown by a preponderance of evidence that Google has directly infringed or is directly infringing claims 1 and 14 of the '528 patent.

(3)     Whether Touchstream has shown by a preponderance of evidence that Google has directly infringed or is directly infringing claims 1 and 2 of the '289 patent.

(4)     Whether Touchstream has shown by a preponderance of the evidence that Google has willfully infringed the Asserted Claims of the Asserted Patents.

### 2.    Invalidity

(1)       Whether Google has proved by clear and convincing evidence that claims 1 and 8 of the '251 patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.[5]

(2)       Whether Google has proved by clear and convincing evidence that claims 1 and 14 of the '528 patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.[6]

(3)       Whether Google has proved by clear and convincing evidence that claims 1 and 2 of the '289 patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.[7]

(4)       Whether certain Google invalidity positions are precluded by Google's stipulations in connection with its petition for inter partes review of the Asserted Patents.

(5)       Whether certain of Google's references qualify as prior art in light of Touchstream's assertion of an October 2010 priority date.

### 3.    Damages and Remedies

(1)       If Touchstream proves infringement of one or more Asserted Claims that are not invalid, the amount of reasonable royalty damages that Touchstream has shown by a preponderance of the evidence to which it is entitled for the period from June 4, 2015, to the date of trial.

(2)       If the jury awards damages to Touchstream, whether Touchstream has shown by a preponderance of the evidence that it is entitled to supplemental damages for infringement that is not included in the jury verdict, including, for example damages for infringement that occurred between the jury verdict and the entry of final judgment.

---

[5] On June 28, 2023, the Court granted summary judgment in favor of Touchstream on Google's defense under 35 U.S.C. § 101 [Dkt. No. 134].

[6] On June 28, 2023, the Court granted summary judgment in favor of Touchstream on Google's defense under 35 U.S.C. § 101 [Dkt. No. 134].

[7] On June 28, 2023, the Court granted summary judgment in favor of Touchstream on Google's defense under 35 U.S.C. § 101 [Dkt. No. 134].

(3)     If Touchstream proves infringement of one or more patent claims that are not invalid, whether Touchstream is entitled to a permanent injunction to prevent further infringement.

(4)     If the jury awards damages to Touchstream, whether Touchstream has shown by a preponderance of the evidence that it is entitled to pre- and/or post-judgment interest, and if so the amount.

(5)     If the jury finds willful infringement, whether Touchstream should be awarded enhanced damages under 35 U.S.C. § 284 and, if so, the amount of enhancement.

(6)     Whether this case is exceptional under 35 U.S.C. § 285 and, if so, whether Touchstream or Google is entitled to attorneys' fees or costs, and, if so, the amount.

### 4.     Affirmative Defenses to Infringement

(1)     Whether Google has proven by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. §§ 101 (patent-ineligible subject matter),[8] 102 (anticipation), 103 (obviousness), and/or 112 (written description or indefiniteness).

### B.   Google's Positions

### 1.     Infringement

(1)     Whether Touchstream can prove that Google directly infringed or infringes any of the Asserted Claims of the Asserted Patents.

(2)     Whether Touchstream can prove that any alleged infringement by Google of any of the Asserted Claims of any of the Asserted Patents was willful.

### 2.     Invalidity

(1)     Whether the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. §§ 101 (patent-ineligible subject matter),[9] 102 (anticipation), 103 (obviousness), and/or 112

---

[8] See footnote 3 regarding Google's § 101 defense.
[9] See footnote 3 regarding Google's § 101 defense.

(written description and indefiniteness).

(2)      Whether the Asserted Claims of the Asserted Patents are entitled to priority dates before their effective filing dates.

### 3.      Damages and Remedies

(1)      Whether Touchstream can prove that it is entitled to any damages under 35 U.S.C. § 284, including a reasonable royalty.

(2)      Whether Touchstream is entitled to pre- and post-judgment interest, and if so, in what amount.

(3)      Whether Touchstream is entitled to enhanced damages under 35 U.S.C. § 284.

(4)      Whether Touchstream is entitled to a permanent injunction under 35 U.S.C. § 283.

(5)      Whether this case is exceptional under 35 U.S.C. § 285.

(6)      Whether Google is entitled to an order requiring Touchstream to pay Google's costs and attorneys' fees.

### 4.      Affirmative Defenses to Infringement

(1)      Whether the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. §§ 101 (patent-ineligible subject matter), 102 (anticipation), 103 (obviousness), and/or 112 (written description and indefiniteness).

## VII.   LIST OF WITNESSES

The Parties' original witness lists and objections thereto were filed with the original proposed Joint Pretrial Order (Dkt. 217, Exhibits 1 and 2).  The Parties have continued to meet and confer regarding those lists, objections, and amendments thereto.

## VIII.   LIST OF EXHIBITS

The Parties' original exhibits lists and objections thereto were filed with the original

proposed Joint Pretrial Order (Dkt. 217, Exhibits 3, 4, and 5).  The Parties have continued to meet and confer regarding those lists, objections, and amendments thereto.

## IX.    DEPOSITION DESIGNATIONS

The Parties' original deposition designations and objections thereto were filed with the original proposed Joint Pretrial Order (Dkt. 217, Exhibits 6 and 7).  The Parties have continued to meet and confer regarding those designations, objections, and amendments thereto.

## X.    STIPULATIONS AND TRIAL DISCLOSURES

The following stipulations were agreed upon by the Parties as discussed below and are made a part of this Pretrial Order.

The Parties agree to the following procedure which will govern the disclosure of witnesses, exhibits, deposition testimony, and demonstratives to use at trial and the process to identify any objections remaining between the Parties with regard to these disclosures.

### A.    Motions

All motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) may be brought to the Court orally or in writing.  Unless the Court sets alternative deadlines, all oppositions to motions filed pursuant to Fed. R. Civ. P. 50(b) must be filed within 28 days of the filing of the motion.  All replies in support of the motions must be filed within 21 days of service of any oppositions.  The Parties reserve their right to seek reasonable extensions of these deadlines, subject to the Court's approval.

### B.    Exhibits

The Parties agree that any exhibit listed on any party's exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury during opening statements.   The Parties agree that exhibits to be used or offered into evidence solely for

impeachment need not be included on the Parties' trial exhibit lists. Except for such documents used solely for impeachment, a party may not offer substantive documentary evidence not appearing on its exhibit list or the exhibit list of the other party, unless the Court determines that the interest of justice so warrants.

(1)      Each party has the right to use an exhibit on either party's exhibit list, even if not introduced by the designating party, subject to all evidentiary objections. Another party's exhibit is not, however, admissible simply by virtue of being on an exhibit list. A party seeking to introduce another party's exhibit must still have a witness sponsor the exhibit into evidence and is subject to any objections, including for example, hearsay objections that may apply to one party but not the other.

(2)      Any document produced in discovery in this case bearing a production number and that on its face appears to have been generated by the producing party (including documents generated by the producing party's employees during the course of their employment) shall be deemed to be prima facie authentic. Any secondary document (e.g., email attachment, website link, etc.) embedded within or attached to a primary document that qualifies as prima facie authentic under the preceding sentence shall not be deemed prima facie authentic unless it separately and independently qualifies as prima facie authentic under the preceding sentence.

(3)      A legible copy of an exhibit may be offered in evidence in lieu of the original subject to all foundational requirements and other objections that might be made to the admissibility of the original and subject to the right of the party against whom it is offered to inspect on original upon request reasonably in advance of any proposed use of the copy. For exhibits that are spreadsheets, slide presentations, or videos, the Parties may use electronic versions of such exhibits in their native format.

(4)      Legible photocopies of United States and foreign patent and trademark applications, published documents, issued documents, and file histories, including the Asserted Patents and their file histories, may be used in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies. The dates of filing and issuance and the identity of the inventors of record shall be deemed to be shown on the face of the patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

(5)      The Parties will exchange by email lists of exhibits they intend to use during direct examination or by witnesses called by designation by 7:00 p.m.[10] two (2) calendar days before their intended use (*i.e.,* Sunday evening for a witness to be called on Tuesday), and provide an identification of the witness(es) each such exhibit will be used with on direct examination or by designation. The Parties shall exchange objections to exhibits by 7:00 p.m. one (1) calendar day before the exhibits are proposed to be introduced and the Parties shall then meet and confer regarding all objections by 9:00 p.m. the day the objections are provided. To the extent good faith efforts to resolve objections fail, the objecting party will raise the objections with the Court, if possible, on the morning, before trial begins, of the day the exhibits are intended to be used, but otherwise prior to the introduction of the exhibit.

(6)      No exhibit will be admitted unless a party offers the exhibit into evidence through a witness, who must at least be shown the exhibit, and the party formally moves the exhibit into evidence by exhibit number. For avoidance of doubt, this Section X.B.6 excludes exhibits that have been pre-admitted, stipulations and a party's introduction of an opposing party's admissions, such as interrogatory responses and responses to requests for admission, which can be offered as

---

[10] All times noted herein are Central Time.

evidence by a party during its case in chief while no witness is on the stand, subject to other evidentiary objections.  Further, if a witness testifies via deposition, exhibits discussed with that witness in the portion of the deposition presented to the jury may be moved into evidence immediately after the deposition testimony is concluded, subject to other objections.

(7)     Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence, except documents used for demonstrative purposes only or used during examination of an expert witness where the documents were relied upon by the expert in forming the expert's opinions and disclosed in that expert's report, and for which there is no objection or any objection has been overruled.

(8)     The Parties agreed to exchange lists of "Admitted Exhibits" (those admitted into evidence) by 9:00 p.m. the same day they were entered.

## C. Witnesses

The Parties will identify by email witnesses to be called live or by deposition (in the order that they will be called) at 7:00 p.m. two (2) calendar days in advance of the day of trial during which the witnesses will testify.  For example, if a witness will testify on a Monday, the witness must be identified by 7:00 p.m. on the previous Saturday.  The Parties shall exchange objections to any identified witnesses by 7:00 p.m. the day before the witness is offered to testify.  The Parties shall then meet and confer telephonically or in person by 9:00 p.m. the day the objections are provided in an attempt to resolve any objections.  To the extent good faith efforts to resolve objections fail, the objecting party will raise the objections with the Court, if possible, on the morning, before trial begins, of the day the witness is intended to testify, but otherwise prior to witness taking the stand.

## D. Deposition Testimony

(1)     For deposition designations, the Parties will provide a list of any deposition designations that party intends to present, along with estimated run-times for video, by 7:00 p.m. two (2) days before the designation is to be read or played.  Any counter-designations and objections shall be provided by 7:00 p.m. the day before the deposition is to be played.  All objections to counter-designations shall be provided no later than 8:00 p.m. the day the counter-designations are provided.  The Parties shall then meet and confer regarding all objections by 9:00 p.m. Any unresolved objections will be raised with the Court the next morning.  Promptly after the meet and confer one (1) day before the deposition testimony is to be played, the party that seeks to read or play the deposition testimony must provide the opposing party a workable copy of the actual recordings to be played (or testimony to be read), including all designations and counter designations included sequentially (i.e., in the order that they appeared at the deposition). The Parties shall cooperate in good faith to prepare the designated portions of the depositions for presentation at trial.  The time available for each side's trial presentation shall be reduced by the length of its designations or counter-designations actually played or read at trial.  If played, such time shall be measured by the amount of time of each party's designations.

(2)     The Parties agree to continue to meet and confer to resolve any objections to the other party's deposition designations and exhibits.  The Parties agree to endeavor to enter into stipulations as to the authenticity and use of produced documents following the exchange of exhibit lists and objections.

(3)     Unless used for impeachment, all designated deposition testimony shall be played by video unless video is unavailable, or unless both Parties otherwise reach an agreement to read the deposition testimony live or the Court orders otherwise.  The Parties' designations and counter-designations shall be played (or read) together.

(4)     Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designated and counter-designated testimony read or played.

(5)     Prior to the introduction of deposition designations or counter-designations, counsel for the introducing party may provide a short introduction to the jury about the identity of the witness, which introduction the Parties agree is not evidence and the time for which will be charged against that party.

(6)     All irrelevant and redundant colloquy between counsel and objections will be eliminated as much as practicable when the deposition testimony is presented at trial.  For each deposition, the specific portions of the deposition designated or counter-designated by either party shall be read or played together in the same order as the real time deposition testimony with all objections and colloquy removed.

(7)     Any deposition testimony not specifically identified on a party's deposition designation list may still be used at trial for the purpose of impeachment, if otherwise competent for that purpose.  When a party uses deposition testimony for impeachment, the party may elect to either play the deposition testimony by video or read the deposition testimony live unless the Court orders otherwise.

(8)     To the extent certain designated deposition testimony is admissible, a party's decision not to introduce some or all of the deposition testimony of a witness designated by that party herein shall not be commented upon by the other party at trial.

(9)     If a party withdraws testimony previously designated, the other party has the right to designate the withdrawn testimony subject to the initially designating party's objections.

### E.   Demonstrative Exhibits

(1)     The Parties will exchange by email copies of all documentary, graphic, slide, animation, boards, and any other form of Demonstratives they plan to use at trial for use during direct examination—but not for cross-examination—and an identification of witnesses each such Demonstrative will be used with, by 7:00 p.m. the night before their intended use.  In other words, if a Demonstrative will be used on Monday, it must be exchanged or made available by 7:00 p.m. on the previous Sunday.   That same evening, the Parties shall exchange objections to Demonstratives by 8:00 p.m. and then meet and confer regarding all objections by 9:00 p.m.  To the extent good faith efforts to resolve objections fail and there are additional unresolved objections about Demonstratives, the objecting party will raise the objections with the Court, if possible, the morning before trial begins or resumes the day of the Demonstrative's intended use, or otherwise before the Demonstrative's use.  Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

(2)     "Demonstratives" are exhibits specifically created for the purpose of the trial and do not include (a) the blowup (enlargement), highlighting, ballooning, etc. of trial exhibits (so long as the underlying exhibit is pre-admitted or any objections thereto have been resolved) or transcripts of testimony, (b) demonstratives previously displayed in the course of the trial. Reasonable non-substantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits prior to use.

(3)     For clarity, Demonstratives include physical or other non-documentary demonstratives (such as poster boards, product samples, prior art sample, live product, or prior art demonstrations).   Thus, photos or electronic images of the physical demonstrative must be disclosed in accordance with the schedule and procedure set forth in subparagraph (1), and also made available for physical inspection if requested by the opposing party.  Similarly, hand-written

or other demonstratives that a party plans to create during opening statements or witness direct examinations must be disclosed (by providing a description and purpose of the Demonstrative) in accordance with the schedule set forth in subparagraph (1).  For any demonstration involving a website or other interactive computer interface ("Website"), a working link or access to the Website with full navigation capability enabled must be provided, as well as a detailed description of the planned navigation of the Website in accordance with the schedule set forth in subparagraph (1).

(4)     Demonstratives for direct examination and opening and trial exhibits must be cleared of outstanding objections before being shown to the jury.  Additionally, any transcripts of testimony (excluding testimony given during this trial) must be cleared of outstanding objections before being shown to the jury during opening or on direct examination.  On cross-examination, transcripts of testimony may be used so long as it is not in violation of a motion in *limine* or other exclusionary order, regardless of whether it was previously designated by the Parties.

(5)     The Parties agree that Demonstratives the Parties intend to use at trial do not need to be included on their respective lists of trial exhibits.  The Parties further agree that, unless otherwise ordered by the Court, Demonstratives will not be admitted as evidence and will not be made available to the jury during deliberations.

(6)     The Parties agree to discuss in good faith a reasonable time for exchange of previously undisclosed closing Demonstratives.  For closing arguments, the Parties agree that a party need not provide advance notice regarding its intent to use Demonstratives previously used during the course of trial or enlargements, highlighting, ballooning, or other annotations of admitted trial exhibits.

(7)     To the extent certain exhibits or Demonstratives are admissible, a party's decision

not to introduce the exhibits or Demonstratives shall not be commented upon by the other party at trial.

**F.   Disclosures for Opening Statements**

Any Demonstratives (documentary, graphic, slide, animation, mock-ups to be created during opening statements with detail regarding their substance, and any other form of demonstratives), deposition testimony, and exhibits to be used during opening statements are to be exchanged by 2 p.m. one (1) day before the opening statements.  Any physical Demonstratives, including any poster boards, must be made available for inspection at the same time and physical Demonstratives must also be made available for inspection at the same time along with the other demonstratives.

Any objections to the opening statement disclosures must be provided by 5:00 p.m. the day the disclosures are received.  The Parties shall meet and confer telephonically in an attempt to resolve any objections to these disclosures by 8:00 p.m.  If the Parties cannot resolve the objections, the unresolved issues will be raised with the Court in the morning, before opening statements are presented to the jury.  Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party.

Demonstratives to be used with closing arguments are not exchanged.

**G.   Stipulations Regarding Subject Matter Not to Be Presented to the Jury**

Absent any later agreement among the parties to the contrary, the parties agree not to discuss or argue the following in front of the jury, without first approaching the Bench and explaining why despite such an agreement the other side has now opened the door:

(1)      There will not be any testimony, argument, or evidence presented that is contrary to the Court's claim construction, nor may the parties refer, directly or indirectly, in the presence

of the jury to each other's claim construction positions or to any aspect of the Court's claim construction order other than as presented in jury instructions.

(2)     The Parties agree not to offer any evidence or testimony (lay and expert) of or make any reference, suggestion, or argument regarding the fact that any claim, defense, affirmative defense, prior art, theory, or product was previously at issue in this lawsuit, has been withdrawn over the course of the litigation, or is no longer at issue in this lawsuit.

(3)     There will not be any testimony, evidence, or expert opinions from experts not disclosed in expert reports.  No expert witness may testify to expert opinions outside the established parameters of her/his expert report, and counsel shall not raise such an objection for strategic or other non-meritorious purposes.

(4)     No expert may offer legal opinions or legal testimony.

(5)     The Parties shall not offer any evidence or testimony (lay and expert) of or make any reference, suggestion, or argument that damages could potentially be enhanced.

(6)     The Parties agree not to offer any evidence or testimony (lay and expert) of or make any reference, suggestion, or argument regarding the fact, outcome of or verdict or result in any other litigation, legal proceeding, regulatory, governmental or other investigation involving the other party, other than, subject to the parties' pending motions *in limine*, motions for summary judgment, and Daubert motions, as reasonably necessary to describe a license agreement relied on for damages that resulted from litigation or the threat of litigation.

(7)      The Parties agree not to offer any evidence or testimony (lay and expert) of or make any reference, suggestion, or argument regarding any current or prior relationship between any expert witnesses and either party, Shook Hardy & Bacon LLP, Jones Day, and/or any other counsel of record or their current or former attorneys.

(8)     The Parties will not make any reference to jury consultants, investigators, mock trials, focus groups and the like consulted in preparation for litigation.

(9)     The Parties shall not refer to stealing or theft by Google or Touchstream.

(10)    Touchstream shall not offer any evidence or testimony (lay or expert) or refer to or accuse, directly or indirectly, Google of being a "monopoly," "monopolist," "anti-competitive," or other such terms, or that Google is repeatedly accused of IP infringement.

(11)    The Parties shall not offer any evidence or testimony (lay and expert) concerning matters relevant solely to claims or defenses dismissed on summary judgment or otherwise no longer presented in this case.

(12)    The Parties shall not refer to or offer any evidence or testimony (lay and expert) relating solely to the dispute over and motion practice regarding venue of this case.

## H.   Handling of Source Code and Confidential Material

Regarding source code, the Protective Order allows for creating copies of source code for trial.  Dkt. 75, para. 11(h).  The Parties agree that they may include references to source code in their argument and may elicit testimony from witnesses permitted to view this source code pursuant to the Protective Order (Dkt. 75).  Only portions of source code about which a witness testifies shall be included as a trial exhibit for the jury, and such source code shall be provided in .pdf format.

Once the trial is complete, the Parties must delete and/or destroy any copies of the other Party's source code material in that Party's possession, whether they be hard copies or digital copies, no later than thirty (30) days of final termination of this Action, including any appeals, pursuant to the Protective Order (Dkt. 75).

The parties must request to seal any exhibits on the record at the time they are offered.  If

a party asks to go on the confidential record, then the party shall also note when the proceedings may resume on the public record.

The Parties agree that source code may only be displayed in a sealed courtroom.  For the avoidance of any doubt, any presentation of the Parties' source code—in electronic or paper form—in open court requires sealing of the courtroom.

## XI.   PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

On July 14, 2023, the Court ruled on the parties' proposed preliminary jury instructions. Later that day, the Parties filed a Joint Notice of Amended Proposed Jury Instructions and Verdict Form, memorializing the Court's preliminary jury instruction ruling, and providing updated versions of the Parties' joint and disputed proposed final jury instructions and proposed verdict forms.  Dkt. 230.  The Parties will continue to meet and confer and expect to further narrow disputes with respect to the final jury instructions.

## XII.   LIST OF MOTIONS DECIDED AT PRETRIAL CONFERENCE

The Court heard argument on the below motions at the June 28, 2023 pretrial conference. Dkt. 223.  The Court issued its orders on the motions during the pretrial conference, as reflected in the pretrial conference hearing transcript.  Dkt. 225.

| Date Filed | Dkt. | Description |
|---|---|---|
| 12/29/2022 | 133 | Touchstream's Motion to Exclude Certain Opinions and Testimony of Google's Damages Expert Christopher A. Martinez |
| 12/29/2022 | 134 | Touchstream's Motion for Summary Judgment of Validity Under 35 U.S.C. 101 and To Dispose of GTS "System" Theories |
| 12/29/2022 | 135 | Touchstream's Motion to Exclude Expert Testimony of Dr. Ketan Mayer-Patel |

| 12/29/2022 | 136 | Touchstream's Motion to Exclude Portions of Google's Invalidity Contentions and Expert Report |
| 12/29/2022 | 127 | Google's *Daubert* Motion to Exclude Certain Expert Opinions of Dr. Almeroth |
| 12/29/2022 | 129 | Google's *Daubert* Motion to Exclude Certain Opinions of Damages Expert Mark J. Chandler |
| 12/29/2022 | 130 | Google's Motion for Summary Judgment |
| 1/19/2023 | 174 | Google's Motions *in Limine* |
| 1/19/2023 | 185 | Touchstream's Motions *in Limine* |

## XIII.   MEMORANDA ON DISPUTED ISSUES OF LAW

Each party reserves the right to submit a trial brief, as appropriate, on any disputed issues of law and/or fact regarding infringement, invalidity, damages, and the exceptional nature of this case.

## XIV.   PROPOSED VOIR DIRE

The Parties submitted voir dire questions and proposed juror questionnaire at Dkt. 219 and Dkt. 219-1.

## XV.   ORDER OF PRESENTATION

The order of presentations at trial shall be as described in this subsection.

1.   Opening Statements:   The trial presentations shall begin with opening statements by each party.  Plaintiff shall present its opening statement first, followed by Defendant's opening statement.

2.   Evidence:   After opening statements, the parties shall present their evidence. Plaintiff shall go first on the issues of infringement and damages.  Defendant shall next present its

case on non-infringement, invalidity, and damages.  Plaintiff may then present its rebuttal case.

3.      Closing Arguments:  The parties shall conclude with closing arguments.  Plaintiff shall present its closing argument on all issues.  Next, Defendant will present its closing argument on all issues.  Plaintiff may reserve time and make a rebuttal closing after Defendant's argument.

4.      Notice of Intent to Rest:  A party will provide to the Court and the other party a good-faith notice that it expects to rest by 5:00 p.m. CT or before leaving court, whichever is later, the day before that party expects to rest and a good-faith estimate of how much additional trial time the party expects to use before resting.

## XVI.   PROBABLE LENGTH OF TRIAL

The Court orders that the length of the trial will be between 4 and 5 days.  The Parties will be given twelve (12) hours per side for trial time.  Touchstream may present a rebuttal case after Google's case in chief, which can use Touchstream's trial time that was remaining at the time Touchstream rested its case in chief.  Each side is granted thirty (30) minutes for opening statement and thirty (30) minutes for closing argument.  Dkt. 229 at 2.  Each side's first 30 minutes of opening statement will not be counted toward that side's allocated trial time.  *Id.*  A party may not reserve trial time for closing argument—30 minutes is the limit for each side's closing argument.  *Id.*  Touchstream may reserve up to ten (10) minutes of its time for closing argument for a rebuttal argument.

This Joint Pre-Trial Order is hereby approved this ___ day of _____, 2023.


_____
HON. ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

Dated July 16, 2023

By: */s/ Ryan D. Dykal*
Ryan D. Dykal
SHOOK, HARDY & BACON L.L.P.

Ryan D. Dykal, pro hac vice
Email: rdykal@shb.com
B. Trent Webb, pro hac vice
Email: bwebb@shb.com
Jordan T. Bergsten, pro hac vice
Email: jbergsten@shb.com
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
Fax: (816) 421-5547

Sharon A. Israel (TX Bar No. 00789394)
Email:sisrael@shb.com
Michael W. Gray (TX Bar No. 24094385)
Email: mgray@shb.com
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-2008
Fax: 713-227-9508

***Attorneys for Plaintiff***
***Touchstream Technologies, Inc.***

By: */s/ Ryan D. Dykal (w/permission)*
Tharan Gregory Lanier

JONES DAY
Tharan Gregory Lanier (*Admitted pro hac vice*)
CA State Bar No. 138784
E-mail: tglanier@jonesday.com
Michael C. Hendershot (*Admitted pro hac vice*)
CA State Bar No. 211830
E-mail: mhendershot@jonesday.com
Evan M. McLean (*Admitted pro hac vice*)
CA State Bar No. 280660
E-mail: emclean@jonesday.com
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939

Facsimile: (650) 739-3900
Edwin O. Garcia, (*Admitted pro hac vice*)
E-mail: edwingarcia@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington DC 20001
(202) 879-3695/Fax: (202) 626-1700

POTTER MINTON PC
Michael E. Jones
TX State Bar No. 10929400
E-mail: mikejones@potterminton.com
Shaun W. Hassett
TX State Bar No. 24074372
E-mail: shaunhassett@potterminton.com
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

*Attorneys for Defendant*
*GOOGLE LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 16, 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to all counsel of record who have appeared in this case per Local Rule CV-5(b).

*/s/ Ryan D. Dykal*