**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC., | |
| Plaintiff, | Civil Case No. 6:21-cv-569-ADA |
| v. | JURY TRIAL DEMANDED |
| | U.S. District Judge Alan Albright |
| GOOGLE LLC, | |
| Defendant. | |

**[REQUESTED] FINAL JURY INSTRUCTIONS**

Plaintiff Touchstream Technologies, Inc. and Defendant Google LLC submit the following [Requested] Final Jury Instructions for the trial in this matter.  The parties are continuing to meet and confer and expect to further narrow their disputes over these instructions.

For the attached set, the parties note their disputes as follows:

Where the parties disagree about the inclusion of an instruction, or the version to use for an instruction, the parties indicate as much by labeling the instruction "contested" (underlined) and providing each side's proposal (to the extent the party proposes an instruction).  Where the parties agree on the inclusion of an instruction and are generally in agreement on the wording of the instruction, but there remains some dispute over the exact language, Touchstream's version of the instruction is in RED and Google's version of the instruction is in BLUE.

Objections are similarly coded, with Touchstream's objections in RED and Google's objections in BLUE.

The parties reserve all rights to supplement, amend, or otherwise modify these proposed instructions and objections as appropriate, including without limitation the right to revise their positions on the proposed instructions in response to future rulings by the Court or the evidence as

it is admitted at trial. The parties submit these proposed jury instructions without waiver of their position that the opposing party has not presented sufficient evidence to submit some or all of its affirmative claims, damages theories, or affirmative defenses to the jury, and without waiver of arguments presented in motions *in limine* or in other pretrial proceedings.

<u>Table of Contents</u>

JURY INSTRUCTION NO. 1: JURY CHARGE ........................................................................ 5

JURY INSTRUCTION NO. 2: EVIDENCE ............................................................................... 7

JURY INSTRUCTION NO. 3: WITNESSES ............................................................................ 9

JURY INSTRUCTION NO. 4: DEPOSITION TESTIMONY .................................................. 11

JURY INSTRUCTION NO. 5: EXPERT TESTIMONY .......................................................... 12

JURY INSTRUCTION NO. 6: INTERROGATORIES ............................................................ 13

JURY INSTRUCTION NO. 7: BIAS—NO INFERENCE FROM FILING SUIT OR
    DEFENDING THE SUIT ..................................................................................................... 14

JURY INSTRUCTION NO. 8: STIPULATIONS OF FACT .................................................... 15

JURY INSTRUCTION NO. 9: LIMITING INSTRUCTION .................................................... 16

JURY INSTRUCTION NO. 10: CHARTS AND SUMMARIES .............................................. 17

JURY INSTRUCTION NO. 11: DEMONSTRATIVE EXHIBITS ........................................... 18

JURY INSTRUCTION NO. 12: BIAS-CORPORATE PARTY INVOLVED ........................... 19

JURY INSTRUCTION NO. 13: BURDENS OF PROOF .......................................................... 20

JURY INSTRUCTION NO. 14: SUMMARY OF CONTENTIONS ......................................... 22

JURY INSTRUCTION NO. 15: PATENT CLAIMS ................................................................. 24

JURY INSTRUCTION NO. 16: INDEPENDENT AND DEPENDENT CLAIMS ................... 26

CONTESTED:  JURY INSTRUCTION NO. 17: INFRINGEMENT-GENERALLY ............... 27

CONTESTED:  JURY INSTRUCTION NO. 18: OTHER PATENTS ....................................... 29

CONTESTED:  JURY INSTRUCTION NO. 19: DIRECT INFRINGEMENT- KNOWLEDGE
    OF THE PATENT AND INFRINGEMENT ARE IMMATERIAL ..................................... 30

JURY INSTRUCTION NO. 20: INFRINGEMENT BY LITERAL INFRINGEMENT ............ 31

CONTESTED: JURY INSTRUCTION NO. 21: DIRECT INFRINGEMENT: ACTS OF
    MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL METHOD CLAIM
    LIMITATIONS ..................................................................................................................... 32

CONTESTED:  JURY INSTRUCTION NO. 21:  DIVIDED INFRINGEMENT ...................... 34

CONTESTED: JURY INSTRUCTION NO. 22: WILLFUL INFRINGEMENT ....................... 36

CONTESTED: JURY INSTRUCTION NO. 23: PATENT INVALIDITY-GENERALLY ........ 40

CONTESTED: JURY INSTRUCTION NO. 24: INVALIDITY-PRIOR ART ........................... 43

JURY INSTRUCTION NO. 25: LEVEL OF ORDINARY SKILL ........................................... 46

JURY INSTRUCTION NO. 26: PATENT INVALIDITY- ANTICIPATION ........................... 47

CONTESTED: JURY INSTRUCTION NO. 27: OBVIOUSNESS ........................................... 48

CONTESTED: JURY INSTRUCTION NO. 28: WRITTEN DESCRIPTION REQUIREMENT
    [LACK OF WRITTEN DESCRIPTION] .............................................................................. 54

CONTESTED: JURY INSTRUCTION NO. 29: DAMAGES-INTRODUCTION ..................... 57

JURY INSTRUCTION NO. 30:  DATE OF COMMENCEMENT OF DAMAGES—
    PRODUCTS.................................................................................................................... 60

JURY INSTRUCTION NO. 31: DAMAGES-REASONABLE ROYALTY .............................. 61

CONTESTED: JURY INSTRUCTION NO. 32: DAMAGES-APPORTIONMENT REQUIRED
    ........................................................................................................................................ 62

CONTESTED: JURY INSTRUCTION NO. 33: REASONABLE ROYALTY- RELEVANT
    FACTORS...................................................................................................................... 64

CONTESTED: JURY INSTRUCTION NO. 34: DAMAGES-COMPARABLE AGREEMENTS
    ........................................................................................................................................ 67

CONTESTED: JURY INSTRUCTION NO. 34: DAMAGES—COMPARABLE
    AGREEMENTS............................................................................................................. 69

CONTESTED: JURY INSTRUCTION NO. 35: DAMAGES-RUNNING ROYALTY VS.
    LUMP SUM.................................................................................................................... 70

JURY INSTRUCTION NO. 36: JUROR NOTEBOOKS ........................................................... 72

CONTESTED: JURY INSTRUCTION NO. 37: DOUBTS RESOLVED AGAINST THE
    INFRINGER .................................................................................................................. 73

JURY INSTRUCTION NO. 38: DUTY TO DELIBERATE........................................................ 74

JURY INSTRUCTION NO. 39: SOCIAL MEDIA INSTRUCTION......................................... 76

## JURY INSTRUCTION NO. 1: JURY CHARGE

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for Touchstream or Google in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

Source:  Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.1; *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 1).

## JURY INSTRUCTION NO. 2: EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances have been proven. Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of eyewitnesses. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all of the evidence that you heard in this case, whether direct, circumstantial or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

Objections to questions are not evidence. The attorneys in this case may have objected if they thought that documents or testimony that were offered into evidence were improper under the rules of evidence. My legal rulings as to those objections are not evidence. My comments and questions are not evidence. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited

purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I told you to exclude or disregard is not evidence, may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence as I have defined it here, and nothing else.

Source:  *Freshhub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 5-6 (W.D. Tex. June 22, 2021); *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 3); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.3.

## JURY INSTRUCTION NO. 3: WITNESSES

You alone determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, any prejudice or bias about the case, and the consistency or inconsistency of the witness's testimony considered in the light of circumstances.

Has the witness been contradicted by other credible evidence? Has the witness made statements at other times that are contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in the outcome, you may accept the testimony if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified for the opposing sides. Witness testimony is weighed. Witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testify to the contrary, if after you have considered all of the other evidence you choose to believe the single witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some time the witness said or did something or failed to say or do something that was at odds with the testimony given at trial. A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. We're people. We forget things. We remember things inaccurately. If a witness has made a misstatement, consider whether that was an intentional falsehood or simply an innocent mistake. The significance of that may depend

9

on whether it has to do with something important or unimportant. But again, this is exclusively in

your province of whether or not you believe a witness is telling the truth.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 7); Fifth
Circuit Pattern Jury Instructions 2020, with revisions through June 2020, §§ 2.11, 3.4.

## JURY INSTRUCTION NO. 4: DEPOSITION TESTIMONY

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Some of the video recordings of witnesses you have seen may have been of lower quality because the witnesses testified from home. You should not hold the quality of the video or the location of the witness against either party.

Deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Source:  Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.13 (with modifications); *Freshhub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 8-9 (W.D. Tex. June 22, 2021); *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 8).

## JURY INSTRUCTION NO. 5: EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

Source:  *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 9); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 6 (W.D. Tex. Oct. 14, 2020).

## JURY INSTRUCTION NO. 6: INTERROGATORIES

Evidence has been presented to you in the form of answers of one or the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## <u>JURY INSTRUCTION NO. 7: BIAS—NO INFERENCE FROM FILING SUIT OR DEFENDING THE SUIT</u>

The fact that one side or the other brought this lawsuit and is in court seeking damages creates no inference on their behalf that they're entitled to judgment. The act of making a claim in a lawsuit, in this case claims of patent infringement, does not tend to establish the claim is true or not true and cannot be considered by you as evidence.

Also, the fact that Google has raised arguments against the claims and says they don't infringe creates no inference that they're entitled to a judgment.

Both of these actions, the offensive action of filing the suit and the defensive action of defending the suit must be disregarded by you, and neither of those actions should tend to establish judgment in either side's favor.

Source:  *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 686 (Nov. 15, 2022) (Prelim. Instruction No. 13); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.6.

## <u>JURY INSTRUCTION NO. 8: STIPULATIONS OF FACT</u>

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 10); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.3.

15

## JURY INSTRUCTION NO. 9: LIMITING INSTRUCTION

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

Source:  Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.6.

## JURY INSTRUCTION NO. 10: CHARTS AND SUMMARIES

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

Source:  Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.7; *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 5).

## JURY INSTRUCTION NO. 11: DEMONSTRATIVE EXHIBITS

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. Such exhibits are demonstrative exhibits. A demonstrative exhibit is a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

Source:  Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.8; *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 6).

## JURY INSTRUCTION NO. 12: BIAS-CORPORATE PARTY INVOLVED

Do not let bias, prejudice, or sympathy play any part in your deliberations. Whether you are familiar with one party or the other should not play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Source:  Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 2.16; *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 11).

**JURY INSTRUCTION NO. 13: BURDENS OF PROOF**

For each issue in this case, either Touchstream or Google bears the burden of proof, which means that it bears the burden of persuading you to find in its favor. In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Here, Touchstream has the burden of proving by a preponderance of the evidence that Google has infringed the Asserted Claims of the Asserted Patents, that such infringement has been willful, and the amount of damages Touchstream should receive to compensate it for any infringement. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

Google has the burden of proving patent invalidity and that an alleged product or publication is prior art by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt. On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between these two ends of the spectrum or those two standards.

Source : *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction Nos. 12-14); MV3 Partners, LLC v. Roku, Inc., No. 6:18-cv-00308-ADA, Dkt. 379 at 9-10 (W.D. Tex. Oct. 14, 2020); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, §§ 2.17, 3.2; *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex.), 2018-06-15 Trial Tr. (D.I. 498) 36:2-37:9.

## JURY INSTRUCTION NO. 14: SUMMARY OF CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Touchstream asserts that Google has infringed claims 1 and 8 of the '251 patent; claims 1 and 14 of the '528 patent; and claims 1 and 2 of the '289 patent, that such infringement has been willful, and that Touchstream is entitled to money damages for Google's alleged infringement.  Those patents and claims are referred to as the "Asserted Patents" and the "Asserted Claims."

Touchstream alleges that Google infringes the Asserted Claims of the Asserted Patents through the operation of Google devices that are "cast-enabled." Touchstream asserts those products include the following: (1) standalone Chromecast devices (e.g., Chromecast 1st Generation, Chromecast 2nd Generation, Chromecast 3rd Generation, Chromecast Audio, Chromecast Ultra, and Chromecast with Google TV); (2) the following devices that implement Chromecast built-in: (a) third-party devices running the Android TV operating system and with Google TV; and (b) third-party televisions and speakers with "Chromecast Built-In"; and (3) Google Home/Nest products capable of receiving cast content (e.g., Google Home, Google Home Mini, Google Home Max, Google Home Hub/Nest Hub, Google Home Hub/Nest Hub Max, Google Nest Hub Generation 2, Google Nest Audio, Google Nest Mini, and Google Nest Wifi Point (wifi extender with speaker)). These products are referred to as the "Accused Products."

Google denies that it has infringed the Asserted Claims of the Asserted Patents and argues that the Asserted Claims are invalid.

Google contends that claims 1 and 8 of the '251 patent are anticipated by GTS.

Google also contends that:

- Claims 1 and 8 of the '251 patent are obvious in view of:
  - GTS
  - The combination of GTS and Muthukumarasamy

- Claims 1 and 14 of the '528 patent are obvious in view of:
  - The combination of GTS and Hayward
  - The combination of GTS and Muthukumarasamy

- Claims 1 and 2 of the '289 patent are obvious in view of:
  - The combination of GTS and Hayward
  - The combination of GTS and Muthukumarasamy

Google also contends that the Asserted Claims of the Asserted Patents are invalid for failure of the patent to provide an adequate written description of the claimed invention.

Your job is to decide whether Google has infringed the Asserted Claims of the Asserted Patents and whether any of the Asserted Claims of the Asserted Patents are invalid. If you decide that any Asserted Claim of the Asserted Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Touchstream to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

Source:  Federal Circuit Bar Association Model Patent Jury Instructions § A.2 (May 2020); *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 2).

## JURY INSTRUCTION NO. 15: PATENT CLAIMS

Before you can decide many of the issues in this case, you'll need to understand the role of the patent "claims." The claims of a patent are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims themselves that define what a patent covers. The figures and the text in the rest of the patent provide a description or examples of the claimed invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

The requirements of a claim are often referred to as "claim elements," "claim steps," or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

It is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case.  I have determined that you are to use the plain and ordinary meaning of the words of the patent claims as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the invention. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

24

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble of a claim, if you decide that an accused product or process includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product or process contains additional elements. For example, a claim to "a table comprising a tabletop, legs, and glue" would cover a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 16); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008); *Freshhub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 12-13 (W.D. Tex. June 22, 2021); Federal Circuit Bar Association Model Patent Jury Instructions § 2.1 (May 2020).

## JURY INSTRUCTION NO. 16: INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of Asserted Claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, asserted claim 1 of the '251 patent, asserted claim 1 of the '528 patent, and asserted claims 1 and 6 of the '289 patent are each independent claims.

The remainder of the Asserted Claims in the Asserted Patents are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which the dependent claim refers is covered by that dependent claim.

If any requirement of a dependent claim is not met, or if any requirement of the independent claim from which the dependent claim depends is not met, then the product or process is not covered by that dependent claim.

On the other hand, if the requirements of an independent claim are met by a product or process, but a requirement of a dependent claim is not met, the independent claim is still infringed.

Source: *Ravgen v. Laboratory Corp. of America Holdings*, 20-cv-00969-ADA, Dkt. 215 (Sept. 23, 2022) (Final Instruction No. 16); The Federal Circuit Bar Association Model Patent Jury Instructions § 2.1a (May 2020).

## CONTESTED:  JURY INSTRUCTION NO. 17: INFRINGEMENT-GENERALLY

I will now instruct you as to the rules you must follow when deciding whether Touchstream has proven that Google infringed any of the Asserted Claims of the Asserted Patents.

[Touchstream: Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling a claimed invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.] [Google: A person or business entity that imports, makes, uses, sells, or offers to sell an invention claimed in a patent infringes that patent.]

Infringement is assessed on a claim-by-claim basis by comparing the operation of Google's accused products to the elements or steps of each claim.  There may be infringement as to one claim but no infringement as to another claim.

To prove infringement of a claim, Touchstream must prove infringement by a preponderance of the evidence, that is, that it is more likely than not that infringement has been proven.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 19); *Ravgen v. Laboratory Corp. of America Holdings*, 20-cv-00969-ADA, Dkt. 215 (Sept. 23, 2022) (Final Instruction No. 17); *Profectus Technology LLV v. Google LLC*, 20-cv-00101-ADA, Dkt. 193 (Oct. 6, 2021) (Instruction No. 17); Federal Circuit Bar Association Model Patent Jury Instructions § 3.1 (May 2020); AIPLA Model Patent Jury Instructions § 3.0 (2019); 35 U.S.C. § 271; *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

Source:  Federal Circuit Bar Association Model Patent Jury Instructions § 3.1 (May 2020); AIPLA Model Patent Jury Instructions § 3.0 (2019); 35 U.S.C. § 271; *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

**<u>Google's Objections to Touchstream's Proposed Instruction:</u>**

Google objects to Touchstream's proposed instruction as prejudicial and argumentative.

**<u>Touchstream's Objections to Google's Proposed Instruction:</u>**

Touchstream objects to Google's proposed instruction as incomplete.

## CONTESTED:  JURY INSTRUCTION NO. 18: OTHER PATENTS

You have heard certain arguments and evidence regarding Google's patents. The fact that Google has patents does not mean that it has a right to use Touchstream's patented technology and has no impact on whether Google has or has not infringed the Asserted Patents.

Source: *VLSI v. Intel,* 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 4).

### Google's Objections to Touchstream's Proposed Instruction:

Google objects to this instruction as improper and without a basis and therefore potentially confusing to the jury, including in light of Touchstream's willfulness claims.  This is not a standard instruction, and particularly on the facts of this case improperly elevates an evidentiary issue into a jury instruction that is unduly prejudicial to Google.  Google further objects to this instruction because, unlike here, Touchstream's cited source, *VLSI v. Intel*, No. 6:19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022), did not involve a willfulness claim.

**Touchstream's Response:**

Based on what has been asserted by Google in the case, this instruction is relevant and appropriate.

## CONTESTED:  JURY INSTRUCTION NO. 19: DIRECT INFRINGEMENT-KNOWLEDGE OF THE PATENT AND INFRINGEMENT ARE IMMATERIAL

In this case, Touchstream asserts that Google has directly infringed the Asserted Patents. You must compare the accused product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. There is no intent element to direct infringement. Evidence of independent development is not relevant to an infringement determination. Copying is not a required element of infringement. Even if the party independently creates the accused product, it can still infringe.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 20); *ART+COM Innovationpool GmbH v. Google LLC*, No. 1:14-cv-00217 (D. Del. Feb. 20, 2014) D.I. 410 (final jury instructions), Instruction 9 at 14 ("Evidence of independent development of the patented invention may not be considered in determining patent infringement . . . ."; *Cellectis S.A. v. Precision Biosciences Inc.*, No. 1:11-cv-00173 (D. Del. Mar. 1, 2011) D.I. 298 (final jury instructions), p. 21) ("If Precision's products infringe one claim of the '372 patent, then Precision infringes that patent, even if, in good faith, Precision believed that it did not infringe. Precision's independent development, or its knowledge or intent to infringe, are not relevant to the issue of direct infringement.").

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to this instruction as argumentative and prejudicial to Google, including in light of Touchstream's willfulness claims.  Google further objects to this instruction because none of Touchstream's cited sources involved a willfulness claim, a claim Touchstream presses here.

**Touchstream's Response:**

Based on what has been asserted by Google in the case, this instruction is relevant and appropriate.

**<u>JURY INSTRUCTION NO. 20: INFRINGEMENT BY LITERAL INFRINGEMENT</u>**

In order to prove infringement by literal infringement, Touchstream must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Google made, used, sold, or offered for sale within the United States, or imported into the United States, a product or process that meets all of the requirements of a claim and did so without the permission of Touchstream. You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

A claim element is literally present if it exists in an Accused Product or was performed by an Accused Product as it is described in the claim language. For a method claim to be infringed, Touchstream must prove by a preponderance of the evidence that Google performed each and every step of the claimed method in the United States. If an Accused Product omits any requirement recited in one of the Asserted Claims, then that product or process does not infringe that claim.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or process meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

Source:  Federal Circuit Bar Association Model Patent Jury Instructions § 3.1a (May 2020).

## CONTESTED: JURY INSTRUCTION NO. 21: DIRECT INFRINGEMENT: ACTS OF MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL METHOD CLAIM LIMITATIONS

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single party. Where more than one party is involved in practicing the steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement. One situation where there may be direct infringement even if no single party performs all of the steps is where one party directs or controls another party's performance of some or all of the claim steps of the claimed method.

Touchstream alleges that Google performs each and every step of the Asserted Claims, and that if third parties are involved in performing any steps, then Google directs and controls each step of the Asserted Claims when Google's "cast-enabled" products are operated, such that Google is liable for infringement even if you find Google does not perform each step itself. For infringement to be proved under this theory, Touchstream must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that Google directs or controls the acts of others involved in the operation of Google's "cast enabled" products.

To prove that Google directed or controlled the acts of others involved in the operation of Google's "cast enabled" products, Touchstream must prove either that (1) those other parties are the agent of Google or are contractually obligated to Google to carry out the claimed steps, or (2) those other parties performed the claim step(s) in order to receive a benefit from Google and that Google established how or when the claim step(s) were performed.

Source: Federal Circuit Bar Association Model Patent Jury Instructions § 3.7 (May 2020); *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 797 F.3d 1020, 1022-24 (Fed. Cir. 2015) (en banc).

**<u>Google's Objections to Touchstream's Proposed Instruction:</u>**

Google objects to this instruction as argumentative.  Google further objections to this instruction as confusing and one-sided.  Google further objects to Touchstream's characterization of the Accused Products as inaccurate.

## CONTESTED:  JURY INSTRUCTION NO. 21:  DIVIDED INFRINGEMENT

The Asserted Claims cover methods.  Direct infringement requires a party to perform each and every step of a claimed method.  Where no one party performs all of the steps of a claimed method, but multiple parties combine to perform every step of the method, that claim can be directly infringed only if all of the actions constituting infringement are attributable to a single party.

Google argues that it has not directly infringed because users performed one or more of the acts necessary to infringe.  If you find that one or more of the steps of the claims cannot be attributed to Google, then you must find that there is no direct infringement.

Touchstream bears the burden of showing that the actions of users are attributable to Google.  The actions of one party are attributable to another if one party performs some steps and controls or directs the performance of the other steps or the two parties form a joint enterprise.

You may find that Google directed or controlled users' performance of a step of a claimed method if Google and the users have a principal and agent relationship; if Google contracted with users to perform a step of the claimed method; or if Google dictated the manner or timing of performing a step of the claimed method, and provided a benefit or allowed participation in an activity only if users performed the step.  Mere guidance or instruction is insufficient to show that Google required users to perform the step to receive a benefit or participate in an activity.

Parties form a joint enterprise if (1) they have an agreement, express or implied, among themselves; (2) the group has a common purpose to carry out; (3) the members of the group share a common financial interest, and (4) each member has an equal right to a voice in the direction of the enterprise.

Source:  *Akamai Techs. Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015) (en banc); *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1379 (Fed. Cir. 2017) (discussing *Eli Lilly & Co. v. Teva Parenteral Meds.*, Inc., 845 F.3d 1357, 1366 (Fed. Cir. 2017)); *Move, Inc. v. Real*

*Estate Alliance Ltd.*, 709 F.3d 1117, 1122 (Fed. Cir. 2013); AIPLA Model Patent Jury Instructions § 3.3 (2019).

**<u>Touchstream's Objections to Google's Proposed Instruction:</u>**

Touchstream objects to this instruction as not properly tied to the facts of this case, as misstating the law and the facts, and is otherwise confusing.

## CONTESTED: JURY INSTRUCTION NO. 22: WILLFUL INFRINGEMENT

[Google: Touchstream asserts that Google infringed the Asserted Patents, and further, that Google infringed willfully.]  If you have decided that Google has infringed any valid asserted claim, you must go on and address the additional issue of whether the infringement was willful.

[Touchstream: Willfulness requires you to determine whether Touchstream proved that it is more likely than not that Google knew of the infringed Touchstream Patent and that Google infringed intentionally or acted with reckless disregard of that Touchstream Patent. That is, you may find Google's infringement was willful if it knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid patent. Google may be considered to have known about the infringed Touchstream Patent if it subjectively believed there was a high probability such a patent existed and Google took deliberate actions to avoid learning about them, in other words, willfully blinded itself to the existence of the infringed Touchstream Patent. You may not determine that the infringement was willful just because Google was aware of a Touchstream Patent and you found infringement.]

[Google: To establish willful infringement, Touchstream must persuade you that it is more likely than not that Google intentionally ignored or recklessly disregarded a valid patent claim.  You must base your decision on Google's knowledge and actions at the time of infringement.

Touchstream must establish that it is more likely than not that Google actually knew of the Asserted Patents at the time of the alleged infringement.  If Touchstream fails to satisfy that burden, or if you find that Google had no knowledge of the patent, you may not find willful infringement.

36

If you find that Google knew of the Asserted Patents at the time of infringement, that alone is not sufficient to show willfulness.  Touchstream must also prove that it is more likely than not that Google knowingly and intentionally infringed the patent.]

To determine whether Google acted willfully, you should consider all facts and circumstances relating to the infringement, including but not limited, to:

1)      Whether Google acted consistently with the standards of behavior for its industry;

[Touchstream: 2)      Whether Google intentionally copied a method or product of Touchstream that is covered by the Asserted Patents];

3)      Whether Google reasonably believed it did not infringe or that the patent was invalid;

[Google: 4)      Whether Google reasonably believed that the Asserted Patents was invalid;]

5)      Whether Google made a good-faith effort to avoid infringing the Asserted Patents by, for example, attempting to design around the Asserted Patents; and

6)      Whether Google tried to cover up its infringement.

If you decide the infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.

Source: *Ravgen v. Laboratory Corp. of America Holdings*, 20-cv-00969-ADA, Dkt. 215 (Sept. 23, 2022) (Final Instruction No. 19); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-34 (2016); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309-10 (Fed. Cir. 2019); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1353–55 (Fed. Cir. 2018); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245 (Fed. Cir. 2017); Federal Circuit Bar Association Model Patent Jury Instructions § 3.10 (May 2020); Northern District of California Model Patent Jury Instructions §§ 3.7, 3.8 (Oct. 2019); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 837 (E.D. Tex. 2019).

Source:  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-34 (2016); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *SRI Int'l, Inc. v.*

*Cisco Sys., Inc.*, 930 F.3d 1295, 1309-10 (Fed. Cir. 2019); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); Polara Eng'g Inc v. Campbell Co., 894 F.3d 1339, 1353–55 (Fed. Cir. 2018); *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245 (Fed. Cir. 2017); Federal Circuit Bar Association Model Patent Jury Instructions § 3.10 (May 2020); Northern District of California Model Patent Jury Instructions § 3.8 (Oct. 2019).

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to Touchstream's inclusion of a sentence instructing on willful blindness. The instruction is prejudicial, misleading, and invites error, particularly given the lack of any evidentiary basis from which a jury could find willful blindness. Google objects to instructing the jury on "[w]hether Google intentionally copied a method or product of Touchstream that is covered by the Asserted Patents" because it violates the Court's ruling on Google MIL No. 3, which excludes reference that any Touchstream product practiced the Asserted Patents. Dkt. 233 at 2. Google further objects to the inclusion of this factor given the lack of evidentiary basis for such a finding. Google further objects to this instruction as inadequate and confusing because it fails to separate out the knowledge-of-the-patent element from the knowledge-of-infringement element. Google further objects to this instruction because it combines the factors relating to whether Google reasonably believed it did not infringe and whether Google reasonably believed the asserted patents were invalid. Google further objects to this instruction as incomplete and an inaccurate statement of the law.

**Touchstream's Objections to Google's Proposed Instruction:**

Touchstream objects to Google's instruction as incomplete and not an accurate statement of the law. Touchstream responds to Google's objections as follows: Touchstream maintains that willful blindness and copying are both supported by the evidence, including circumstantial evidence. Moreover, copying is probative of willfulness independent of whether the copied product has been

shown to practice the Asserted Patents. Knowledge of the patent and of infringement are factually intertwined, there is no requirement to separate them for the jury, and any attempt to do so would be confusing, burdensome, and prejudicial to Touchstream. Separating instructions on belief of non-infringement and of defenses to infringement (*e.g.*, invalidity) is not required, and instructions in other cases and the models do not do so.

## CONTESTED: JURY INSTRUCTION NO. 23: PATENT INVALIDITY-GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not Google has proven that the Asserted Claims of the Asserted Patents are invalid. [Google: Patent invalidity is a defense to patent infringement.]  The issuance of a patent by the Patent Office provides a presumption that the patent is valid. The burden of establishing invalidity of a patent or any claim rests solely on Google as the party asserting invalidity.

To prove that any claim of a patent is invalid, Google must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid. Even though the Patent Office examiners have allowed the Asserted Claims as valid, you have the responsibility for deciding whether Google has met its burden of proving by clear and convincing evidence that the claims of the patent are invalid.

 [Google: But the Patent Office sometimes issues invalid patent claims, and issued claims can be found invalid in court.  In this case, you have the ultimate responsibility for deciding whether the Asserted Claims are valid or invalid.  In making your determination, you must consider the Asserted Claims individually, as you did when you considered whether each claim was infringed or not.  If clear and convincing evidence demonstrates that an Asserted Claim fails to meet any requirement of the patent laws, then that claim is invalid.

During the course of this trial, Google has presented you with several prior art references.  In general, prior art includes patents, publications, or items that were publicly used, offered for sale, or publicly known, that disclosed the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been on sale, used, published, patented, or otherwise made available to the public before the filing date of the Asserted Patents.

40

The fact that any particular reference was or was not considered by the Patent Office does not change Google's burden of proof.  However, in making your decision whether Google has demonstrated that a claim is invalid by clear and convincing evidence, you may consider whether Google has presented any materially new prior art references that the Patent Office had no opportunity to evaluate.  Google's burden may be easier to meet if all material facts were not before the Patent Office when it issued a patent.]

I will now instruct you on the invalidity issues you should consider.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 23); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 (W.D. Tex. June 22, 2021) (Final Jury Instruction 2.14); Federal Circuit Bar Association Model Patent Jury Instructions § 4.1 (May 2020); *Hafeman v. LG Electronics Inc.*, No. 6:21-cv-696-ADA (W.D. Tex. Apr. 28, 2023) (Final Instruction No. 33); *Repeat Precision LLC v. DynaEnergetic Europe GmbH*, No. 6:21-cv-104-ADA, Dkt. 164 (W.D. Tex. Apr. 3, 2023) (Final Instruction No. 20).

Source:  35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1563-64 (Fed. Cir. 1993); *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628 (2019).

**<u>Google's Objections to Touchstream's Proposed Instruction:</u>**

Google objects the unnecessarily repetitive instructions on Google's burden; Touchstream's proposal repeats the burden at least four times.  Google also objects to this instruction as incomplete and prejudicial because it fails to include instruction about the implications of the Patent Office's review and how to evaluate Google's burden if new materials facts are present in this case but were not present before the Patent Office.  The Court has provided such instruction in prior cases, and such an instruction is appropriate here.  *E.g.*, *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 25:  Patent Invalidity—Prior Art Not Considered by the PTO).  Google's proposed instruction is consistent with such an instruction.  For instance, the *VLSI* instruction provided:  "When a party challenging the validity of a patent

41

presents evidence that was not considered by the Patent Office examiners during the prosecution of the application and not cumulative of other evidence that was considered which resulted in the issued patent or claim affirmance on reexam, such new evidence may be given more weight and may make it easier to satisfy the party's clear-and-convincing evidence burden."

**<u>Touchstream's Objections to Google's Proposed Instruction:</u>**

Touchstream objects to Google's instruction as unnecessary, an incorrect statement of the law, and prejudicial. Further, the patent process was covered in the Patent Video/Preliminary Instructions and further discussion at this stage is unhelpful. Google's proposal exceeds any instruction supported by authority.

## CONTESTED: JURY INSTRUCTION NO. 24: INVALIDITY-PRIOR ART

Google contends the following are prior art to the Asserted Patents:

- YouTube Remote and Leanback with Google TV System ("GTS")

- U.S. Patent No. 8,918,812 (" Hayward")

- U.S. Patent Application Publication No. 2010/0241699 ("Muthukumarasamy")

You must determine whether each of the above is prior art that can be considered in determining whether the Asserted Claims of the Asserted Patents are anticipated or obvious.

Google contends that GTS is prior art because it was publicly known or publicly used by others in the United States before the claimed invention was invented. Google contends that [Google: the YouTube Leanback and Google TV (including Fling and remote control features) aspects of GTS,] Hayward, and Muthukumarasamy are prior art because they were [Google: known to or used by others in the United States or] patented or described in a printed publication anywhere in the world before [Touchstream: the claimed invention was invented.] [Google: October 8, 2010. Google contends that the YouTube Remote aspects of GTS are prior art because they were known to or used by others in the United States anywhere in the world before November 9, 2010, and because the Asserted Patents are not entitled to an invention date before November 9, 2010.

To prove that GTS, Hayward, and Muthukumarasamy are prior art, Google must prove that the references were known to or used by others in the United States or patented or described in a printed publication anywhere in the world before the date of the claimed invention. An invention is known when the information about it was reasonably accessible to the public on that date. A description is a "printed publication" only if it was publicly accessible.

However, the YouTube Remote aspects of GTS are not prior art if you determine that the Asserted Claims of the Asserted Patents are entitled to an invention date before November 9, 2010.

43

Specifically, Touchstream contends that the invention date is October 8, 2010, because the inventor conceived of the invention on that date and the inventor was diligent in reducing the invention to practice. Google contends that the invention of the Asserted Patents was conceived no earlier than November 9, 2010, and that the invention was not reduced to practice.]

In this case, you must determine the date of invention for the Asserted Claims of the Asserted Patents. The date of invention is either when the invention was reduced to practice or when the invention was conceived, provided the inventor was diligent in reducing the invention to practice. [Google: While Google bears the burden of persuasion to show by clear and convincing evidence that each of GTS, Hayward, and Muthukumarasamy are prior art to the Asserted Patents, Touchstream nevertheless must meet its burden of production to demonstrate an earlier invention date of October 8, 2010.

For the Asserted Patents to be entitled to an invention date of October 8, 2010, Touchstream has the burden of providing evidence that the claimed invention of the Asserted Patents was conceived by October 8, 2010, and that the inventor was diligent in reducing the invention to practice after the conception date.] Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built or have actually explained her or his invention to another person. But there must

be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention.

Google must prove by clear and convincing evidence that each of GTS, Hayward, and Muthukumarasamy is prior art.

Source: Federal Circuit Bar Association Model Patent Jury Instructions § 4.3a; *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 24); *EcoFactor, Inc. v. Google LLC*, 20-cv-00075-ADA, Dkt. 209 (Feb. 10, 2022) (Final Instruction No. 34); *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1009 (Fed. Cir. 2016).

Source:  Federal Circuit Bar Association Model Patent Jury Instructions § 4.3a (including citations therein, e.g., *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014)).

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to Touchstream's  instruction as misleading and incomplete.  For example, Touchstream's instruction is misleading and confusing because it never specifies the asserted conception date that Touchstream claims.

**Touchstream's Objections to Google's Proposed Instruction:**

Touchstream objects to Google's prior art instruction as providing Google's contentions rather than explaining the law. The invention date is for the jury to find, based on the evidence, and the jury is not limited to accepting one party's contentions or the other, as Google's proposed instruction improperly suggests. In addition, the overall instruction is confusing and unhelpful; Google's reference to the burden of production is not a proper instruction for the jury.

45

## JURY INSTRUCTION NO. 25: LEVEL OF ORDINARY SKILL

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

Source: *Ecofactor v. Google*, 20-cv-00075-ADA, Dkt. 209 (Nov. 15, 2022) (Final Instruction No. 38).

**JURY INSTRUCTION NO. 26: PATENT INVALIDITY- ANTICIPATION**

The patent laws of the United States require that an invention must be new for a person to be entitled to a patent.

Anticipation must be determined on a claim-by-claim basis. For anticipation, Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.

To anticipate the claimed invention, the prior art does not have to use the same words as the claim, but all requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements must be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Google is relying on prior art that was not considered by the Patent Office during examination of the Asserted Patents, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether Google has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 26).

## CONTESTED: JURY INSTRUCTION NO. 27: OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

[Google: Even if it was not previously disclosed or described in full, a patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the patent's field of technology before the filing date of the patent.]

Google may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time of the invention of the Asserted Patents.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time of the invention of the Asserted Patents, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention of the Asserted Patents.

[Google: To decide whether the Asserted Claims would have been obvious, you must consider (1) the level of ordinary skill that someone would have had in the field of the Asserted Patents when the patents were filed; (2) the scope and content of the prior art; (3) any differences between the prior art and the claimed inventions; and (4) objective evidence, if any, indicating that the inventions would not have been obvious when the Asserted Patents were filed.]

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the invention of the Touchstream Patents, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

[Google: An invention is not necessarily obvious even if all of its elements appeared in the prior art. Many inventions are made of building blocks that were already known beforehand. You should consider, without hindsight, whether there was a reason for someone of ordinary skill in the art as of the filing date of the Asserted Patents to combine known elements in a way that the claimed invention did and whether the person of ordinary skill would have reasonably expected to succeed in doing so. Finding any of the following facts suggests the claimed invention would have been obvious:

1. the claimed invention was the predictable result of using elements from the prior art to perform their known functions;

2. the claimed invention was an obvious solution to a known problem;

3. the prior art showed or suggested that it was desirable to combine the elements as in the claimed invention;

4. it would have been obvious to try to create the invention—for example, if there were reasons to solve a problem and there were a finite number of identified and predictable solutions; or

5. the claimed combination would have happened anyway due to design incentives or other market forces.]

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a.      Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.      Whether the claimed invention satisfied a long-felt need;

c.      Whether others had tried and failed to make the claimed invention;

d.      Whether others invented the claimed invention at roughly the same time;

e.      Whether others copied the claimed invention;

f.      Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g.      Whether the claimed invention achieved unexpected results;

50

h.      Whether others in the field praised the claimed invention;

i.      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j.      Whether others sought or obtained rights to the patent from the patent holder; and

k.      Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

[Google: You should also consider objective evidence presented by either party that may shed light on whether the claimed invention would have been obvious.

- Were products incorporating the claimed invention commercially successful? If so, were they successful because of the claimed invention or for other reasons, like other product features or marketing efforts?

- Had the problem facing the inventors been without a solution for a long time?

- Did others try and fail to solve the problem that the claimed invention addresses?

- Did others copy the claimed invention?

- Did the claimed invention get results that were better than the closest prior art to an unexpected degree?

- Did others in the field or Google praise the claimed invention or express surprise that it had been made?

- Did others license the claimed invention because of its merits, and not just to avoid the costs of litigation?

51

Answering some or all of these questions 'yes' may suggest that the claimed invention would not have been obvious.  Answering some or all of them 'no' may suggest that the claimed invention would have been obvious.

Another factor to consider is whether others independently came up with the claimed invention before or at about the same time as the named inventor.  That factor is evidence that the claim would have been obvious.

You should consider these factors along with all the other evidence in the case in deciding whether Google has shown that the Asserted Claims would have been obvious.

Google bears the burden to prove facts relevant to obviousness by clear and convincing evidence.  The ultimate question of whether a claim is invalid as obvious based on those facts is a question of law, however.  Accordingly, you should apply the clear-and-convincing standard when resolving the parties' factual disputes, but not when deciding whether the facts as you find them show that the Asserted Claims would have been obvious.]

Source: *CloudofChange v. NCR Corp.*, 19-cv-00513-ADA, Dkt. 150 (May 19, 2021) (Final Instruction No. 4.2c); *Repeat Precision, LLC v. DynaEnergetics Europe GmbH*, 21-cv-104-ADA, Dkt. 164 (April 3, 2023) (Final Instruction No. 22); Federal Circuit Bar Association Model Patent Jury Instructions § 4.3c (May 2020).

Source: 35 U.S.C. § 103; *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2253 (2011) (Breyer, J., concurring); *Addington v. Texas*, 441 U.S. 418, 423 (1979); *SSIH Equip. S.A. v. ITC*, 718 F.2d 365, 375 (Fed. Cir. 1983); *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 767 (Fed. Cir. 1989); Federal Circuit Bar Association Model Patent Jury Instructions § 4.3c (May 2020); AIPLA Model Patent Jury Instructions § 7.4 (2019); National Jury Instruction Project, Model Patent Jury Instructions § 5.9.

**<u>Google's Objections to Touchstream's Proposed Instruction:</u>**

Google objects to factor (4) regarding teaching away, which is not at issue in this case.

Google also objects to the statement "Obvious to try is not sufficient in unpredictable arts" as irrelevant and misleading given the nature of the technology at issue in this case.  Google further

objects to factor (a) failing to acknowledge that commercial success can also be due to unpatented features, not simply "design needs or market-pressure advertising or similar activities."  Google additionally objects to factor (j) listing "sought" as misleading and prejudicial, as well as irrelevant.

**Touchstream's Objections to Google's Proposed Instruction:**

Touchstream objects to Google's obviousness instruction because it does not give adequate emphasis to the instruction to avoid hindsight. Further, Touchstream objects to Google's framing of secondary considerations as suggestive and thus prejudicial. Further, the instruction is both incomplete in certain respects and repetitive in other respects.

**CONTESTED: JURY INSTRUCTION NO. 28: WRITTEN DESCRIPTION REQUIREMENT [LACK OF WRITTEN DESCRIPTION]**

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date. Google contends that the Asserted Claims of the Asserted Patents are invalid because the specification does not contain an adequate written description of the claimed invention. To succeed, Google must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of April 21, 2011, would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted Claims of the Asserted Patents. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere

wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

[Google: A patent's specification must describe in full, clear, and exact terms the nature and extent of the claimed invention. In the patent application process, the applicant may keep the originally filed claims, amend the claims, or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims are not broader than the written description that was provided in the original application. The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would have recognized that the inventor had invented each and every limitation of what is now claimed by the time of filing, even though the description might not use the exact words found in the claim.

But merely showing invention is not sufficient; the ultimate question is whether the specification describes in full, clear, and exact terms the nature and extent of the claimed invention.

If you find by clear and convincing evidence that one or more of the Asserted Claims lacked an adequate written description, you must find each such claim invalid.]

Source:  *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 (W.D. Tex. June 22, 2021) (Final Jury Instruction 2.15); Federal Circuit Bar Association Model Patent Jury Instructions § 4.2a (May 2020); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc).

Source:  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc).

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to the title as inconsistent to the issue before the jury.  Google further objects as prejudicial and unbalanced in favor of Touchstream.  Google further objects to this

instruction as an inaccurate statement of the law.  Google further objects to the instruction's heading as inaccurate and prejudicial.

**<u>Touchstream's Objections to Google's Proposed Instruction:</u>**

Touchstream objects to Google's instruction as incomplete and prejudicial to Touchstream. Google's instruction provides insufficient guidance on what the jury should consider when judging the sufficiency of the written description.

**CONTESTED: JURY INSTRUCTION NO. 29: DAMAGES-INTRODUCTION**

If you find that Google infringed any valid claim of the Asserted Patents, you must then consider what amount of damages to award to Touchstream. [Google: On the other hand, if you find that each of the Asserted Claims is invalid, not infringed, or both, then you should stop and not reach any damages issues.] I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Google has not infringed any valid claim of the Asserted Patents, then Touchstream is not entitled to any damages.

[Touchstream: The damages you award, if any, must] [Google: If you award damages, the amount should] be adequate to compensate Touchstream for the infringement. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put Touchstream in approximately the same financial position that it would have been in had the infringement not occurred.

Touchstream has the burden to establish the amount of damages by a preponderance of the evidence. In other words, you should award only those damages that Touchstream establishes that it more likely than not has suffered. While Touchstream is not required to prove the amount of damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Touchstream seeks a reasonable royalty. A reasonable royalty is defined as the money amount Touchstream and Google would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that Touchstream is entitled to recover no less than a reasonable royalty for each infringing act.

Source: *VideoShare, LLC v. Google LLC*, No. 6:19-cv-663-ADA, Dkt. 215 (W.D. Tex. Nov. 15, 2021) (Final Instruction No. 24); *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 27); *DropBox, Inc. v. Motion Offense, LLC*, No. 6:20-cv-251-ADA (W.D. Tex. May 19, 2023) (Final Jury Instruction No. 12); *Hafeman v. LG Electronics Inc.*, No. 6:21-cv-696-ADA (W.D. Tex. Apr. 28, 2023) (Final Instruction No. 38); *Repeat Precision LLC v. DynaEnergetic Europe GmbH*, No. 6:20-cv-104-ADA, Dkt. 164 (W.D. Tex. Apr. 3, 2023) (Final Instruction No. 25); *Ravgen, Inc. v. Laboratory Corp. of America Holdings*, No. 6:20-cv-969-ADA, Dkt. 215 (W.D. Tex. Sept. 23, 2022) (Final Instruction No. 20); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-680-ADA, Dkt. 181 (W.D. Tex. Apr. 7, 2022) (Final Instruction No. 2.13); *Ecofactor, Inc. v. Google LLC*, No. 6:20-cv-75-ADA, Dkt. 209 (W.D. Tex. Feb. 9, 2022) (Final Instruction No. 40); *Global eTicket Exchange Ltd. v. Ticketmaster L.L.C.*, No. 6:21-cv-00399-ADA (W.D. Tex. May 4, 2023) (Final Jury Instructions No. 15); Federal Circuit Bar Association Model Patent Jury Instructions § 5.1 (May 2020); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324, 1335 (Fed. Cir. 2009); AIPLA Model Patent Jury Instructions § 10.0 (2019).

Source:  *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324, 1335 (Fed. Cir. 2009); Federal Circuit Bar Association Model Patent Jury Instructions § 5.1 (May 2020); AIPLA Model Patent Jury Instructions § 10.0 (2019).

**<u>Google's Objections to Touchstream's Proposed Instruction:</u>**

Google believes that the additional sentence Google proposes in the first paragraph helps make clear to the jury that they are not to award damages if all claims are invalid, not infringed, or both.  Google objects to Touchstream's language in the second paragraph as not neutrally presented.  Google objects to Touchstream's proposed language in the final two paragraphs as duplicative of other instructions, internally inconsistent with the first paragraph of this instruction, and not neutrally presented.

**<u>Touchstream's Objections to Google's Proposed Instruction:</u>**

Touchstream objects to Google's proposed instruction as incomplete. Touchstream further objects to Google's added sentence—"If you find that Google has not infringed any valid

claim of the Asserted Patents, then Touchstream is not entitled to any damages."—in the first paragraph as unnecessary and prejudicial to Touchstream, incentivizing the jury not to find infringement or validity. Contrary to Google's contention, the sentence is not supported by the exemplars to which it cites. The proposed instruction already states, "If you find that Google has not infringed any valid claim of the Asserted Patents, then Touchstream is not entitled to any damages." That sentence is more than sufficient to address Google's point.

## JURY INSTRUCTION NO. 30:  DATE OF COMMENCEMENT OF DAMAGES— PRODUCTS

In determining the amount of damages, the parties agree that damages period begins on June 4, 2015.

Source:  Federal Circuit Bar Association Model Patent Jury Instructions § 5.10 (May 2020).

## JURY INSTRUCTION NO. 31: DAMAGES-REASONABLE ROYALTY

A reasonable royalty is defined as the money amount that the patent owner and the alleged infringer would have agreed to if a hypothetical negotiation had taken place at the time just prior to when any infringement first began. Touchstream bears the burden of proving the appropriate amount of a reasonable royalty by a preponderance of the evidence.

In considering this hypothetical negotiation to determine a reasonable royalty in this case, you should focus on what the expectations of Touchstream and Google would have been had they acted reasonably in their negotiations and had they entered into an agreement just before any infringement began.  In determining this, you must assume that both parties believed the Asserted Patents were valid and would be infringed and that Touchstream and Google were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 28); *Hafeman v. LG Electronics Inc.*, No. 6:21-cv-696-ADA (W.D. Tex. Apr. 28, 2023) (Final Instruction No. 39); *Ravgen, Inc. v. Laboratory Corp. of America Holdings*, No. 6:20-cv-969-ADA, Dkt. 215 (W.D. Tex. Sept. 23, 2022) (Final Instruction No. 22); *Ecofactor, Inc. v. Google LLC*, No. 6:20-cv-75-ADA, Dkt. 209 (W.D. Tex. Feb. 9, 2022) (Final Instruction No. 41); *Ecofactor, Inc. v. Ecobee, Inc.*, No. 6:20-cv-00078-ADA (W.D. Tex. June 22, 2023) (Final Jury Instructions, No. 36); *Global eTicket Exchange Ltd. v. Ticketmaster L.L.C.*, No. 6:21-cv-00399-ADA (W.D. Tex. May 4, 2023) (Final Jury Instructions No. 16); Federal Circuit Bar Association Model Patent Jury Instructions § 5.6 (May 2020).

## CONTESTED: JURY INSTRUCTION NO. 32: DAMAGES-APPORTIONMENT REQUIRED

Any amount of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising. A royalty compensating the patent owner for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.

Apportionment can be addressed in a variety of ways, including by careful selection of the royalty base to reflect the value added by the patented feature or by adjustment of the royalty so as to discount the value of a product's non-patented features; or by a combination thereof.

When the products accused of infringement have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

[Google: Touchstream bears the burden to establish the amounts attributable to the patented feature and not to other technologies, features, or aspects of the accused product. Touchstream's evidence must be reliable and tangible: it cannot be speculative. Any evidence of a reasonable royalty must carefully tie proof of damages to the claimed invention's role in the marketplace.]

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 29); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 646-47 (1915); *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349-50 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310-11 (Fed. Cir. 2018); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-28 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337-38 (Fed. Cir. 2009); Federal Circuit Bar Association Model Patent Jury Instructions § 5.12 (May 2020).

Source:  *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-75-ADA (W.D. Tex. Feb. 9, 2022) (Final Instruction No. 45); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 646-47 (1915); *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods.*

*Grp.*, LLC, 879 F.3d 1332, 1349-50 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310-11 (Fed. Cir. 2018); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-28 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337-38 (Fed. Cir. 2009); Federal Circuit Bar Association Model Patent Jury Instructions § 5.12 (May 2020).

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to Touchstream's proposal's failure to instruct the jury that Touchstream bears the burden of proof on apportionment and that its evidence must be reliable and tangible and carefully tied to the claimed invention's role in the marketplace, which Google proposes as its final paragraph.

**Touchstream's Objections to Google's Proposed Instruction:**

Touchstream objects that Google's proposed instruction is wordy and repetitive of other instructions, in addition to being confusing. The last paragraph proposed by Google is sufficiently addressed in other instructions.

63

## CONTESTED: JURY INSTRUCTION NO. 33: REASONABLE ROYALTY- RELEVANT FACTORS

In determining the amount of a reasonable royalty you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

- Any royalties received by Touchstream for licensing of the patent-in-suit, proving or tending to prove an established royalty.

- The rates paid by Google to license other patents comparable to the Touchstream Patents.

- The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

- The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

- The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

- The effect of selling the patented products in promoting other sales of the licensee (Google); the existing value of the claimed invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

- The duration of the Touchstream Patents and the term of the license.

- The established profitability of the products made under the Touchstream Patents; their commercial success; and their popularity.

64

- The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented inventions; the character of any commercial embodiment of it as owned and produced by or for the licensor; and the benefits, if any, to those who have used the claimed invention.

- The extent, if any, to which Google has made use of the claimed invention; and any evidence that shows the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

- The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

- The opinion testimony of qualified experts.

- The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

- Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

65

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people. Any reasonable royalty you award must compensate for the use made of the invention by the accused infringer.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 30); 2019 AIPLA Model Instruction No. 10.2.5.3; *DropBox, Inc. v. Motion Offense, LLC*, No. 6:20-cv-251-ADA (W.D. Tex. May 19, 2023) (Final Jury Instruction No. 12.2); *Repeat Precision LLC v. DynaEnergetic Europe GmbH*, No. 6:21-cv-104-ADA, Dkt. 164 (W.D. Tex. Apr. 3, 2023) (Final Instruction No. 27); *Ravgen, Inc. v. Laboratory Corp. of America Holdings*, No. 6:20-cv-969-ADA, Dkt. 215 (W.D. Tex. Sept. 23, 2022) (Final Instruction No. 23); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-680-ADA, Dkt. 181 (W.D. Tex. Apr. 7, 2022) (Final Instruction No. 2.16); *Global eTicket Exchange Ltd. v. Ticketmaster L.L.C.*, No. 6:21-cv-00399-ADA (W.D. Tex. May 4, 2023) (Final Jury Instructions No. 18); *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 222CV00126JRGRSP, 2022 WL 14318049, at *4 (E.D. Tex. Oct. 24, 2022).

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to the final sentence as unduly prejudicial to Google, misplaced in this instruction, and unnecessarily and confusingly duplicative and incomplete of other instructions.

**Touchstream's Objection:**

Touchstream objects to Google's proposed instruction as incomplete. The following is missing at the end: "Any reasonable royalty you award must compensate for the use made of the invention by the accused infringer."

## CONTESTED: JURY INSTRUCTION NO. 34: DAMAGES-COMPARABLE AGREEMENTS

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical negotiation scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structures, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license is a comparable to the hypothetical license, you may consider whether the license agreement is between the parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 31); *Ecofactor, Inc. v. Google LLC*, No. 6:20-cv-75-ADA, Dkt. 209 (W.D. Tex. Feb. 9, 2022) (Final Instruction No. 43); *Ravgen, Inc. v. Laboratory Corp. of America Holdings*, No. 6:20-cv-969-ADA, Dkt. 215 (W.D. Tex. Sept. 23, 2022) (Final Instruction No. 25); *Repeat Precision LLC v. DynaEnergetic Europe GmbH*, No. 6:21-cv-104-ADA, Dkt. 164 (W.D. Tex. Apr. 3, 2023) (Final Instruction No. 28); *DropBox, Inc. v. Motion Offense, LLC*, No. 6:20-cv-251-ADA (W.D. Tex. May 19, 2023) (Final Jury Instruction No. 12.3); *VideoShare, LLC v. Google LLC*, No. 6:19-cv-663-ADA, Dkt. 215 (W.D. Tex. Nov. 15, 2021) (Final Instruction No. 29); 2019 AIPLA Model Instruction No. 10.2.5.9; Federal Circuit Bar Association Model Patent Jury Instructions § 5.9 (May 2020); *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372-73 (Fed. Cir. 2020); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, LLC, 927 F.3d 1292, 1301 (Fed. Cir. 2019); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311–12 (Fed., Cir. 2018); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1313 (Fed. Cir. 2011); *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1319-21 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa Inc.*, 594 F.3d 860, 869-72 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-32 (Fed. Cir. 2009).

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to this instruction because it improperly incorporates trial testimony from Touchstream's damages expert (regarding neighborhood home values), rendering the instruction unduly favorable to Touchstream and contentious rather than neutral.  Google further objects to the final sentence because it improperly highlights license agreements reached in the context of litigation, which suggests that it is more important than other contexts, thus confusing the jury.

## CONTESTED: JURY INSTRUCTION NO. 34: DAMAGES—COMPARABLE AGREEMENTS

In determining a reasonable royalty, you should consider evidence of previous licenses to the Asserted Patents.  Such licenses are highly probative of the patented invention's economic value in the marketplace.  They are also highly probative of the proper form of the royalty structure, such as a running royalty or a lump sum.

You should not, however, consider evidence of licenses to other patents or products unless those licenses have a sufficient economic or technological link to the patent in this case and arose under sufficiently comparable circumstances as the hypothetical negotiation between Touchstream and Google.  You should not base a reasonable royalty on a license covering subject matter that is only loosely or vaguely comparable with the Asserted Patents.

Source:  *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372-73 (Fed. Cir. 2020); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, LLC, 927 F.3d 1292, 1301 (Fed. Cir. 2019); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311–12 (Fed., Cir. 2018); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1313 (Fed. Cir. 2011); *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1319-21 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa Inc.*, 594 F.3d 860, 869-72 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-32 (Fed. Cir. 2009); Federal Circuit Bar Association Model Patent Jury Instructions § 5.9 (May 2020).

## Touchstream's Objections to Google's Proposed Instruction:

Touchstream objects to Google's proposed instruction as including incorrect statements of the law. For example, the jury may consider a comparable agreement but is not required.  It is one of the *Georgia-Pacific* factors. Touchstream further objects to the instruction as biased/prejudicial, not following any model instruction, and omitting material from model instructions regarding factors to consider regarding a comparable agreement (comparable technologies, comparable economic circumstances, etc.).

## CONTESTED: JURY INSTRUCTION NO. 35: DAMAGES-RUNNING ROYALTY VS. LUMP SUM

Reasonable royalty awards may take the form of a running royalty [Touchstream: based on the revenue from or the volume of sales of the licensed products]. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

Reasonable royalty awards can also take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all the sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 32); *Ecofactor, Inc. v. Google LLC*, No. 6:20-cv-75-ADA, Dkt. 209 (W.D. Tex. Feb. 9, 2022) (Final Instruction No. 44); *Ecofactor, Inc. v. Ecobee, Inc.*, No. 6:20-cv-00078-ADA (W.D. Tex. June 22, 2023) (Final Jury Instructions, No. 39); Federal Circuit Bar Association Model Patent Jury Instructions No. 5.7 (May 2020).

**Google's Objections to Touchstream's Proposed Instruction:**

Google objects to the disputed language because it is not tethered to Touchstream's damages theory. Touchstream's damages theory is based on Accused Product unit activations, not Google's "revenue" or Accused Product "volume of sales." As a result, it is improper for the jury to be instructed on a revenue- or sales-based royalty structure, and the disputed portion of the first sentence can and should be omitted.

**<u>Touchstream's</u> Response to Google's Objection:**

It is more appropriate and typical to include a separate instruction on the form of a reasonable royalty, than in an introductory definitional instruction. *See, e.g., Ecofactor, Inc. v. Google LLC*, No. 6:20-cv-75-ADA, Dkt. 209 (W.D. Tex. Feb. 9, 2022) (Final Instruction No. 44); *Ecofactor, Inc. v. Ecobee, Inc.*, No. 6:20-cv-00078-ADA (W.D. Tex. June 22, 2023) (Final Jury Instructions, No. 39); Federal Circuit Bar Association Model Patent Jury Instructions § 5.7 (May 2020).

## <u>JURY INSTRUCTION NO. 36: JUROR NOTEBOOKS</u>

To assist in your deliberations, I have provided you with a notebook that contains the following:

- Paper

- A copy of the Touchstream Patents

- Witness photographs

These materials have been jointly submitted by the parties.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 686 (Nov. 15, 2022) (Prelim. Instruction No. 14)

## CONTESTED: JURY INSTRUCTION NO. 37: DOUBTS RESOLVED AGAINST THE INFRINGER

Any doubts that you may have on the issue of damages due to Google's failure to keep or make available proper records should be decided in favor of Touchstream. Any confusion or difficulties caused by Google's records also should be held against Google, not Touchstream.

Source: Taken from 2019 AIPLA Model Instruction No. 10.3; *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572–73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### Google's Objections to Touchstream's Proposed Instruction:

Google objects to this proposed instruction as directly contrary to this Court's rulings at the pretrial conference, which granted Google's MIL No. 9 on this topic, Dkt. 174, and to the Court's MIL No. 1 Ruling, Dkt. 222.  *See, e.g.*, Tr. of Pretrial Conference at 96:13-96:16 ("Google's concern that the plaintiff's expert is going to say, I didn't get access to information during discovery.  That's not going to happen."); *id.* at 96:19-21 ("During the trial, the issues that you all may have had during discovery don't come up in front of the jury."); *id.* at 97:3-4 ("Discovery issues do not come up in front of the jury.  They—you approach the bench."); *see also id.* at 152:8-153:3 ("[Google's MIL] No. 9:  Exclude any references relating to data retention policy and practices.  I put that in the discovery category, and that won't come in either in front of the jury.").  As such, Touchstream's proposed instruction is precluded, irrelevant, argumentative, and unfairly prejudicial to Google.

### Touchstream's Response to Google's Objection

Touchstream is mindful of the Court's MIL rulings, but maintains its right to include this instruction depending on how evidence develops at trial.

73

## JURY INSTRUCTION NO. 38: DUTY TO DELIBERATE

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

Source: Taken from *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 33); Fifth Circuit Pattern Jury Instructions 2020, with revisions through June 2020, § 3.7.

**JURY INSTRUCTION NO. 39: SOCIAL MEDIA INSTRUCTION**

During your deliberations, you may not communicate any information about this case to anyone by any means. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell phone, smartphone, PDA, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Snapchat, Instagram or Twitter, or any other way to communicate. You may not communicate to anyone any information about this case or conduct any research about this case until this case is over, and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

Source: *VLSI v. Intel*, 19-cv-00977-ADA, Dkt. 687 (Nov. 15, 2022) (Final Instruction No. 34); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 32 (W.D. Tex. Oct. 14, 2020).