# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| TOUCHSTREAM TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Case No. 6:21-cv-569-ADA |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

**GOOGLE LLC'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II.  LEGAL STANDARD ............................................................................................... 1

III.  GOOGLE IS ENTITLED TO JMOL ON TOUCHSTREAM'S INFRINGEMENT
ISSUES ................................................................................................................... 2

    A.  The Court Granted JMOL Of No Willful Infringement ....................................... 2

    B.  Touchstream Withdrew Its DOE Theory Of Infringement .................................... 2

    C.  Google Is Entitled To JMOL Of No Divided Infringement .................................. 2

    D.  Google Is Entitled To JMOL Of No Infringement Because The Accused
Products Do Not Have A "Server System" ........................................................ 5

    E.  Google Is Entitled To JMOL Of No Infringement Because Not All Claim
Limitations Are Met ......................................................................................... 5

IV.  GOOGLE IS ENTITLED TO JMOL ON THE PRIORITY DISPUTE ........................... 7

V.  GOOGLE IS ENTITLED TO JMOL OF INVALIDITY ............................................... 10

VI.  CONCLUSION ........................................................................................................ 13

**TABLE OF ABBREVIATIONS**

| Abbreviation | Definition |
|---|---|
| Touchstream | Touchstream Technologies, Inc. |
| Google | Google LLC |
| asserted patents | U.S. Patent Nos. 8,356,251 (the "'251 Patent"), 8,782,528 (the "'528 Patent"), and 8,904,289 (the "'289 Patent") |
| asserted claims | Claims 1 and 8 of the '251 Patent, claims 1 and 14 of the '528 Patent, and claims 1 and 2 of the '289 Patent |
| GTS | YouTube Remote and Leanback with Google TV System |
| Muthukumarasamy | U.S. Patent Application Publication No. 2010/0241699 |

*All emphasis added unless otherwise noted.*

## I.    INTRODUCTION

After Touchstream rested its case on July 19, 2023, Google orally moved for judgment as a matter of law ("JMOL") on each issue on which Touchstream bears the burden.  Google moved for JMOL of:  no willful infringement, no infringement under the doctrine of equivalents ('DOE"), no divided infringement, no infringement because the accused products do not perform or have all claim limitations, and no infringement because the accused products do not have a "server system."  When Google renewed its motion for no willful infringement on July 20, 2023, the Court granted the motion.

In addition, Google orally moved for JMOL of invalidity and that Touchstream failed to carry its burden with regard to its alleged priority date and therefore all of Google's asserted art is prior art to the asserted patents.  Google also renewed all of its prior motions.

As indicated in Court, Google hereby submits a brief written submission on its motions.  Google also memorializes the issues on which the Court has ruled to date.  As explained here and in Court, JMOL of the open issues of non-infringement, including no divided infringement, should be granted, as well as JMOL that the patents are entitled only to the earliest filing date of the patents (April 21, 2011) and that all of the asserted claims are invalid.

## II.    LEGAL STANDARD

The Court may grant JMOL under Rule 50(a) "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  As a result, JMOL is warranted "[i]f … the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that [a] reasonable [jury] could not arrive at a contrary verdict."  *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003).

## III.    GOOGLE IS ENTITLED TO JMOL ON TOUCHSTREAM'S INFRINGEMENT ISSUES

Google seeks JMOL on all infringement issues in the case.  Touchstream bears the burden of proof on all infringement issues.

### A.    The Court Granted JMOL Of No Willful Infringement

The Court granted Google's motion for JMOL of no willful infringement.  *See* Tr. 1195:1-3.

As the record reflects, Touchstream failed to show that Google had knowledge of the patents-in-suit (or was willfully blind to them), or had any specific intent to infringe (or was willfully blind to infringement).  *See* Tr. 702:2-703:13, 1171:20-1194:25.  Touchstream likewise failed to show that any of the factors generally considered in a willfulness assessment favored a willfulness finding.  *See id.*

As noted, the Court granted JMOL of no willfulness.

### B.    Touchstream Withdrew Its DOE Theory Of Infringement

In response to Google's motion for JMOL of no infringement under the doctrine of equivalents ("DOE"), Touchstream stated that it withdrew its DOE theory.  Tr. 701:22-25.

Accordingly, DOE is no longer an issue in this case.

### C.    Google Is Entitled To JMOL Of No Divided Infringement

Google is entitled to JMOL of no divided infringement.  Google acknowledges that the Court denied Google's oral motion, *see* Tr. 706:4-5, and respectfully summarizes here briefly the grounds on which no reasonable jury could find Google liable for divided infringement of the asserted claims.

All of the asserted claims are method claims, requiring the claimed steps to be performed in order for there to be infringement.  No reasonable jury could find Google is responsible for all of the claim steps.

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).  A defendant can be held "responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."  *Id.*  No reasonable jury could find Touchstream carried its burden on this test.

Touchstream presented no evidence of a joint enterprise, and no evidence of direction or control.  As a result, for multiple reasons, no reasonable jury could find Google responsible for others' performance of claims steps.

As one example, all asserted claims require action performed by a user—all claims require a "personal computing device."  But Touchstream presented no evidence that Google controls users or their "personal computing devices."  In fact, Touchstream's expert Dr. Almeroth admitted that users have to send these commands, such as pressing play or pause. For example, he explained that "when [he] was using the dongle on my phone, I could hit play and pause, and those messages would be sent and acted on by the dongle."  Tr. 440:16-22. Because a user must perform an action required by the claims, Touchstream cannot meet its burden to prove divided infringement.

As another example, all asserted claims, with their many claim limitations, require specific commands, such as an "action control command" ('289 patent claim 1; '528 patent claim 1) or "universal playback control command" ('251 patent claim 1) from the claimed

"personal computing device."  Touchstream, however, presented no evidence that Google controls such commands.  Dr. Almeroth explained that an "action control command" "is kind of a technical way of pause, rewind, fast forward, or stop," and that this information "has to be received in the server system."  Tr. 402:9-13; *see also* Tr. 415:12-15.  Despite this claim requirement, Dr. Almeroth emphasized that user input is required for those specific commands to be sent.  *E.g.*, Tr. 440:10-22.

As another example, all asserted claims require applications from third-party providers, e.g., Spotify and Netflix.  But Touchstream presented no evidence that Google controls the supplying of these applications and software.  *See, e.g.*, 502:1-503:4; 504.  Nor, as noted above, did Touchstream present evidence of a joint enterprise between Google and such providers.

Touchstream referenced YouTube, which Google owns, Tr. 609:19-20, but Touchstream presented no evidence to support piercing the corporate veil or other form of direction or control to meet its burden on divided infringement.

At minimum, Touchstream failed to prove direction and control for one of the categories of accused products:  "cast-enabled devices" that are made and sold by other entities, i.e., the accused devices that implement Chromecast built-in.  Given the absence of evidence that these third parties are under Google's direction or control, there can be no infringement of these devices.

Given these evidentiary failures, no reasonable jury could find Google responsible for others' performance of claim steps.  As such, JMOL of no divided infringement—and therefore JMOL of no infringement—should be granted as to all accused products for all asserted claims.

-4-

### D.    Google Is Entitled To JMOL Of No Infringement Because The Accused Products Do Not Have A "Server System"

Touchstream failed to show the accused products have a "server system" that performs all of the claimed requirements—a key element of each of the asserted claims.  All asserted claims require performance of particular operations by the "server system."  And all asserted claims require that certain commands or information be sent to or from the "server system."  No reasonable jury could find that the accused products have a "server system" that can perform all of the required operations.  Touchstream's theory depends on superficial labeling, e.g., that the accused products have a "server," failing to apply the plain and ordinary meaning of "server system."  Touchstream's infringement theory accuses distinct components used in the accused products and other devices as somehow being the claimed "server system."  *See, e.g.*, Tr. 430:5-433:4.  As a matter of law, that fails to carry its burden on infringement.

### E.    Google Is Entitled To JMOL Of No Infringement Because Not All Claim Limitations Are Met

It is axiomatic that literal infringement requires each and every claim limitation is met.  When "no reasonable fact finder could determine that the accused devices meet every limitation of the properly construed claims," JMOL of no infringement is warranted.  *Power-One, Inc. v. Artesyn Techs., Inc.*, No. 2:05-CV-463, 2008 WL 11348356, at *2 (E.D. Tex. Feb. 15, 2008) (quoting *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999)).  Touchstream failed to offer sufficient evidence of literal infringement of each asserted claim.  *See, e.g.*, Tr. 380:3-533:21 (direct, cross, redirect, and recross examination of Touchstream's technical expert).

As an example, claims 1 and 2 of the '289 patent and claims 1 and 14 of the '528 patent recite "receiving, in a server system, one or more messages from a personal computing device" that "identify a location of the particular media player."  Touchstream contends that this

limitation is met by the Phone sending a Cast App ID to the Chromecast (or other cast-enabled device) ("cast-enabled device"), which may ultimately download a receiver application (i.e., the particular media player).  However, Touchstream fails to meet its evidentiary burden that the claimed "server system" receives messages that contain the Cast App ID because such messages are received by the cast-enabled device, which is not part of the claimed server system.  *E.g.*, Tr. 928:7-929:20.  Second, Touchstream's reliance on the Cast App ID to identify a location of the particular media player also fails.  The accused receiver applications (i.e., the particular media player) are web pages that are located by a Universal Resource Locator ("URL").  By contrast, the Cast App ID is merely a number, which does not identify a location.  *E.g.*, Tr. 964:12-965:12.

As another, claims 1 and 8 of the '251 patent recite "storing, in a database associated with the server system, information for transmission to or retrieval by the display device, wherein the information specifies the video file to be acted upon, identifies the particular media player for playing the video content, and includes the corresponding programming code to control playing of the video content on the display device by the particular media player in accordance with the universal playback control command."  Touchstream contends that memory on the phone that purportedly stores certain information meets this limitation.  However, Touchstream fails to meet its evidentiary burden that the phone (1) includes a database associated with the server system; (2) stores information that specifies the video file to be acted upon, identifies the particular media player, and includes the corresponding programming code; and (3) stores such information for transmission to or retrieval by the display device.  First, Touchstream's claim fails because memory on a phone is not associated with the server system, but is instead associated with the phone on which it resides.  *E.g.*, Tr. 961:5-963:7.  Second, Touchstream fails to meet its evidentiary burden to show that the accused memory stores programming code, and,

in fact, such programming code that is intended to be executed by the particular media player on the display device is not stored on the phone.  *E.g.*, *id.*  Third, Touchstream fails to meet its evidentiary burden that the claimed information is stored for transmission to or retrieval by the display device, and, in fact, such information is not so transmitted or received.  Rather, the claimed functionality accused by Touchstream merely stores a "session identifier" that is used to re-establish the peer-to-peer connection to the cast-enabled device.  *E.g.*, *id.*

Touchstream's failure to show that each and every limitation is met by the accused products precludes infringement as a matter of law.

## IV. GOOGLE IS ENTITLED TO JMOL ON THE PRIORITY DISPUTE

In an attempt to predate certain of Google's asserted prior art (regarding the GTS system and specifically the YouTube Remote aspects of it), Touchstream claims October 8, 2010, as the conception date of the asserted patents.  No reasonable jury could find that Touchstream carried its burden with respect to this issue.  Accordingly, Touchstream is not entitled to its claimed priority date (or a priority date before November 9, 2010), and instead the patents are governed by their earliest filing date of April 21, 2011.  Therefore, the whole of the GTS system including its YouTube Remote aspects are prior art, and all of Google's asserted art is prior art to the asserted patents.

While Google bears the ultimate burden of proof on invalidity, Touchstream bears a meaningful burden to be entitled to its claimed priority date.  *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1379-80 (Fed. Cir. 2015) (to pre-date prior art, the patentee bears burden of production on conception and reduction to practice).

Conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice."  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).  As "a mental act,"

conception requires contemporaneous "corroborating evidence" "that would enable one skilled in the art to make the invention." *Burroughs*, 40 F.3d at 1228; *see also Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002) ("A party seeking to prove conception via the oral testimony of a putative inventor must proffer evidence corroborating that testimony.")  "Conception must include every feature or limitation of the claimed invention."  *Kridl v. McCormick*, 105 F.3d 1446, 1449 (Fed. Cir. 1997).

Touchstream failed to carry its burden regarding its claimed priority date.

Mr. Strober's claimed conception of the asserted claims is not supported by sufficient evidence, nor adequately corroborated, for a jury to find for Touchstream on this issue.  *See* Tr. 85:22-88, 89:20-24.  The only documentary evidence Touchstream introduced were five source code snippets and a schematic.  JTX-218, JTX-226, JTX-228, JTX-254, JTX-255, DTX-637. But metadata from the documents does not provide corroboration—many had "last-modified date" post-dating October 2010.  *See Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 443 F. Supp. 2d 836, 856 (S.D. Tex. 2006) (inventor's testimony that he made electronic drawings before "last modified date" of drawings insufficient to corroborate conception date).  And Mr. Strober was in control of the documents, and there is no evidence he showed them to anyone else.  *EMC Corp. v. Pure Storage, Inc.*, 204 F. Supp. 3d 749 (D. Del. 2016) (granting JMOL on this basis).

Touchstream presented testimony from Mr. Mitschele and Mr. Rinzler that they witnessed the prototype when they met Mr. Strober in New York in 2011, but that was well past the alleged October 2010 conception date.  Tr. 184:8-185:17, 252:15-253:19.

There is also no evidence of conception and reduction to practice of each and every claim element.  *See Kridl*, 105 F.3d at 1449 ("Conception must include every feature or limitation of

the claimed invention."); *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002) ("actual reduction to practice" requires "an embodiment or perform[ing] a process that met all the limitations of the claims").

As Dr. Mayer-Patel testified, there is no record evidence of the claimed "synchronization code," "stor[ing]in the server system a record establishing the association," "signals identifying the particular media player," "converting of the universal playback controls into programming code which was then transmitted to the display device." Tr. 1015:2-24. Dr. Mayer-Patel's overview of the elements missing from Mr. Strober's purported prototype are summarized in the following demonstrative he discussed before the jury.[1]

| CLAIM | DESCRIPTION | MET |
|---|---|---|
| 1(pre) | A machine-implemented method of controlling presentation of video content on a display device that loads any one of a plurality of different media players, the method comprising: | |
| 1(a) | Assigning, by a server system, a synchronization code to the display device | ✖ |
| 1(b) | Receiving, in the server system, a message from a personal computing device that is separate from the server system and separate from the display device, wherein the message includes the synchronization code | ✖ |
| 1(c) | Storing, by the server system, a record establishing an association between the personal computing device and the display device based on the synchronization code | ✖ |
| 1(d) | Receiving, in the server system, one or more signals from the personal computing device, the one or more signals specifying a video file to be acted upon and identifying a particular media player for playing the video content, the one or more signals further including a universal playback control command for controlling playing of the video content on the display device by the particular media player | ✖ |
| 1(e) | Converting, by the server system, the universal playback control command into corresponding programming code to control playing of the video content on the display device by the particular media player, wherein converting the universal playback control command includes selecting from among a plurality of specific commands, each of which represents a corresponding playback control command for a respective media player | ✖ |
| 1(f) | Storing, in a database associated with the server system, information for transmission to or retrieval by the display device, wherein the information specifies the video file to be acted upon, identifies the particular media player for playing the video content, and includes the corresponding programming code to control playing of the video content on the display device by the particular media player in accordance with the universal playback control command | |

Touchstream's failure to produce evidence of a prototype, much less one that reduced the asserted claims to practice, precludes its claimed priority date. *See* Tr. 115:5-12 (Mr. Strober

---

[1] Google notes that the trial demonstratives are not evidence, but provides them for the Court's convenience.

admitting that no prototype was presented at trial); *see also* Tr. 1016:25-1017:5 (Dr. Mayer-Patel: "we haven't seen that prototype").

And, while Dr. Almeroth promised the jury he would revisit this issue during his rebuttal case, neither he nor Touchstream provided any further evidence that could support its claimed priority date.

JMOL on this issue should be granted to Google.

## V.      GOOGLE IS ENTITLED TO JMOL OF INVALIDITY

Google is entitled to invalidity of all asserted claims.  As the trial record reflects, the asserted claims of the '251 patent are invalid as obvious over GTS, the asserted claims of the '528 patent are invalid as obvious over the combination of GTS and Muthukumarasamy, and the asserted claims of the '289 patent are likewise invalid as obvious over the combination of GTS and Muthukumarasamy.

*Claims 1 and 8 of the '251 Patent.*  Google is entitled to JMOL of obviousness for each of Touchstream's asserted claims.  Google presented clear and convincing evidence that the asserted claims of the '251 patent (claims 1 and 8) are invalid as obvious.  Dr. Mayer-Patel provided a detailed, element-by-element analysis of how GTS discloses and renders obvious the claims of the '251 patent under 35 U.S.C. § 103.  Tr. 967:9-15, 980:22-997:12 (independent claim 1); 997:24-999:7 (dependent claim 8), 999:8-12 (all asserted claims rendered obvious). The claim chart that Dr. Mayer-Patel discussed in detail before the jury illustrates that each claim limitation is met.

| CLAIM | DESCRIPTION | MET |
|-------|-------------|-----|
| 1(pre) | A machine-implemented method of controlling presentation of video content on a display device that loads any one of a plurality of different media players, the method comprising: | ✅ |
| 1(a) | Assigning, by a server system, a synchronization code to the display device | ✅ |
| 1(b) | Receiving, in the server system, a message from a personal computing device that is separate from the server system and separate from the display device, wherein the message includes the synchronization code | ✅ |
| 1(c) | Storing, by the server system, a record establishing an association between the personal computing device and the display device based on the synchronization code | ✅ |
| 1(d) | Receiving, in the server system, one or more signals from the personal computing device, the one or more signals specifying a video file to be acted upon and identifying a particular media player for playing the video content, the one or more signals further including a universal playback control command for controlling playing of the video content on the display device by the particular media player | ✅ |
| 1(e) | Converting, by the server system, the universal playback control command into corresponding programming code to control playing of the video content on the display device by the particular media player, wherein converting the universal playback control command includes selecting from among a plurality of specific commands, each of which represents a corresponding playback control command for a respective media player | ✅ |
| 1(f) | Storing, in a database associated with the server system, information for transmission to or retrieval by the display device, wherein the information specifies the video file to be acted upon, identifies the particular media player for playing the video content, and includes the corresponding programming code to control playing of the video content on the display device by the particular media player in accordance with the universal playback control command | ✅ |

| CLAIM | DESCRIPTION | MET |
|-------|-------------|-----|
| 8 | The method of claim 1 wherein the synchronization code is uniquely associated with the display device on which the video content is to be played. | ✅ |

*Claims 1 and 14 of the '528 Patent.*  Google similarly presented clear and convincing evidence that the asserted claims of the '528 patent (claims 1 and 14) are invalid. Dr. Mayer-Patel provided a detailed, element-by-element analysis of how the combination of GTS and Muthukumarasamy discloses and renders obvious the claims of the '528 patent under § 103. Tr. 967:16-21, 999:19-1008:19 (independent claim 1), 1008:20-1009:21 (dependent claim 14), 1009:22-24 (all asserted claims obvious). The claim charts that Dr. Mayer-Patel discussed in detail before the jury illustrates that each claim limitation is met.

-11-

| CLAIM | DESCRIPTION | MET |
|---|---|---|
| 1(pre) | A method of controlling presentation of content on a content presentation device that loads anyone of a plurality of different media players, the method comprising: | ✅ |
| 1(a)(i) – 1(a)(iv) | receiving, in a server system, one or more messages from a personal computing device that is separate from the server system and separate from the content presentation device, wherein the one or more messages, taken together, include information associated with a synchronization code assigned to the content presentation device, specify a file to be acted upon, identify a particular media player for playing content from the file, | ✅ |
| 1(a)(v) | [wherein the one or more messages, taken together, . . .] identify a location of the particular media player, and | ✅ |
| 1(a)(vi)-1(c) | and include an action control command for presentation of the content on the content presentation device by the particular media player, the action control command being independent of the particular media player; using the information associated with the synchronization code to store a record establishing an association between the personal computing device and the content presentation device; identifying, by the server system, programming code corresponding to the action control command, wherein the programming code is for controlling presentation of the content by the content presentation device using the particular media player; | ✅ |
| 1(d) | obtaining, by the content presentation device, the particular media player, wherein the particular media player is obtained over a network from a content provider; | ✅ |
| 1(e) | loading the particular media player in the content presentation device; and | ✅ |
| 1(f) | using the particular media player to execute the programming code with respect to the file. | ✅ |

| CLAIM | DESCRIPTION | MET |
|---|---|---|
| 14 | The method of claim 1 including: receiving, in the server system, a further message from the personal computing device, the further message including a second action control command; identifying second programming code corresponding to the second action control command, wherein the second programming code is for controlling presentation of the content by the content presentation device using the particular media player; and using the particular media player to execute the second programming code with respect to the file. | ✅ |

    ***Claims 1 and 2 of the '289 Patent.***  Google further presented clear and convincing evidence that the asserted claims of the '289 patent (claims 1 and 2) are invalid as obvious. Dr. Mayer-Patel provided a detailed, element-by-element analysis of how the combination of GTS and Muthukumarasamy discloses and renders obvious the claims of the '251 patent under § 103.  Tr. 967:16-21, 1009:25-1011:22 (independent claim 1), 1011:23-1012:14 (dependent claim 2), 1012:15-22 (all asserted claims obvious).  The claim chart that Dr. Mayer-Patel discussed in detail before the jury illustrates that each claim limitation is met.

| CLAIM | DESCRIPTION | MET |
|-------|-------------|-----|
| 1(pre) | A method of controlling presentation of content on a content presentation device that loads any one of a plurality of different media players, the method comprising: | ✅ |
| 1(a)(i) – 1(a)(iv) | receiving, in a server system, one or more messages from a personal computing device that is separate from the server system and separate from the content presentation device, wherein the one or more messages, taken together, (i) include information associated with a unique identification code assigned to the content presentation device, (ii) specify a file to be acted upon, (iii) identify a particular media player for playing content from the specified file | ✅ |
| 1(a)(v) | wherein the media player is a computer application operable to present content and control presentation of the content, | ✅ |
| 1(a)(vi)-1(c) | (iv) identify a location of the particular media player, and (v) include an action control command for presentation of the content on the content presentation device by the particular media player, the action control command being independent of the particular media player;<br>using the information associated with the unique identification code to store a record establishing an association between the personal computing device and the content presentation device; and<br>identifying, by the server system, programming code corresponding to the action control command, wherein the programming code is for controlling presentation of the content by the content presentation device using the particular media player,<br>wherein, based on information received or retrieved from the server system, the content presentation device uses the particular media player to execute the programming code with respect to the file. | ✅ |

| CLAIM | DESCRIPTION | MET |
|-------|-------------|-----|
| 2 | The method of claim 1 further including loading the particular media player in the content presentation device prior to executing the programming code with respect to the file. | ✅ |

In response to Google's showing that each asserted claim is invalid, Touchstream presented no contrary evidence a reasonable jury could credit, nor any evidence of secondary considerations of non-obviousness.

## VI.    CONCLUSION

For the reasons stated above and in Court, Google respectfully moves for JMOL of no infringement, including no divided infringement, of any asserted claim of the asserted patents, for JMOL that the priority date of the asserted patents is not October 8, 2010 (and instead is April 21, 2011), and for JMOL that each asserted claim of the asserted patents is invalid.

The Court granted JMOL of no willful infringement, and Touchstream has withdrawn its DOE theory of infringement.[2]

_____

[2] Orally in Court after Touchstream rested, Google also moved for no permanent injunction.  Consistent with the Court's preferences, Google will address that issue later, if and when necessary.

Dated: July 21, 2023     Respectfully submitted,


By: */s/ Tharan Gregory Lanier with permission,*
  *by Michael E. Jones*

Michael C. Hendershot (admitted *Pro Hac Vice*)
Tharan Gregory Lanier (admitted *Pro Hac Vice*)
Evan M. McLean (admitted *Pro Hac Vice*)
Gurneet Singh (admitted *Pro Hac Vice*)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939
Fax: (650) 739-3900
mhendershot@jonesday.com
tglanier@jonesday.com
emclean@jonesday.com
gsingh@jonesday.com


Tracy Ann Stitt (admitted *Pro Hac Vice*)
Jennifer L. Swize (admitted *Pro Hac Vice*)
Edwin O. Garcia (admitted *Pro Hac Vice*)
John R. Boulé III (admitted *Pro Hac Vice*)
JONES DAY
51 Louisiana NW
Washington, DC 20001
(202) 879-3939
Fax: (202) 626-1700
tastitt@jonesday.com
jswize@jonesday.com
edwingarcia@jonesday.com
jboule@jonesday.com


Michael E. Jones
TX State Bar No. 10929400
E-mail: mikejones@potterminton.com
Shaun W. Hassett
TX State Bar No. 24074372
E-mail: shaunhassett@potterminton.com
POTTER MINTON PC
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**Attorneys for Defendant Google LLC**

-14-