**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** *Plaintiff,* v. **GOOGLE LLC,** *Defendant.* | Civil Case No. 6:21-cv-569-ADA |

**PLAINTIFF TOUCHSTREAM'S OPPOSITION TO DEFENDANT GOOGLE'S
MOTION FOR RECONSIDERATION OF THE COURT'S PRETRIAL ORDER
<u>EXCLUDING GOOGLE'S TWONKY  INVALIDITY THEORIES FROM TRIAL</u>**

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... iii

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 2

        A.      This Litigation and the Parties' Pre-trial Motions ........................................... 2

        B.      The Federal Circuit's Recent *Ingenico* Opinion ............................................... 5

III.    LEGAL STANDARDS ............................................................................................. 7

IV.     ARGUMENT ............................................................................................................. 8

        A.      *Ingenico*'s Interpretation of Statutory Estoppel Under 35 U.S.C. § 315(e)(2) Does Not Control the Scope of Estoppel Underlying Google's *Sotera* Stipulation. ................................................................................................................ 8

        B.      This Court's Order is Consistent with the *Ingenico* Decision, So Reconsideration is Not Proper. ....................................................................... 12

        C.      Google's Twonky Theory Fails as a Matter of Law for the Reasons Touchstream Already Raised with the District Court. .................................... 15

        D.      Google Fails to Show Prejudice Justifying a New Trial, as Google Presented a Full Invalidity Defense at Trial and Would Not Have Asserted Twonky. ..... 17

V.      CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*511 Techs., Inc. v. Microchip Tech. Inc.*
  No. 6:20-CV-00245-ADA, 2022 WL 22869804 (W.D. Tex. June 27, 2022) .......................... 17

*Alldread v. City of Grenada*
  988 F.2d 1425 (5th Cir. 1993) ..................................................................................... 17

*Austin v. Kroger Texas, L.P.*
  864 F.3d 326 (5th Cir. 2017) ......................................................................................... 8

*California Inst. of Tech. v. Broadcom Ltd.*
  No. CV 16-3714-GW(AGRX), 2019 WL 8192255 (C.D. Cal. Aug. 9, 2019)........................ 13

*Christian Legal Soc'y v. Martinez*
  561 U.S. 661 (2010)..................................................................................................... 10

*Clearlamp, LLC v. LKQ Corp.*
  No. 12 C 2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ............................................. 2, 13

*Demahy v. Schwarz Pharma, Inc.*
  702 F.3d 177 (5th Cir. 2012) ......................................................................................... 7

*Exxon Shipping Co. v. Baker*
  554 U.S. 471 (2008)....................................................................................................... 8

*Fagin v. Hughs*
  No. SA-20-CV-00765-XR, 2020 WL 9814147 (W.D. Tex. Aug. 19, 2020) .......................... 15

*Federal Deposit Ins. Corp. v. Mijalis*
  15 F.3d 1314 (5th Cir.1994) ........................................................................................... 18

*Google LLC v. Touchstream Techs., Inc.*
  IPR2022-00795, Papers 7, 10 (PTAB 2022) ........................................................................ 3

*Ingenico Inc. v. Ioengine, LLC*
  136 F.4th 1354 (Fed. Cir. 2025) ...................................................................................... passim

*Ingenico Inc. v. IOENGINE, LLC*
  IPR2019-00879 (PTAB Mar. 25, 2019) ............................................................................... 5

*Ingenico Inc. v. IOENGINE, LLC*
  IPR2019-00929 (PTAB Apr. 4, 2019)............................................................................... 5, 6

*Ingenico Inc. v. IOENGINE, LLC*
No. CV 18-826-WCB, 2022 WL 20814960 (D. Del. Dec. 9, 2022) .................................... 7, 13

*King v. King*
117 F.4th 301 (5th Cir. 2024) ...................................................................................... 17

*McDonald v. Steward*
132 F.3d 225 (5th Cir. 1998) ....................................................................................... 18

*Profectus Tech. LLC v. Google LLC*
No. 6:20-CV-00101-ADA, 2022 WL 3362282 (W.D. Tex. Aug. 15, 2022) ............................. 3

*Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*
610 F.3d 249 (5th Cir. 2010) ....................................................................................... 10

*Rice v. Glad Hands, Inc.*
750 F.2d 434 (5th Cir. 1985) ....................................................................................... 10

*S. Constructors Grp., Inc. v. Dynalectric Co.*
2 F.3d 606 (5th Cir. 1993) ............................................................................................ 7

*Simon v. United States*
891 F.2d 1154 (5th Cir. 1990) ....................................................................................... 8

*Sonos, Inc. v. Google LLC*
No. 6-20-CV-00881-ADA, 2021 WL 1229998 (W.D. Tex. Aug. 2, 2021) .............................. 3

*Sotera Wireless, Inc. v. Masimo Corp.*
IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) .................................................... 3, 11

*Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV1201861JGBDFMX
2015 WL 4744394 (C.D. Cal. Jan. 29, 2015) ......................................................... 13

*Templet v. HydroChem, Inc.*
367 F.3d 473 (5th Cir. 2004) ............................................................................. 7, 8, 15

*Turk v. Pershing LLC*
No. 3:09-CV-2199-N, 2019 WL 13074701 (N.D. Tex. Aug. 1, 2019) .................................... 8

*United States v. 89.9270303 Bitcoins*
No. SA-18-CV-0998-JKP, 2021 WL 5203337 (W.D. Tex. Nov. 8, 2021) .............................. 8

*United States v. McKinne*
758 F.2d 1036 (5th Cir. 1985) ...................................................................................... 10

*Videoshare, LLC v. Meta Platforms Inc.*
No. 6-21-CV-00254-ADA, 2022 WL 3142622 (W.D. Tex. Aug. 5, 2022) ............................. 12

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*
  432 F. Supp. 3d 448 (D. Del. 2020)...................................................................................... 4, 15

*Wsou Invs. LLC v. Microsoft Corp.*
  No. W-20-CV-00454-ADA, 2022 WL 2078216 (W.D. Tex. June 9, 2022) ............................. 8

## I.    **INTRODUCTION**

Google falls far short of showing justification for reconsideration: it selectively ignores important aspects of *Ingenico* and this Court's ruling to manufacture a relevant change in the law when none exists. Indeed, Google suggests *Ingenico*, which merely affirmed admission of certain prior art documents at trial, somehow retroactively strips district courts of discretion to exclude documents when a defendant cloaks a printed publication invalidity theory as a system theory to gain an unfair second bite at the apple on invalidity. If Google were right, that ruling would upend a staggering amount of completed patent trials in this Court and others. But Google is wrong.

First, while *Ingenico* interpreted statutory estoppel resulting from an IPR final written decision, here that statute was not at issue. Instead, the Court interpreted the scope of estoppel from Google's *Sotera* stipulation, where, to avoid discretionary denial, Google told the PTAB its stipulation "removes all overlap" with invalidity issues at the District Court. This difference alone prevents *Ingenico* from being the kind of relevant change in the law justifying reconsideration.

Second, this Court's Order excluding Google's Twonky theories was consistent with the reasoning in *Ingenico.* There, the Federal Circuit affirmed an order allowing printed publications to be used as evidence because they could theoretically be used as part of "grounds" for invalidity that could not have been raised in an IPR. *Ingenico Inc. v. Ioengine, LLC*, 136 F.4th 1354 (Fed. Cir. 2025). The decision did not need to, and did not, disturb precedent about how to exercise discretion to exclude theories where a defendant attempts to "cloak its reliance upon [a document] as a product." *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016). Google repeatedly ignores the part of this Court's Order that conducts such an analysis under what remains good law.

1

Third, even if *Ingenico* did result in a material change of law applicable here (it did not), the proper remedy would still be to exclude Google's Twonky theories for the reasons laid out in prior Touchstream motions that were denied as moot when the Court properly enforced Google's *Sotera* stipulation. For instance, Google improperly attempted to cobble together a Twonky "system" via an affidavit served well after the close of fact discovery.

Finally, Google fails to show sufficient prejudice for a new trial based on its single unsupported sentence that its expert was "prepared" to present the Twonky system at trial. Motion at 2. In truth, there is every indication that Google always intended to only present its allegedly home-grown Youtube Leanback theory—for which it actually identified fact witnesses during discovery—and count its Twonky theories among the many, many other invalidity theories that Google abandoned on the eve of trial. Google had a full and fair opportunity to present its best invalidity case at trial, and the jury upheld the validity of all asserted claims.

For each of these independent reasons, the Court's ruling and the jury's verdict should be undisturbed, and Google's Motion should be denied.

## II.    BACKGROUND

### A.  This Litigation and the Parties' Pre-trial Motions

Throughout this litigation, Google focused its invalidity case on its allegedly home-grown YouTube Leanback system. This was always presented as Google's lead argument and was supported by a live fact witness under its control who was deposed *by Google* and who Google reserved the right to call live at trial (ultimately called by deposition at trial). Dkt. 217 at 2 (listing Mr. Janos Levai as a will call witness but indicating that he would be called live or by deposition). Twonky, on the other hand, was always at best a secondary theory that took a back seat to the YouTube Leanback system. Notably, despite serving a subpoena on the current owner of Twonky,

2

Lynx (*see* Ex. 1, 04-14-2022 Notice of Subpoena to J.M. Driver LLC d/b/a Lynx Technology), Google never deposed any individuals regarding their knowledge of Twonky—or whether it was *actually* sold or used—and its own expert, Dr. Ketan Mayer-Patel, did not rely on many of the documents that supposedly comprised the Twonky system. When Google truly intends to present an invalidity case at trial, it calls witnesses in support. Indeed, Google has represented to this Court that "Google routinely calls prior artists as witnesses at trial," *Sonos, Inc. v. Google LLC*, No. 6-20-CV-00881-ADA, 2021 WL 12299986, at *7 (W.D. Tex. Aug. 2, 2021), and in another case in this Court indeed deposed and called live at trial a third-party fact witness on a "prior art device." *Profectus Tech. LLC v. Google LLC*, No. 6:20-CV-00101-ADA, 2022 WL 3362282, at *2 (W.D. Tex. Aug. 15, 2022).

During discovery Google filed IPR petitions challenging each of the asserted patents in this case. *See* IPR2022-00795 (challenging the '251 patent), IPR2022-00793 (challenging the '528 patent), IPR2022-00794 (challenging the '289 patent). In each of these proceedings Google filed what it called a *Sotera* stipulation. These stipulations provided that they were entered "[i]n accordance with the Board's precedential decision in *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 at 18-19 (PTAB Dec. 1, 2020)" as a means to avoid discretionary denial of its IPR petitions. Ex. 2, 08-25-2022 Email from M. McLean to Touchstream counsel Regarding *Sotera* Stipulation. In view of these stipulations, Google represented to the PTAB that: "Petitioner's *Sotera* Stipulation Removes All Overlap with the District Court Litigation." *See, e.g.*, Ex. 3, *Google LLC v. Touchstream Techs., Inc.*, IPR2022-00795, Paper 7 at 4 (PTAB Aug. 4, 2022). The Final Written Decisions in each of Google's IPR proceedings issued in September and October of 2023, months after the conclusion of the District Court trial on July 21, 2023. *See, e.g.,* IPR2022-00795, Paper 35 (Final Decision issued Sept. 27, 2023); IPR2022-00793, Paper 35 (Final

Decision issued Sept. 27, 2023), IPR2022-00794 (Final Decision issued Oct. 2, 2023). As such, none of Google's invalidity theories at the District Court were excluded under 35 U.S.C. § 315(e)(2).

Touchstream sought to exclude the Twonky system on various bases and filed a Motion to Exclude Expert Testimony of Dr. Ketan Mayer-Patel (Dkt. 135) and a Motion to Exclude Portions of Google's Invalidity Contentions and Expert Report (Dkt. 136). The parties extensively briefed the issue of whether Google's Twonky system was subject to estoppel under Google's *Sotera* stipulation and argued it at the pretrial conference. *See, e.g.*, Dkts. 135; 136; 149; 152; 153; 177; 182; 225, at 57-64. The Court granted Touchstream's motion as to the Twonky system and issued a written order to that effect on July 14, 2023 (Dkt. 232, the "Order").

In the Order, the Court found that exclusion of the Twonky system was warranted "because the Twonky system has 'materially identical' disclosures as the prior art [Google] could have relied on in the IPR." Dkt. 232 at 1-2 (granting Touchstream's Motion to Exclude Portions of Google's Invalidity Contentions and Expert Report, Dkt. 136, as to the exclusion of the Twonky system). Further, Google's expert, Dr. Mayer-Patel, failed to "even cite the non-public Twonky documents for half of the claim limitations, and he certainly does not rely on them exclusively for *any* limitation." *Id.* at 2 (citing *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454–55 (D. Del. 2020)). In *Wasica*, the district court rejected the argument that a defendant could escape estoppel by adding a "product" to its obviousness combinations, where defendant "does not dispute that a 1900 article . . . is a printed publication that discloses all of the relevant features of [that product] that could have been raised during the IPR." 432 F. Supp. 3d at 453, 454–55; *see also id.* at 453 (also noting the existence of a prior art publication that is "entirely cumulative" with the alleged product sought to be asserted at trial). The Court further denied Touchstream's Motion to

4

Exclude Expert Testimony of Dr. Ketan Mayer-Patel (Dkt. 135) as moot with respect to the Twonky System and 35 U.S.C. § 101 in light of its ruling on Touchstream's other motion. Dkt. 232 at 2.

Trial proceeded with Google presenting its YouTube Leanback system at trial for invalidity. On July 21, 2023, after a five-day trial, the jury returned a verdict finding that Google infringed all asserted claims of Touchstream's patents, and that none of the patents-in-suit were invalid. Dkt. 247. The Court entered judgment on August 23, 2023. Dkt. 256. Google filed a Motion for Reconsideration of the Court's Pretrial Order Excluding its Twonky System-Based Invalidity Theories from Trial on June 3, 2025 (the "Motion"). Dkt. 312. Google now requests reconsideration or, in the alternative, a new trial based on an alleged intervening change in law based on the Federal Circuit's recent *Ingenico* case.

### B.  The Federal Circuit's Recent *Ingenico* Opinion

In *Ingenico*, the Federal Circuit considered, *inter alia*, plaintiff's argument that it was entitled to a new trial because IPR estoppel should have precluded defendant from introducing a particular ground at trial. 136 F.4th at 1364. Before trial, defendant filed IPR petitions challenging the patents-in-suit. *Id.* at 1360. The PTAB issued final written decisions that held most of the challenged claims of two of the patents-in-suit unpatentable. *Id.* (citing *Ingenico Inc. v. IOENGINE, LLC*, IPR2019-00879 (PTAB Mar. 25, 2019); *Ingenico Inc. v. IOENGINE, LLC*, IPR2019-00929 (PTAB Apr. 4, 2019)). At summary judgment, plaintiff sought to exclude certain printed prior art materials from trial. *Id.* The Federal Circuit affirmed the district court's order that materials would be excluded "except to the extent . . . that they form part of a substantively different combination of references that could not reasonably have been raised in the IPRs." *Id.*

It is true the Federal Circuit acknowledged and resolved the split among district courts regarding the interpretation of the term "grounds" as used in 35 U.S.C. § 315(e), *i.e.*, whether "grounds" meant prior art (e.g., YouTube Leanback vs. Twonky) or the theory of invalidity (e.g., prior public use vs. prior printed publication). *Id.* at 1364. "[G]rounds," the Federal Circuit found, "are theories of invalidity available to challenge a claim under 35 U.S.C. §§ 102 and 103, which are limited in an IPR to asserting that the claimed invention was patented or described in a printed publication (or would have been obvious only on the basis of prior art patents or printed publications)." *Id.* at 1366. Thus, it was not error to allow the DiskOnKey documents at trial simply because DiskOnKey could have been raised as prior art at the IPR. *See id.* at 1367 ("IPR estoppel does not preclude a petitioner from asserting that a claimed invention was known or used by others, on sale, or in public use in district court. These are different grounds that could not be raised during an IPR.").

But while the Federal Circuit did not appear to address the standard a district court should apply for determining whether the ground raised on IPR was "substantively different" than the ground to be presented at trial, it indicated that:

> *If* prior art that is not a patent or printed publication, such as AAPA [("applicant admitted prior art")], was *used in combination with patents or printed publications* such that the "basis" of the ground included AAPA, the petitioner would no longer be asserting a ground that the claimed invention was patented or described in a printed publication.

*Ingenico*, 136 F.4th at 1366 (emphasis added). Moreover, in *Ingenico*, there were two fact witnesses testifying on how the prior art system worked in the real world (*e.g.*, known or used), which weighs in favor of the ground being substantively different from the grounds asserted at the IPRs. *See, e.g.*, *Ingenico Inc. v. IOENGINE, LLC*, No. CV 18-826-WCB, 2022 WL 20814960, at *10 (D. Del. Dec. 9, 2022) ("***Two former M-Systems employees, Gidi Elazar and Eyal Sobol,***

6

*added testimony* that would support such an inference.") (emphasis added), *aff'd*, 136 F.4th 1354 (Fed. Cir. 2025); *id.* at *4 ("The jury heard testimony from Eyal Sobol, a Western Digital employee familiar with the M-Systems products, who ***testified that the SDK documentation accurately described the capabilities of the DiskOnKey device***.") (emphasis added); *see also id.* at *7 ("Second, even ignoring those sales, the jury saw an earlier ***email that was sent by M-Systems to its employees*** regarding the firmware upgrade application for the DiskOnKey. DX330.") (emphasis added).

## III.    LEGAL STANDARDS

A Rule 59(e) motion "calls into question the correctness of a judgment" and "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (internal citations omitted). In considering such a motion, a court must balance "the need to bring litigation to an end" and "the need to render just decisions on the basis of all the facts." *Id.* at 479. Although courts have "considerable discretion" to grant or to deny a Rule 59(e) motion, *id.*, the rule favors denial. *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

A Rule 59(e) motion will be granted in limited circumstances: "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). A Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issues." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479. Nor can it be used to "relitigate old matters" that

have already been resolved. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).

> Rule 54 offers a more flexible approach:
>
> So long as courts recognize that they have the discretion to grant reconsideration even in the absence of any such showing, the flexible approach permits them to require a showing of one of the following factors to justify reconsideration: an intervening change in law; availability of previously unavailable new evidence; or a need to correct a clear legal error or to prevent manifest injustice.

*Wsou Invs. LLC v. Microsoft Corp.*, No. W-20-CV-00454-ADA, 2022 WL 2078216, at *2 (W.D.

Tex. June 9, 2022) (Albright, J.) (citing *United States v. 89.9270303 Bitcoins*, No. SA-18-CV-

0998-JKP, 2021 WL 5203337, at *1 (W.D. Tex. Nov. 8, 2021) (internal quotation marks omitted)).

"Thus, even though the standard for evaluating a motion to reconsider under Rule 54(b) is 'less

exacting than that imposed by Rules 59 and 60 . . . considerations similar to those under Rules 59

and 60 inform the Court's analysis.'" *Microsoft*, 2022 WL 2078216, at *2 (citations omitted).

Ultimately, the critical inquiry is whether justice requires relief from the order. *Id*. (citing *Austin

v. Kroger Texas, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017)).

These motions should be sparingly granted; "[o]therwise, motions for reconsideration

become constant reassessments of the Court's work." *Id.* (citing *Turk v. Pershing LLC*, No. 3:09-

CV-2199-N, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019) ("[A] district court's broad

discretion under rule 54(b) must be exercised sparingly in order to forestall the perpetual

reexamination of orders and the resulting burdens and delays.")).

## IV.   **ARGUMENT**

### A. *Ingenico*'s Interpretation of Statutory Estoppel Under 35 U.S.C. § 315(e)(2) Does Not Control the Scope of Estoppel Underlying Google's *Sotera* Stipulation.

The Federal Circuit's holding in *Ingenico* does not control the scope of estoppel found in

the order for which Google seeks reconsideration. *Ingenico* evaluated the scope of statutory

8

estoppel under 35 U.S.C. § 315(e)(2), not the scope of estoppel underlying a party stipulation entered to avoid discretionary denial at the PTAB, as Google did here.

In *Ingenico*, the Federal Circuit evaluated the scope of statutory estoppel under 35 U.S.C. § 315(e)(2), which only applies when an IPR "results in a final written decision." *See Ingenico*, 136 F.4th at 1364. The Federal Circuit found that because the estoppel attached under 35 U.S.C. § 315(e)(2) from Ingenico's IPR reaching a final written decision, whether "Ingenico should be estopped depends on the proper interpretation of the term 'ground' used in [this statute]." *Id.* The Federal Circuit then looked to other parts of that statute to determine—as a matter of statutory interpretation—that "IPR estoppel [under 35 U.S.C. § 315(e)(2)] does not preclude a petitioner from relying on the same patents and printed publications as evidence in asserting a ground that could not be raised during the IPR, such as that the claimed invention was known or used by others, on sale, or in public use." *Id.* at 1365–66.

But here, the Court's order for which Google seeks reconsideration did not apply statutory estoppel under 35 U.S.C. § 315(e)(2). Nor could it, as the district court trial occurred prior to any of Google's IPR petitions reaching a final written decision on the merits. Instead, the estoppel underlying the order Google challenges was based on a stipulation that Google entered with the District Court to avoid discretionary denial of its IPR under 35 U.S.C. § 315(d). Because here the estoppel derives not from a statute but rather Google's stipulation, contract principles apply in construing the scope of Google's estoppel.

"[F]actual stipulations are formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of that fact." *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 677–78 (2010) (internal quotation marks omitted). "Normally a party is bound by his stipulations as a 'stipulation among the parties to a lawsuit is akin to a contract.'"

9

*Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010) (quoting *United States v. McKinney*, 758 F.2d 1036, 1047 (5th Cir. 1985)). "Like contracts, stipulations must be interpreted in light of the circumstances under which they are made." *Rice v. Glad Hands, Inc.*, 750 F.2d 434, 438 (5th Cir. 1985).

Here, the circumstances upon which Google entered its stipulation demonstrate that it agreed not to assert an invalidity ground at the District Court that, as the District Court found, was "materially identical" to a ground that Google could have reasonably raised in its IPR petition. Coined a "*Sotera* Stipulation," Google's stipulation in the District Court was entered for the purpose of avoiding discretionary denials under the PTAB's June 21, 2022 Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation ("Interim Procedure").[1] And Google's stipulation *worked*. *See* Ex. 4, *Google*, IPR2022-00795, Paper 10, at 9 (Sept. 30, 2022) ("Thus, ***in light of Petitioner's stipulation***, we do not exercise discretion to deny institution . . . .") (emphasis added).

In *Sotera,* the PTAB reiterated the policies underlying *Fintiv* factor 4 in determining the scope of stipulated estoppel at the institution stage. *See, e.g.*, *Sotera*, IPR2020-01019, Paper 12 at 18–20. The *Sotera* petitioner filed in the District Court "a stipulation that, if IPR is instituted,

---

[1] The Interim Procedure, in turn, relied on PTAB authority set forth in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) and *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020). *Fintiv* is a precedential PTAB decision that articulated nonexclusive factors "that the PTAB considers on a case-specific basis in determining whether to institute an AIA post-grant proceeding where there is parallel district court litigation." Interim Procedure at 1-2. One of those factors—*Fintiv* factor 4—evaluates the "overlap between issues raised in the petition and in the parallel proceeding." *Id.* As the PTAB determined in *Fintiv*, factor 4 favors discretionary denial "if the petition includes the same or substantially the same claims, grounds, arguments, and evidence as presented in the parallel proceeding," *Fintiv*, IPR2020-00019, Paper 11 at 12. "Conversely, if the petition includes materially different grounds, arguments, and/or evidence than those presented in the district court, this fact has tended to weigh against exercising discretion to deny institution . . . ." *Id.* (emphasis added).

[petitioner] will not pursue in the District Court Litigation any ground raised or that could have been reasonably raised in an IPR." *Id.* at 18. In finding that such a stipulation weighed strongly against discretionary denial, the PTAB reasoned that "Petitioner's stipulation here mitigates any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions." *Id.* at 19. The Board further found that "such a broad stipulation better addresses concerns of duplicative efforts and potentially conflicting decisions in a much more substantial way," ensuring "that an *inter partes* review is a 'true alternative' to the district court proceeding." *Id.*

The stipulation Google made in the District Court to avoid discretionary denial was nearly identical in wording to the stipulation entered by the Petitioner in *Sotera*. In fact, Google called it a *Sotera* stipulation and stated that its stipulation was made "[i]n accordance with the Board's precedential decision in *Sotera* . . . ." Ex. 2. In seeking discretionary denial with the PTAB, Google further argued that its "*Sotera* Stipulation ***removes all overlap*** with the district court litigation." Ex. 3, at 4. The circumstances under which Google entered its *Sotera* stipulation demonstrate that it understood it would be estopped from asserting materially identical grounds at both the PTAB and the District Court, particularly since just a few weeks prior to Google entering its stipulation, this Court also acknowledged that a *Sotera* stipulation eliminates the possibility of overlapping "***invalidity issues***" between the PTAB and District Court. *See Videoshare, LLC v. Meta Platforms Inc.*, No. 6-21-CV-00254-ADA, 2022 WL 3142622, at *3 (W.D. Tex. Aug. 5, 2022) (Albright, J.) ("In *Sotera*, the parties filed a much stronger, written stipulation that they will not pursue the specific grounds raised or any grounds that reasonably could have been raised ***so that there will be no overlap of invalidity issues***") (emphasis added).

11

Google cites no authority for the proposition that *Ingenico's* statutory interpretation of estoppel under 35 U.S.C. § 315(e)(2) should apply coextensively to its stipulated estoppel under *Sotera*. Rather, the scope of estoppel found by the Court in the order at issue is entirely consistent with *Sotera*, as it estopped Google from asserting "materially identical" invalidity grounds to ensure that Google's IPR was a true alternative to its invalidity arguments at the District Court. The Court's order should not be disturbed.

### B. This Court's Order is Consistent with the *Ingenico* Decision, So Reconsideration is Not Proper.

Even if *Ingenico* were to apply to the estoppel underlying the Court's challenged Order, Google does not even try to argue that *Ingenico* overruled cases that, like this Court, looked to whether Google was cloaking a printed publication ground as a product ground. Even if it did, it would be too late to do so on reply, and in any event it could not persuasively do so.

While *Ingenico* resolved the district court split on the exact definition of "ground" as used in § 315(e), 136 F.4th at 1364, it did not overrule or even address scenarios where the defendant sought to introduce a product ground that was really just a printed publication theory in disguise. Indeed, in the district court decision that *Ingenico* affirmed, Judge Bryson specifically evaluated whether the DiskOnKey invalidity theory that Ingenico presented at trial "added nothing" to the theory at issue in the IPR, finding that the "DiskOnKey invalidity theory was device art that did not amount to a printed publication invalidity theory in disguise." *Ingenico*, 2022 WL 20814960, at *25 (internal quotation marks omitted).

This analysis, which the Federal Circuit affirmed (or at least left intact) in *Ingenico*, is consistent with longstanding precedent from other district courts finding that a defendant cannot merely present a disguised product invalidity theory at trial that is materially identical to a printed publication invalidity theory that was raised or could have been raised during IPR. *See, e.g.,*

12

*Clearlamp*, 2016 WL 4734389, at \*9 ("While LKQ seeks to cloak its reliance upon UVHC3000 as a product, so as to avoid § 315(e)(2) estoppel, such an argument is disingenuous as it is the UVHC3000 datasheet upon which LKQ relies to invalidate the asserted claims."); *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV1201861JGBDFMX, 2015 WL 4744394, at \*4 (C.D. Cal. Jan. 29, 2015) (denying IPR estoppel where "the physical machine itself discloses features claimed in the '808 Patent that are not included in the instruction manual, and it is therefore a superior and separate reference."); *California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW(AGRX), 2019 WL 8192255, at \*7 (C.D. Cal. Aug. 9, 2019) ("[T]he Court agrees with *Clearlamp*, *Milwaukee Electric* and other decisions that attempt to discern if a patent challenge is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' its prior art ground and 'skirt' estoppel"), *finding of IPR estoppel aff'd*, 25 F.4th 976 (Fed. Cir. 2022).

In fact, the Federal Circuit left intact a district court's wide discretion to exclude documents. The Federal Circuit's ultimate ruling was: "Thus, a new trial is not warranted because IPR estoppel did not preclude Ingenico from **relying on the DiskOnKey System with related printed publications** at trial to prove the claimed invention was known or used by others, on sale, or in public use." *Ingenico*, 136 F.4th at 1367 (emphasis added). This holding confirms that the Federal Circuit was deferring to Judge Bryson's finding that the invalidity grounds at trial relied on system evidence outside of the printed publications that could have been raised on IPR, and thus he had discretion to allow those printed materials as evidence at trial. Here, too, the Court exercised its discretion to exclude the Twonky documents. This ruling is consistent with *Ingenico*.

Google further suggests that the Court *per se* excluded all Twonky documents simply because they relate to a prior art reference that could have been asserted in IPR. But nowhere does

the Order provide this as the sole basis for excluding the documents. Indeed, Google repeatedly omits and ignores parts of the Court's Order excluding Twonky documents for various other reasons, including, for example, Google's expert's lack of reliance on the documents. *See* Dkt. 232 at 2 ("Dr. Meyer-Patel does not even cite the non-public Twonky documents for half of the claim limitations, and he certainly does not rely on them exclusively for *any* limitation.") (emphasis in original). The Court also heard and considered the parties' arguments at the Pretrial Conference, which are reflected in the Court's ruling. *See* Ex. 5, Excerpts from 06-28-2023 Pretrial Conf. at 58:22-59:1 (Touchstream counsel arguing that Google was "using these nonpublic documents as a way to sort of smuggle in these patents that they very easily could have brought during the IPR process but chose not to"); 59:5-59:10 (Touchstream counsel arguing that Google was "essentially asking the Court to . . . adopt a rule that, so long as you find some nonpublic documents that are duplicative of what is disclosed in the patent, then you can get around the IPR estoppel issue.").

This additional reasoning from the Court's Order and background on the parties' arguments demonstrate that the Court considered whether Google was actually asserting a different ground and ultimately found that Google was not. This finding is clear from the Court's citation to *Wasica* (Dkt. 232 at 2), in which the district court found that the defendant was estopped from asserting obviousness combinations that included the primary reference relied upon during IPR. *Wasica*, 432 F. Supp. 3d at 454–55. As in *Wasica*, the Twonky documents Google sought to admit at trial were "materially identical (i.e., discloses the same claim elements)" as the prior art previously raised in the IPR. *Id*. at 455; Dkt. 232 at 1–2 ("GRANTED as to the exclusion of the Twonky system because the Twonky system has '***materially identical***' disclosures as the prior art it could have relied on in the IPR.") (emphasis added).

14

Google was fully heard on this issue and lost. It was entirely within the Court's discretion to exclude the Twonky documents, and *Ingenico* provides no basis to revisit the Court's ruling. *See Fagin v. Hughs*, No. SA-20-CV-00765-XR, 2020 WL 9814147, at *3 (W.D. Tex. Aug. 19, 2020) (denying motion for reconsideration where "[movant's] motion only rehashe[d] arguments that were already raised before the entry of the Court's order") (citing *Templet*, 367 F.3d at 479). In any event, this case is different than *Ingenico*, which had fact witnesses testifying about how the real-life system worked, something Google did not preserve for trial here. *See infra*, § D. Google's arguments fail because *Ingenico* is inapplicable here, and its Motion should be denied.

### C. Google's Twonky Theory Fails as a Matter of Law for the Reasons Touchstream Already Raised with the District Court.

Beyond arguing that Google should be estopped from asserting the Twonky invalidity theory at the District Court, Touchstream further argued that Twonky should be excluded for other reasons, such as Google's improper disclosures after the close of fact discovery and its faulty expert testimony seeking to substantiate this as a true system theory. But the Court denied Touchstream's motion as moot because it found the Twonky theory is estopped. Dkt. 232 at 1-2. If that theory is not in fact estopped under *Ingenico*, the Court can and should exclude it based on Google's late disclosure and otherwise lack of any evidence that could establish that the Twonky "system" ever existed or that the system includes each and every limitation of the asserted claims.

As discussed above, when excluding the Twonky system, the Court not only found that it was "materially identical" to prior art Google could have reasonably raised during IPR, but also that Google's expert, Dr. Mayer-Patel, "does not even cite the non-public Twonky documents for half of the claim limitations, and he certainly does not rely on them exclusively for *any* limitation." Dkt. 232 at 1–2. In fact, the only evidence Google cites to support that the alleged non-public Twonky documents support a prior art "system" theory is the declaration of Rick Schwartz (Dkt.

15

135, Ex. C), which Google failed to produce during fact discovery as Google was required to do. Dkt. 136 at 5-6. Instead, the Schwartz declaration was appended to Dr. Mayer-Patel's report, which was served on November 11, 2022, over a month after the close of fact discovery in this case. *See* Dkt. 136, Ex. A (Dr. Mayer-Patel Invalidity Report dated November 11, 2022); Dkt. 81 (close of fact discovery dated October 6, 2022). Serving this declaration after the close of fact discovery deprived Touchstream of the ability to explore this testimony, such as by taking Mr. Schwartz's deposition or seeking discovery on the assertions set forth in his declaration. Google's untimely disclosure was improper and, as such, the Schwartz declaration should be excluded and the portions of Dr. Mayer-Patel's report relying on this declaration should be stricken. *See Alldread v. City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993) ("trial court has wide discretion to admit or exclude expert testimony, and only if we determine that a ruling is manifestly erroneous may we find that discretion abused") (citation omitted); *King v. King*, 117 F.4th 301 (5th Cir. 2024) (affirming district court's exclusion of untimely evidence); *511 Techs., Inc. v. Microchip Tech. Inc.*, No. 6:20-CV-00245-ADA, 2022 WL 22869804, at *2 (W.D. Tex. June 27, 2022) (Albright, J.) (striking untimely disclosed supplemental invalidity contentions and expert opinions relying on the same).

More broadly, Google cannot show that the Twonky documents accurately describe a single, unified "Twonky" system. Google's expert, Dr. Mayer-Patel, maps nearly all the claim limitations for its Twonky "system" to T-1, T-7, and T-8—which are patents or public applications that could have been raised during IPR. Patents frequently include disclosures that never see real-world use, and there is simply no evidence that these patents and public applications were incorporated into the real-world Twonky "system." Dr. Mayer-Patel admits as much, testifying that he does not know, one way or the other, whether the features of the patents and patent

16

applications in T-1, T-7, and T-8 were ever actually incorporated into the real-world Twonky system. *See* Dkt. 182 at 2-3. Further, Google did not have any other sponsoring witnesses—apart from Mr. Schwartz's untimely declaration—or other evidence to show these documents could possibly support a "system" invalidity theory based on prior public knowledge, use, or sale of the Twonky system. In short, there is no evidence from Google's expert (other than pure speculation) that the patents used solely to satisfy these limitations in Twonky were actually incorporated into the system. Thus, there is no admissible evidence tying these references to a single system, and Twonky should be excluded as a matter of law.

Because Google has failed to establish that Twonky is a single system, and because Google cannot show as a matter of law that even if it were a single system that it was known, publicly used, or on sale before the priority date, the Twonky "system" should be excluded. *See generally* Dkt. 135 at 10-12, Dkt. 136 at 5-6, Dkt. 177 at 2-4, Dkt. 182 at 2-4.

### D. Google Fails to Show Prejudice Justifying a New Trial, as Google Presented a Full Invalidity Defense at Trial and Would Not Have Asserted Twonky.

Finally, Google has not carried its burden of showing substantial prejudice to justify a new trial. *McDonald v. Steward*, 132 F.3d 225, 232 (5th Cir. 1998) ("The burden of proving substantial prejudice lies with the party asserting error." (citing *Federal Deposit Ins. Corp. v. Mijalis*, 15 F.3d 1314, 1319 (5th Cir.1994)). In what appears to be Google's only attempt to show prejudice, Google merely states, citing to nothing at all in support, that "Dr. Mayer-Patel was prepared to present these Twonky System-based theories to the jury at trial." Motion at 2. This weak, unsupported statement does nothing to distinguish Google's Twonky theories from any of the other invalidity theories Google preserved for trial but never actually presented to the jury.

Indeed, Google's actions demonstrate that it was clearly always going to assert YouTube with Leanback as its invalidity case. This Court directed the parties to "significantly narrow[] the

17

. . . prior art references at issue" three months before trial was scheduled. Dkt. 21 at 4. Despite the Court's instruction, Google buried the lead and claimed to be relying on 5 different invalidity theories at the time the parties' pretrial order was submitted. *See* Dkt. 217, Ex. 8-B at 63 (listing YouTube Remote and Leanback with Google TV System ("GTS"), Twonky, and two patent/patent publications). But tellingly, Google did not even seek a deposition on the Twonky theory despite serving a subpoena to the developers (*see* Ex. 1) and had no live fact witness for trial testifying on Twonky. *See* Dkt. 243 (List of Witnesses at trial).

In contrast, Google diligently developed its YouTube Leanback invalidity theory, deposing its own "Leanback" employee in Switzerland and preparing multiple 30(b)(6) witnesses— including current Google employees—to testify on this allegedly homegrown system. Up until trial, one of its key witnesses, Janos Levai, was set to testify live on behalf of Google regarding this system. Dkt. 217 at Ex. 2 (listing Mr. Levai as a will call witness but indicating that he would be called live or by deposition). Google ultimately presented the YouTube Leanback invalidity at trial and argued that it invalidated all asserted claims from all asserted patents. But the jury rejected that argument and upheld the validity of each claim.

Because Google had a full and fair opportunity to present its best invalidity case at trial— its allegedly homegrown YouTube Leanback system—Google was not prejudiced through the exclusion of Twonky. Google cannot meet its burden to demonstrate that a new trial is warranted.

## V.    **CONCLUSION**

Touchstream respectfully requests the Court deny Google's Motion for at least the reasons above.

18

Date: June 25, 2025

Respectfully submitted,

**TOUCHSTREAM TECHNOLOGIES, INC.**

 /s/  *Anita Liu*
Anita Liu

Ryan D. Dykal (*pro hac vice*)
Jordan T. Bergsten (*pro hac vice*)
Mark Schafer (*pro hac vice*)
Anita Liu (TX State Bar No. 24134054)
Philip A. Eckert (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, D.C. 20005
(t) 202-274-1109
rdykal@bsfllp.com
jbergsten@bsfllp.com
mschafer@bsfllp.com
aliu@bsfllp.com
peckert@bsfllp.com

***Counsel    for    Plaintiff    Touchstream
Technologies, Inc.***

19

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Western District of Texas, I hereby certify that on the 25th day of June, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record who have appeared in this case per Local Rule CV-5(b):

Michael C. Hendershot (admitted *Pro Hac Vice*)
Tharan Gregory Lanier (admitted *Pro Hac Vice*)
Evan M. McLean (admitted *Pro Hac Vice*)
Gurneet Singh (admitted *Pro Hac Vice*)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939
Fax: (650) 739-3900
mhendershot@jonesday.com
tglanier@jonesday.com
emclean@jonesday.com
gsingh@jonesday.com

Tracy Ann Stitt (admitted *Pro Hac Vice*)
Jennifer L. Swize (admitted *Pro Hac Vice*)
Edwin O. Garcia (admitted *Pro Hac Vice*)
JONES DAY
51 Louisiana NW
Washington, DC 20001
(202) 879-3939
Fax: (202) 626-1700
 tastitt@jonesday.com
jswize@jonesday.com
edwingarcia@jonesday.com
John R. Boulé III
CA State Bar No. 322929
JONES DAY
555 South Flower St. Fiftieth Floor
Los Angeles, CA 90071
(213) 489-3939
jboule@jonesday.com

20

Michael E. Jones
TX State Bar No. 10929400
E-mail: mikejones@potterminton.com
Shaun W. Hassett
TX State Bar No. 24074372
E-mail: shaunhassett@potterminton.com
POTTER MINTON PC
102 N. College Ave., Suite 900
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

                                                          */s/ Anita Liu*
                                                         Attorney for Plaintiff